Paul M. Basta, Esq.
Alice Belisle Eaton, Esq.
Kyle J. Kimpler, Esq.
Robert A. Britton, Esq.
Brian Bolin, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVLON, INC., *et al.*,[1] | ) | Case No. 22-10760 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING,
REFUSING, OR DISCONTINUING UTILITY SERVICES, (B) DETERMINING
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (C) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT, AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion:

---

[1]   The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

## Relief Requested[2]

1.      By this motion (the "<u>Motion</u>"), the Debtors seek entry of an interim order ("the "<u>Proposed Interim Order</u>") and a final order (the "<u>Proposed Final Order</u>"), substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) prohibiting utility providers from altering, refusing, or discontinuing services, (b) determining adequate assurance of payment for future utility services, (c) establishing procedures for determining adequate assurance of payment for future utility services, and (d) granting related relief, including scheduling a final hearing to consider approval of the Motion on a final basis.  The Debtors request that the Court (as defined herein) schedule a hearing within approximately twenty-five (25) days from the date hereof (the "<u>Petition Date</u>") to consider final approval of this Motion.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]     A description of the Debtors' businesses, the reasons for commencing these chapter 11 cases, the relief sought from the Court to allow for a smooth transition into chapter 11, and the facts and circumstances supporting this motion are set forth in the *Declaration of Robert M. Caruso, Chief Restructuring Officer, (I) in Support of First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.s

4.      The bases for the relief requested herein are Sections 105(a) and 366 of title 11 of the Unites States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### The Utility Services

5.      In connection with the operation of their businesses, the Debtors obtain water, sewer service, electricity, waste disposal, natural gas, telecommunications, internet, and other similar services (collectively, the "Utility Services") from many American and Canadian[3] utility providers or their brokers (collectively, the "Utility Providers").  A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date is attached hereto as **Exhibit C** (the "Utility Providers List").[4]

6.      Preserving Utility Services on an uninterrupted basis is essential to the Debtors' operations.  The Debtors' businesses include warehouses, plants, research and development facilities, distribution centers, and corporate offices. These locations require electricity, telecommunications, internet, water, waste management (including sewer and trash), natural gas, and other Utility Services to operate.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be disrupted, and such disruption

---

[3]      While the Debtors also obtain Utility Services from utility providers outside the United States and Canada ("Foreign Utility Providers"), the Debtors do not seek relief regarding Foreign Utility Providers in this Motion. Instead, the Debtors are seeking relief related to Foreign Utility Providers under the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of (A) Lien Claimants, (B) Import Claimants, (C) 503(B)(9) Claimants, (D) Foreign Vendors, and (E) Critical Vendors, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief*, filed contemporaneously herewith.

[4]      Although the Utility Providers List is intended to be comprehensive, the Debtors may have inadvertently omitted one or more of the Utility Providers.  By this Motion, the Debtors request interim and final relief applicable to all of the Utility Providers, regardless of whether any individual Utility Provider is specifically identified on the Utility Providers List.

could jeopardize the Debtors' ability to continue to operate at such location or administer their chapter 11 cases. Any such disruption could adversely affect customer goodwill and employee relations, which, in turn, could negatively affect the Debtors' revenues. Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 cases.

7.      On average, the Debtors directly pay approximately $828,000.00 each month for Utility Services, calculated as a historical average payment for a twelve-month period, which is representative of the Debtors' ongoing obligations. Accordingly, the Debtors estimate that their cost for Utility Services during the next thirty (30) days (not including any deposits to be paid) will be approximately $828,000.00. The Debtors estimate they do not have any amounts currently held as security deposits with respect to any Utility Provider.

8.      In addition, the Debtors also indirectly remit payment to certain of these Utility Providers through the Debtors' landlords (collectively the "Landlords"), who pay certain Utility Providers directly for 'non-technical' Utility Services such as water, sewer, trash, electric, and gas. These Utility Services are paid directly by the Landlords and therefore the Proposed Adequate Assurance (as defined herein) does not allocate any amounts toward these Utility Providers because they do not directly rely on the Debtors for payment for such Utility Services. Out of an abundance of caution, however, the relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtors.

## I.      The Proposed Adequate Assurance and Adequate Assurance Procedures.

9.      The Debtors intend to pay post-petition obligations owed to direct Utility Providers in the ordinary course of their businesses and in a timely manner. Cash held by the Debtors, cash generated in the ordinary course of their businesses, and cash available to the Debtors under their

proposed post-petition financing facilities will provide sufficient liquidity to pay the Debtors'

Utility Service obligations in accordance with their pre-petition practice.

10.    To provide additional assurance of payment, the Debtors propose to deposit

$414,000.00 (the "Adequate Assurance Deposit") into a segregated account for the benefit of the

Utility Providers (the "Adequate Assurance Account").    The Adequate Assurance Deposit

represents an amount equal to approximately one half of the Debtors' average monthly direct cost

of Utility Services, calculated based on the Debtors' average utility expenses over a twelve month

period, which is representative of the Debtors' ongoing obligations.    The Adequate Assurance

Deposit will be held in the Adequate Assurance Account for the duration of these chapter 11 cases

and may be applied to any post-petition defaults in payment to the Utility Providers.    The Adequate

Assurance Deposit will be held by the Debtors; no liens will encumber the Adequate Assurance

Deposit or the Adequate Assurance Account unless specifically approved by Court order.    The

Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to

pay for future Utility Services in accordance with their pre-petition practices (collectively, the

"Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility

Providers in full satisfaction of section 366 of the Bankruptcy Code.

11.    Any Utility Provider that is not satisfied with the Proposed Adequate Assurance

may    make    a    request    for    adequate    assurance    of    future    payment

(each, an "Adequate Assurance Request") pursuant to the adequate assurance procedures set forth

in the Proposed Interim Order and Proposed Final Order (the "Adequate Assurance Procedures").

The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address

potential concerns with respect to the Proposed Adequate Assurance, while allowing the Debtors

to administer their chapter 11 estates uninterrupted.    More specifically, the Adequate Assurance

5

Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Adequate Assurance Request upon certain notice parties. The Debtors may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Debtors determine that the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors will seek Court resolution of the Adequate Assurance Request. Moreover, unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid pre-petition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

12.     Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility Providers, including any subsequently added Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance.

## II.     Subsequently Identified Utility Providers

13.     To the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors seek authority to add or remove such parties from the Utility Providers List. For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors will serve such Utility Provider a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and provide such Utility Provider two weeks' notice to object to the inclusion of such Utility Provider on the Utility Providers List.

The Debtors request that the terms of that order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider.

**Basis for Relief**

14.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date.    *See* 11 U.S.C.  § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for post-petition utility services in a form "satisfactory" to the utility provider within thirty (30) days of the petition date, or the utility provider may alter, refuse, or discontinue service.    11 U.S.C. § 366(c)(2). Section 366(c)(1) enumerates what constitutes "assurance of payment."    11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1,3 (S.D.N.Y. 1996), *aff'd sub nom., Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997) ("Section 366(b) requires . . . 'adequate assurance' of payment.  The statute does not require an absolute guarantee of payment.") (citation omitted).

15.     When considering whether a given assurance of payment is "adequate," courts should examine the totality of the circumstances to make an informed decision as to whether a utility provider will be subject to an unreasonable risk of nonpayment. *See Mass. Elec. Co. v. Keydata Corp.* (*In re Keydata Corp.*), 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002).  In determining the requisite level of adequate assurance, however, "a

7

bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also Great Atl. & Pac.*, 2011 WL 5546954, at *5–6 (holding that no additional adequate assurance deposit was necessary where such deposit would impose an unreasonable burden on reorganizing debtors). Accordingly, demands by a utility provider for a guarantee of payment should be refused when a debtor's specific circumstances already afford adequate assurance of payment.

16.     Here, the Utility Providers are adequately assured against any risk of nonpayment for future services.  The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future utility obligations.  Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

17.     Courts may fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order.").  Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.*  Here,

notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *5. The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility Provider could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5. Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein.

18.    Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance. Indeed, similar procedures have been approved by courts in this district. *See, e.g., In re GTT Communications, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021); *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Aug. 20, 2021); *In re LATAM Airlines Group S.A.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. June 30, 2020); *In re Centric Brands Inc.*, Case No. 20-22637 (SHL) (Bankr. S.D.N.Y. June 10, 2020); *In re LSC Communications, Inc.*, Case No. 20-10950 (SHL) (Bankr. S.D.N.Y.

May 12, 2020); *In re Barneys New York, Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug.

22, 2019).

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

19.     The Debtors expect to have sufficient funds to pay any amounts described in this

motion in the ordinary course of their businesses by virtue of expected cash flows from the ongoing

operations of their businesses and anticipated access to cash collateral and postpetition

financing.  In addition, under the Debtors' existing cash management system, the Debtors can

readily identify checks or wire transfer requests as relating to any authorized payment in respect

of the relief requested herein.  Accordingly, the Debtors believe there is minimal risk that checks

or wire transfer requests that the Court has not authorized will be inadvertently made.  Therefore,

the Debtors respectfully request that the Court authorize all applicable financial institutions, when

requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer

requests in respect of the relief requested in this motion; *provided that* sufficient funds are on

deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

20.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after

the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."

For the reasons discussed above, the Debtors believe an immediate and orderly transition into

chapter 11 is critical to the viability of their operations and that any delay in granting the relief

requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the

failure to receive the requested relief during the first 21 days of these chapter 11 cases would

severely disrupt the Debtors' operations at this important juncture.  For the reasons discussed

herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary

course and preserve the ongoing value of the Debtors' operations and maximize the value of their

estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied

the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the

relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21.     To implement the foregoing successfully, the Debtors request that the Court enter

an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the 14-day stay period under

Bankruptcy Rule 6004(h).

## Reservation of Rights

22.     Nothing contained in this motion or any order granting the relief requested in this

motion, and no action taken pursuant to such relief requested or granted (including any payment

made in accordance with any such order), is intended as or should be construed or deemed to be:

(a) an admission as to the amount of, basis for, or validity of any claim against a Debtor, under the

Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other

party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay

any particular claim, (d) an implication, admission or finding that any particular claim is an

administrative expense claim, other priority claim or otherwise of a type specified or defined in

this motion or any order granting the relief requested by this motion, (e) a request or authorization

to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code, (f) an admission as to the validity, priority, enforceability or perfection of any

lien on, security interest in, or other encumbrance on property of the Debtors' estates, or (g) a

waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

### Motion Practice

23.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### Notice

24.    The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Proskauer Rose LLP, as counsel to MidCap Funding IV Trust, in its capacity as (i) administrative agent and collateral agent under the Debtors' prepetition asset-based lending facility, (ii) administrative agent and collateral agent under the ABL DIP Liability, and (iii) ABL DIP Lender; (d) Morgan Lewis & Bockius LLP, as counsel to Crystal Financial LLC, in its capacity as administrative agent for the SISO Term Loan; (e) Alter Domus, in its capacity as administrative agent for the Tranche B; (f) Latham & Watkins, LLP, as counsel to Citibank N.A., in its capacity as 2016 Term Loan Agent; (g) Quinn Emanuel Urquhart & Sullivan, LLP, in its capacity as counsel to the putative 2016 Term Loan group; (h) Akin Gump Strauss Hauer & Feld, LLP, in its capacity as counsel to an ad hoc group of 2016 Term Loan lenders; (i) Paul Hastings LLP, as counsel to Jefferies Finance LLC, in its capacity as BrandCo agent and DIP agent; (j) Davis Polk & Wardwell LLP and Kobre & Kim LLP, in their capacity as counsel to the ad hoc group of Term Loan DIP lenders and BrandCo lenders; (k) King & Spalding, LLP, in its capacity as counsel to Blue Torch Finance LLC, in its capacity as Foreign ABTL Facility administrative agent; (l) U.S. Bank National Association, as indenture trustee for the

Debtors' pre-petition unsecured notes, and any counsel thereto; (m) the United States Attorney's Office for the Southern District of New York; (n) the Internal Revenue Service; (o) the Securities Exchange Commission; (p) the attorneys general for the states in which the Debtors operate; (q) the Utility Providers; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

25.     No prior request for the relief sought in this Motion has been made to this or any other court.


*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Interim Order and

the Proposed Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**,

granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated: June 15, 2022

/s/ Paul M. Basta
Paul M. Basta, Esq.
Alice Belisle Eaton, Esq.
Kyle J. Kimpler, Esq.
Robert A. Britton, Esq.
Brian Bolin, Esq.
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
aeaton@paulweiss.com
kkimpler@paulweiss.com
rbritton@paulweiss.com
bbolin@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| REVLON, INC., *et al.*,[1] | Case No. 22-10760 (___) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. __** |

### INTERIM ORDER (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (B) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Interim Order"), (a) prohibiting Utility Providers from altering, refusing, or discontinuing services; (b) determining adequate assurance of payment for future Utility Services; (c) establishing procedures for determining adequate assurance of payment for future Utility Services; (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in

---

[1]   The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate

under the circumstances and no other notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      No later than three (3) business days after the date this Interim Order is entered, the

Debtors shall serve a copy of this Interim Order on any Utility Provider identified prior to the entry

of this Interim Order.

3.      The Debtors are authorized to cause the Adequate Assurance Deposit to be held in

a segregated account during the pendency of these chapter 11 cases, and to the extent necessary,

this Interim Order authorizes the Debtors to open a new bank account for purposes of the Adequate

Assurance Account.

4.      The Adequate Assurance Deposit, together with the Debtors' ability to pay for

future utility services in the ordinary course of their businesses subject to the Adequate Assurance

Procedures, shall constitute adequate assurance of future payment as required by section 366 of

the Bankruptcy Code.

5.      If an amount relating to Utility Services provided post-petition by a Utility Provider

is unpaid, and remains unpaid beyond any applicable grace period under the applicable payment

terms, such Utility Provider may request a disbursement from the Adequate Assurance Account

by giving notice to:  (a) the Debtors, Revlon, Inc., One New York Plaza, New York, NY 10004, Attn.: Andrew Kidd;  (b) proposed counsel to the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn.: Kyle J. Kimpler and Robert A. Britton; (c) the Office of the United States Trustee, Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.: Brian Masumoto; (d) counsel to any official committee appointed in these chapter 11 cases, and (e) counsel to the ad hoc group of Term Loan DIP lenders and BrandCo lenders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut and Stephanie P. Massman), and the lenders under the Debtors' DIP Term loan facility  (collectively, the "Notice Parties").  The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

6.       The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the earlier of (a) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (b) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

7.       The following "Adequate Assurance Procedures" are hereby approved on a final basis:

    a.       Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.  An Additional Assurance Request may be made at any time.

3

b. Any Additional Assurance Request must (i) be made in writing, (ii) identify the location for which Utility Services are provided, (iii) include information regarding any security deposits paid by the Debtors, (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider, and (v) explain the basis for the Request, including why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment, and (vi) certify the amount that is equal to two weeks of the Utility Services provided by the Utility Company to the Debtors, calculated as a historical average over the 12-month period preceding the Petition Date, and (vii) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

c. Upon the Debtors' receipt of an Adequate Assurance Request, the Debtors shall have twenty-one (21) business days from the receipt of the Adequate Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request; provided, the Debtors and Utility Provider may extend the Resolution Period by mutual agreement.

d. Subject to the terms of any DIP Orders, the Debtors may, without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, to be made available, on request, to the Notice Parties.

e. If the Debtors determine, in their sole discretion, that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code. Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of: (i) unpaid charges for pre-petition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

8. The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

9.      Unless and until a Utility Provider files or serves an Additional Assurance Request, the Utility Provider shall be (a) deemed to have received "satisfactory" adequate assurance of payment in compliance with Section 366 of the Bankruptcy Code and (b) forbidden from (i) discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid pre-petition charges, the commencement of these chapter 11 cases, or any perceived inadequacy of the Proposed Adequate Assurance, or (ii) requiring additional assurance of payment other than the Proposed Adequate Assurance.

10.      If the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors are authorized to add or remove such parties from the Utility Providers List; provided, however, that the Debtors shall provide notice of any such addition or removal to the Notice Parties. To the extent that there is any dispute as to the postpetition amounts owed to a Utility Company, such Utility Company shall not be removed from the Utility Services List, and no funds shall be removed from the Adequate Assurance Deposit, until such dispute has been resolved.

11.      For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors shall serve such Utility Provider a copy of this Interim Order, including the Adequate Assurance Procedures, and provide such Utility Provider two (2) weeks' notice to object to the inclusion of such Utility Provider on the Utility Providers List.  The terms of this order and the Adequate Assurance Procedures shall apply to any subsequently identified Utility Provider.

12.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

13.      Notwithstanding anything to the contrary in this Interim Order, nothing contained in the Motion or this Interim Order, and no action taken pursuant to such relief requested or granted

5

(including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor, under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  The rights of all parties in interest are expressly reserved.

14.    No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Interim Order without further court approval on notice to parties in interest.

15.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, on, or after, the Petition Date, *provided that* sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments, and all such banks and financial

institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

16.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with Utility Services to the extent payment thereof is authorized pursuant to the relief granted herein.

17.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

19.    The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

20.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| REVLON, INC., *et al.*,[1] | ) Case No. 22-10760 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. __** |

**FINAL ORDER (A) PROHIBITING UTILITY PROVIDERS FROM
ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES,
(B) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE
UTILITY SERVICES, (C) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Final Order"), (a) prohibiting Utility Providers from altering, refusing, or discontinuing services; (b) determining adequate assurance of payment for future Utility Services; (c) establishing procedures for determining adequate assurance of payment for future Utility Services; (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in

---

[1]   The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate

under the circumstances and no other notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      No later than three (3) business days after the date this Final Order is entered, the

Debtors shall serve a copy of this Final Order on any Utility Provider identified prior to the entry

of this Final Order.

3.      The Debtors are authorized to cause the Adequate Assurance Deposit to be held in

a segregated account during the pendency of these chapter 11 cases, and to the extent necessary,

this Final Order authorizes the Debtors to open a new bank account for purposes of the Adequate

Assurance Account.

4.      The Adequate Assurance Deposit, together with the Debtors' ability to pay for

future utility services in the ordinary course of their businesses subject to the Adequate Assurance

Procedures, shall constitute adequate assurance of future payment as required by section 366 of

the Bankruptcy Code.

5.      If an amount relating to Utility Services provided post-petition by a Utility Provider

is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may

request a disbursement from the Adequate Assurance Account by giving notice to:  (a) the Debtors,

Revlon, Inc., One New York Plaza, New York, NY 10004, Attn.: Andrew Kidd; (b) proposed

counsel to the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the

Americas, New York, NY 10019, Attn.: Kyle J. Kimpler and Robert A. Britton; (c) the Office of

the United States Trustee, Southern District of New York, U.S. Federal Office Building, 201

Varick Street, Suite 1006, New York, New York 10014, Attn.: Brian Masumoto; and (d) counsel

to any official committee appointed in these chapter 11 cases; (e) counsel to the ad hoc group of

Term Loan DIP lenders and BrandCo lenders, Davis Polk & Wardwell LLP, 450 Lexington

Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut and Stephanie P. Massman), and the

lenders under the Debtors' DIP Term loan facility  (collectively, the "Notice Parties").  The

Debtors shall honor such request within five business days after the date the request is received by

the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve

any dispute regarding such request without further order of the Court.  To the extent a Utility

Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall

replenish the Adequate Assurance Account in the amount disbursed.

6.      The portion of the Adequate Assurance Deposit attributable to each Utility Provider

shall be returned to the Debtors on the earlier of (a) reconciliation and payment by the Debtors of

the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following

the Debtors' termination of Utility Services from such Utility Provider and (b) the effective date

of any chapter 11 plan confirmed in these chapter 11 cases.

7.      The following "Adequate Assurance Procedures" are hereby approved on a final

basis:

f.      Any Utility Provider desiring additional assurances of payment in the form
of deposits, prepayments, or otherwise must serve a request for additional
assurance (an "Additional Assurance Request") on the Notice Parties.  An
Additional Assurance Request may be made at any time.

3

g.    Any Additional Assurance Request must (i) be made in writing, (ii) identify the location for which Utility Services are provided, (iii) include information regarding any security deposits paid by the Debtors, (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider, and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

h.    Upon the Debtors' receipt of an Adequate Assurance Request, the Debtors shall have 21 days from the receipt of the Adequate Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request; provided, the Debtors and Utility Provider may extend the Resolution Period by mutual agreement.

i.    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable.

j.    If the Debtors determine, in their sole discretion, that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.  Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of:  (i) unpaid charges for pre-petition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

8.    The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

9.    Unless and until a Utility Provider files or serves an Additional Assurance Request, the Utility Provider shall be (a) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (b) forbidden from (i) discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid pre-petition charges, the commencement of these chapter 11 cases, or any

perceived inadequacy of the Proposed Adequate Assurance, or (ii) requiring additional assurance of payment other than the Proposed Adequate Assurance.

10.     If the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors are authorized to add or remove such parties from the Utility Providers List; provided, however, that the Debtors shall provide notice of any such addition or removal to the Notice Parties. To the extent that there is any dispute as to the postpetition amounts owed to a Utility Company, such Utility Company shall not be removed from the Utility Services List, and no funds shall be removed from the Adequate Assurance Deposit, until such dispute has been resolved.

11.     For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors shall serve such Utility Provider a copy of this Final Order, including the Adequate Assurance Procedures, and provide such Utility Provider two weeks' notice to object to the inclusion of such Utility Provider on the Utility Providers List.  The terms of this order and the Adequate Assurance Procedures shall apply to any subsequently identified Utility Provider.

12.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

13.     Notwithstanding anything to the contrary in this Final Order, nothing contained in the Motion or this Final Order, and no action taken pursuant to such relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor, under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that

5

any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  The rights of all parties in interest are expressly reserved.

14.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Final Order without further court approval on notice to parties in interest.

15.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, on, or after, the Petition Date, provided that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

16.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests

that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with Utility Services to the extent payment thereof is authorized pursuant to the relief granted herein.

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

19.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

20.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

7

**<u>Exhibit C</u>**

**Utility Providers List**

**Utility Providers**

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Advanced Disposal Services | 90 Fort Wade Road Suite 200 Ponte Vedra FL, 32081 United States | PC002809; 2-66080-12378 | Waste Management | $4,393.51 | $2,196.76 |
| Airgas USA LLC | 259 N Radnor Chester Rd Ste 100 Radnor PA, 19087-5240 United States | 2765210; 2758254 | Natural Gas | $6,692.95 | $3,346.47 |
| Allstream Business Inc. | 18110 SE 34Th Street Bldg. One Suite 100 Vancouver WA, 98683 United States | 1132259; 490290 | Telecommunications | $1,814.26 | $907.13 |
| American Electric Power | 1 Riverside Plaza Columbus OH, 43215-2372 United States | 021-529-452-0-6; 029-637-010-0-4 | Electricity | $27,128.69 | $13,564.34 |
| AT&T | 208 S. Akard St. Dallas TX, 75202 United States | 9043 7849 9200 10567 | Telecommunications | $1,319.88 | $659.94 |
| BCM One Inc | 295 Madison Ave 5th Floor New York NY, 10017 United States | 20102 | Telecommunications | $19,192.03 | $9,596.02 |

| Utility Company | Address | Account Number(s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Bell Canada | 1 Carrefour Alexander-Graham-Bell Building A, 4th Floor Verdun QC, H3E 3B3 Canada | 905 565 7047 (816) | Telecommunications | $1,917.19 | $958.59 |
| Bell Mobility Inc. | 1 Carrefour Alexander-Graham-Bell Building A, 4th Floor Verdun QC, H3E 3B3 Canada | 527658950 | Telecommunications | $2,928.91 | $1,464.46 |
| BFI Waste Services, LLC | 260 W Dickman St Baltimore MD, 21230-5005 United States | 3-0973-0003231; 3-0973-0009688 | Waste Management | $9,958.24 | $4,979.12 |
| Black Hills Energy | Rapid City Corporate Headquarters Black Hills Corporation 7001 Mount Rushmore Road Rapid City SD, 57702 United States | 3492 4793 23 | Natural Gas | $180.48 | $90.24 |
| Blue Pencil Mobile Shredding | 761 Redwood Square Oakville ON , L6L 6R6 Canada | 3862 | Waste Management | $46.19 | $23.10 |

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Century Link | Lumen -Corporate Headquarters 100 CenturyLink Drive Monroe LA, 71203 United States | 488774052; 78809541 | Telecommunications | $80,014.43 | $40,007.22 |
| City Of Oxford | 127 Penn Ave Oxford NC, 27565 United States | 070-0380-001; 070-0390-001; 070-0391-001 | Water and Sewage | $79,130.60 | $39,565.30 |
| City Of Salem | 114 N. Broad St Salem VA, 24153 United States | 02013-001;  02014-001; 02287-001; 02016-001; 02010-001; 02008-001 | Electricity and Water | $9,741.78 | $4,870.89 |
| Coastal Electrical Co. Of Fla | 2759 St Johns Bluff Rd S Jacksonville FL, 32246 United States | N/A | Electricity | $1,343.82 | $671.91 |
| Cogent Communications | 2450 N Street, NW Washington DC, 20037 United States | REVLON00002 | Telecommunications | $1,225.00 | $612.50 |
| Comcast | Comcast Center 1701 JFK Boulevard Philadelphia PA, 19103 United States | 963262819; 8299 60 084 0255590; 8299 60 084 0533319 | Telecommunications | $7,955.39 | $3,977.69 |
| Comed | Exelon Corporation 10 S. Dearborn St., 54th Floor PO Box 805398 Chicago IL, 60680-5398 United States | 5140152026 | Electricity | $288.58 | $144.29 |

3

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Corodata Shredding, Inc. | 12375 Kerran St.Poway CA, 92064United States | SD011974; SD011974 | Waste Management | $56.73 | $28.36 |
| Cox Communications | 6205-B Peachtree Dunwoody Road NE Atlanta GA, 30328 United States | 001 0819 075701301; 001 5310 003339301 | Telecommunications | $2,178.43 | $1,089.22 |
| Crown Castle Fiber LLC. | 1220 Augusta Drive Suite 600 Houston TX, 77057 United States | B17424 | Telecommunications | $3,760.65 | $1,880.32 |
| Dominion Energy | 120 Tredegar Street Richmond VA, 23219 United States | 1-1981-0420-7989 | Natural Gas and Electricity | $5,217.99 | $2,608.99 |
| Duke Energy Progress | 550 South Tryon Street Charlotte NC, 28202-1904 United States | 9100 8310 3263; 9100 8310 3924; 9100 8310 3263; 9100 8310 3263; 9100 8310 3924; 9100 8310 3776; 9100 8310 3594 | Electricity | $131,225.65 | $65,612.82 |
| EDCO Waste And Recycling | 6670 Federal Blvd Lemon Grove CA, 91945 United States | 25-1A 032419 | Waste Management | $148.86 | $74.43 |
| Enbridge | 200 Fifth Avenue Place 425 - 1St Street S.W. Calgary AB, T2P 3L8 Canada | 82 18 88 77999 5 | Natural Gas | $4,661.21 | $2,330.61 |

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Enersource Hydro Mississauga | 3240 Mavis Road Mississauga ON, L5C3K1 Canada | 7631537675 | Electricity | $7,155.40 | $3,577.70 |
| Federal International Recycling And | 7935 Clayton Rd St. Louis MO, 63117 United States | N/A | Waste Management | $525.00 | $262.50 |
| Fine Recycling And Disposal Lt | 400 Eastern Ave Ste 202 Toronto ON, M4M 1B9 Canada | N/A | Waste Management | $1,234.89 | $617.45 |
| Frontier | 401 Merritt 7 Norwalk CT, 06851 United States | 845-928-0703-022222-7 | Telecommunications | $61.26 | $30.63 |
| Giant Resource Recovery | 654 Judge Street Harleyville SC, 29488 United States | 40957 | Waste Management | $43,957.48 | $21,978.74 |
| GS1 Canada | 1500 Don Mills Road Suite 800 Toronto ON, O M3B 3K4 Canada | 0068782001097 | Telecommunications | $6,261.74 | $3,130.87 |
| Interconn Resources | 2000A Southbridge Pkwy Ste. 330 Birmingham AL, 35209 United States | 211005316016 | Natural Gas | $6,023.64 | $3,011.82 |
| JEA | 225 North Pearl Street | 1731044200; 1365244200 | Electricity, Water, and Sewage | $78,238.25 | $39,119.13 |

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| | Jacksonville FL, 32202 United States | | | | |
| Level 3 Communications Llc | 1025 Eldorado Blvd Broomfield CO, 80021 United States | 1-C9GFB9 | Telecommunications | $39,667.42 | $19,833.71 |
| Mar Cor Purification Inc | 2850 Hitchcock Ave Downers Grove IL, 60515 United States | 403997 | Natural Gas | $3,319.30 | $1,659.65 |
| Merit Laboratories | 2680 E Lansing Dr #6909 East Lansing MI, 48823 United States | REV01(1) | Waste Management | $943.33 | $471.67 |
| Meritech Inc | 642 Tamco Road Reidsville NC, 27320 United States | N/A | Waste Management | $44.73 | $22.36 |
| Middlesex Water Co | 485C Route 1 South Suite 400 Iselin NJ, 08830 United States | 9581600000 | Water | $1,831.75 | $915.88 |
| Multi Material British Columbi | 230-171 Esplanade West North Vancouver BC, V7M 3J9 Canada | 1002191 | Waste Management | $1,459.82 | $729.91 |
| Multi Material Stewardship Man | 259 Portage Ave7th Floor 259Winnipeg MB, R3B 2A8Canada | 1002191 | Waste Management | $778.03 | $389.01 |

6

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| National Wireless | 1324 Dekalb Pike Blue Bell PA, 19422 United States | N/A | Telecommunications | $334.24 | $167.12 |
| Orange & Rockland | One Blue Hill Plaza Pearl River NY, 10965 United States | 34501-06030 | Electricity | $543.49 | $271.75 |
| Photech Environmental Solution | 940 Chippawa Creek Rd Niagra Falls ON, L2E 6S5 Canada | GEN REG ON6713949 | Waste Management | $5,628.10 | $2,814.05 |
| Premier Facility Management | 264 Lackawanna Ave Woodland Park NJ, 07424 United States | 59330 | Waste Management | $42,514.83 | $21,257.41 |
| Premier Water & Energy | 11481 Columbia Park Dr W Jacksonville FL, 32258 United States | COLO01 / COLOE1 | Water | $3,066.90 | $1,533.45 |
| PSE&G | 80 Park Pl Newark NJ, 7102 United States | 42 004 457 00 | Electricity | $50,065.65 | $25,032.82 |
| Region Of Peel | 10 Peel Centre Drive Brampton ON, L6T 4B9 Canada | 4023-9100-00 | Water and Sewage | $906.14 | $453.07 |
| Return Logistics International | 22 Artley Rd Savannah | Comp-08362; Comp-08620 | Waste Management | $4,937.10 | $2,468.55 |

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| | Savannah GA, 31408 United States | | | | |
| Republic Services | 18500 N. Allied Way #100 Phoenix AZ, 85054 United States | N/A | Waste Management | $408.34 | $204.17 |
| Roanoke Gas Company | 519 Kimball Ave NE Roanoke VA, 24016 United States | 0000552-0; 0698423-1; 0713520-5; 0721785-4; 0740454-4 | Natural Gas | $7,990.17 | $3,995.09 |
| SDGE | 8330 Century Park Ct San Diego CA, 92123 United States | 0054 2979 5572 9; 0046 7551 1809 7 | Electricity | $1,483.44 | $741.72 |
| Shamrock Environmental Corp. | 6106 Corporate Park Dr Browns Summit NC, 27214 United States | 17009364 | Waste Management | $16,602.02 | $8,301.01 |
| Shaw Direct | 630 3rd Ave SW Calgary AB, T2P 4L4 Canada | 200-1158-3451 | Telecommunications | $70.24 | $35.12 |
| Stericycle Inc | 2355 Waukegan Rd Bannockburn IL, 60015 United States | 8069161 | Waste Management | $3,206.46 | $1,603.23 |
| Stewardship Ontario | 1 St Clair Ave West 7th Floor Toronto ON, M4V 1K6 Canada | 1002222 | Waste Management | $2,959.05 | $1,479.53 |

| Utility Company | Address | Account Number[s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Teco Peoples Gas | 702 North Franklin Street Tampa FL, 33601 United States | 211005316016; 211005316255 | Natural Gas | $3,128.22 | $1,564.11 |
| Time Warner Cable | 400 Washington Blvd Stamford CT, 06901 United States | 73410801 | Telecommunications | $5,450.48 | $2,725.24 |
| Township Of Edison | 100 Municipal Blvd Edison NJ, 8817 United States | 3620-1 | Waste Management and Sewage | $2,368.03 | $1,184.01 |
| UGI Energy Services Inc | 835 Knitting Mills Way Wyomissing PA, 19610 United States | PG000012074862944510 | Natural Gas | $22,416.84 | $11,208.42 |
| Upper Piedmont Environmental I | 9650 Oxford Road Rougemont NC, 27572 United States | 4-3038-0000188 | Waste Management | $7,703.02 | $3,851.51 |
| Verizon | 1095 Avenue Of The Americas New York NY, 10036 United States | 282662134-00001 | Telecommunications | $36,130.36 | $18,065.18 |
| Waste Industries | 800 East Grand Street Elizabeth NJ, 07201 United States | 221910 | Waste Management | $14,783.18 | $7,391.59 |
| Western Virginia Water Authority | 601 S. Jefferson Street | 111377-523693 | Water | $1,103.54 | $551.77 |

| Utility Company | Address | Account Number(s] | Type of Utility Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| | Roanoke VA, 24011 United States | | | | |
| **Total** | | | | **$827,823.30** | **$413,911.65** |