Paul M. Basta, Esq.
Alice Belisle Eaton, Esq.
Kyle J. Kimpler, Esq.
Robert A. Britton, Esq.
Brian Bolin, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| REVLON, INC., *et al.*,[1] | Case No. 22-10760 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE CITIBANK APPEAL OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW A RULING TO ISSUE IN THE CITIBANK APPEAL**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

---

[1] The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

**Relief Requested**

1.       By this motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, confirming that the automatic stay does not apply to the Citibank Appeal (as defined below).  In the alternative, the Debtors respectfully request that the automatic stay be lifted so that the Citibank Appeal may proceed before the Second Circuit Court of Appeals.[2]

**Preliminary Statement**

2.       A unique issue that is likely to affect the efficient administration of these chapter 11 cases is the determination of who holds over $500 million of the Debtors' 2016 Term Loans (as defined below).[3]  That issue is presently before the Second Circuit Court of Appeals—a proceeding to which the Debtors are *not* a party.  Because the Debtors believe that a prompt resolution of that appeal will aid in the efficient administration of these cases, they seek confirmation that the automatic stay triggered by the filing of these chapter 11 cases will not stay or otherwise impede the Citibank Appeal.

3.       The Citibank Appeal stems from a nearly $1 billion mistake by Citibank N.A. ("Citibank"), the administrative agent for the 2016 Term Loans.  Citibank—using its own funds—accidentally paid off the entire balance of the 2016 Term Loans, approximately $900 million in amount.  Twenty hours later, Citibank sent recall notices to all 2016 Term Loan lenders informing them of the error, but holders of over $500 million of the 2016 Term Loan declined to return the funds (the "Non-Returning Lenders"), asserting that the loans had been discharged for value under

---

[2]   For avoidance of doubt, the only relief the Debtors seek through this motion is relief that would allow the Second Circuit to issue its decision on the Citibank Appeal.  By this motion, the Debtors do not argue that the stay is inapplicable to any subsequent or related litigation that may result from the Second Circuit's ruling, and do not argue that the stay should be lifted as to any such subsequent or related litigation.

[3]   In the event that the Second Circuit rules in favor of the Non-Returning Lenders, the Debtors reserve all rights and defenses with respect to any claim Citibank may assert against the Debtors.

2

the New York Court of Appeals decision *Banque Worms* v. *BankAmerica Int'l*, 77 N.Y.2d 362, 568 N.Y.S.2d 541, 570 N.E.2d 189, 196 (1991). Citibank sued. The Non-Returning Lenders prevailed in the U.S. District Court after a six-day trial, *see In re Citibank August 11, 2020 Wire Transfers*, 520 F. Supp. 3d 390 (S.D.N.Y. 2021) (Furman, J.), and assert that their loans have been paid off and that they are merely contingent creditors of the Debtors, having been repaid in full. Citibank appealed to the Second Circuit, which heard oral argument in September 2021 but has not yet ruled. While this action remains pending, there remains an open question as to who holds more than $500 million of the 2016 Term Loans—more than 50% of the original principal amount of such loans.

4.      The Debtors believe that resolution of the Citibank Appeal will expedite these chapter 11 cases, as it will clarify the identity and extent of the Debtors' stakeholders, enable negotiations with those stakeholders, and foster the Debtors' ability to seek consensual resolutions of numerous issues in these cases. Therefore, the Debtors seek relief to prevent any incidental delay that their bankruptcies may cause in resolving the Citibank Appeal. While the Debtors do not believe that their chapter 11 cases would stay the Second Circuit's ruling in the Citibank Appeal, they move for an order confirming this understanding. In the alternative, if this Court concludes that the automatic stay applies to the Citibank Appeal, the Debtors seek an order lifting the stay for the limited purpose of allowing the Second Circuit to issue a decision.

**Statement of Facts**

**I.    The 2016 Term Loans and Mistaken Payment**[4]

5.      In 2016, Revlon acquired Elizabeth Arden, a significant cosmetics brand. First Day Declaration ¶ 33. Revlon financed this acquisition with, among other things, a senior secured term

---

[4] A description of the Debtors' businesses, the reasons for commencing these chapter 11 cases, the relief sought from the Court to allow for a smooth transition into chapter 11, and the facts and circumstances supporting this

3

loan issued in 2016 (the "2016 Term Loan"). *Id.* at ¶ 34. In August 2020, Citibank acted as the agent on the 2016 Term Loan. Findings of Fact and Conclusions of Law, *In re Citibank August 11, 2020 Wire Transfers*, 1:20-cv-06539 (JMF) (S.D.N.Y. Feb. 16, 2021), ECF No. 243 ("District Court Ruling"), 2.

6. As administrative agent, Citibank was responsible for, among other things, processing Revlon's interest payments. *Id*. at 4. On August 11, 2020, Revlon directed Citibank to pay accrued (interim) interest on the 2016 Term Loan in an amount totaling approximately $7.8 million, which Revlon wired to Citibank. *Id*. at 9-11. However, Citibank accidentally paid all principal and interest outstanding on the 2016 Term Loans in full (about $900 million) from its own funds due to a processing mistake by its loan operations department (the "Mistaken Principal Payment"). *Id*. at 9-17, 35 n.19.

7. When Citibank realized its error, it reached out to the 2016 Term Loan lenders and asked for its money back. *Id*. at 18-19. Some 2016 Term Loan lenders, holding about $500 million, declined to return their share of the Mistaken Principal Payment, and Citibank subsequently sued to recover their portion of the Mistaken Principal Payment (such 2016 Term Loan lenders, the "Non-Returning Lenders"), asserting claims for unjust enrichment, conversion, money had and received, and payment by mistake. *Id*. at 3, 27.

8. The litigation proceeded on an expedited schedule. Citibank first filed a complaint on August 17, 2020, and a trial was completed before the Honorable Jesse M. Furman in the District Court for the Southern District of New York in December 2020. First Day Declaration ¶¶ 95-96. Revlon was not a party to that case.

---

motion are set forth in the *Declaration of Robert M. Caruso, Chief Restructuring Officer, (I) in Support of First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration"), filed contemporaneously herewith.

4

9. In February 2021, the trial Court issued an opinion and order ruling in favor of the Non-Returning Lenders, holding that pursuant to the "discharge for value" defense, the Mistaken Principal Payment was a "final and complete transaction, not subject to revocation." District Court Ruling at 100 (citing *Banque Worms* v. *BankAmerica Int'l*, 570 N.E.2d 189, 196 (N.Y. 1991)).

10. Citibank appealed the District Court Ruling to the Second Circuit Court of Appeals (such appeal, the "<u>Citibank Appeal</u>"). The appeal was fully briefed on July 22, 2021, and oral arguments were held on September 29, 2021. First Day Declaration, ¶ 96. The Second Circuit has not yet ruled, nor indicated a timeframe in which it will rule. *Id*. at ¶ 97.

11. The portion of the 2016 Term Loans that was held by the Non-Returning Lenders before the Mistaken Principal Payment represents more than half, by principal amount, of the 2016 Term Loan. First Day Declaration ¶ 14. As a result, until such time that the Citibank Appeal is fully resolved, there is uncertainty as to whether any party can speak for the majority of the 2016 Term Loan lenders, since the Non-Returning Lenders assert that they have been repaid in full and Citibank refutes that assertion. While a certain group of lenders did return the Mistaken Principal Payment (the "<u>Returned Payment Lenders</u>"), and therefore acknowledge that they are, in fact, creditors of the Debtors, such Returned Payment Lenders represent less than a majority of the principal amount of the 2016 Term Loans. The uncertainty over who holds a majority of the 2016 Term Loans is likely to impede the efficient administration of these chapter 11 cases.

## Jurisdiction and Venue

12. The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry

5

of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14. The bases for the relief sought herein are sections 105 and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rule 4001(a)(3) and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Argument

**II.    The Automatic Stay Does Not Apply to the Citibank Appeal**

15. The automatic stay does not apply because the Citibank Appeal involves an action by a non-debtor, Citibank, against other non-debtors, the Non-Returning Lenders, regarding funds that do not belong to the Debtors. Under section 362 of the Bankruptcy Code, the automatic stay applies to, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1) (emphasis added). The automatic stay promotes two principal purposes of the Bankruptcy Code. *In re Ionosphere Clubs*, *Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). First, the automatic stay "provides the debtor with a breathing spell" from its creditors. *Id.* (citing *Teachers Ins. & Annuity Ass'n of America* v. *Butler*, 803 F.2d 61, 64 (2d Cir.1986)). Second, it allows the bankruptcy court to centralize all disputes concerning the property of the debtor's estate in the bankruptcy court so that the reorganization can proceed efficiency. *Id.* The Bankruptcy Code "provide[s] for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy

6

Court, and [this policy] is effectuated by Sections 362 and 105 of the Code." *In re Chateaugay Corp.*, 109 B.R. 613, 621 (S.D.N.Y.1990).

16. Importantly, "by its terms, [the automatic stay] applies only to debtors, property of the debtor, or property of the estate," *In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007). The Citibank Appeal is not an action against the Debtors, who have never been party to it. Similarly, the Citibank Appeal does not involve property of the Debtors: Citibank wired its own money (not the Debtors' money) to the Non-Returning Lenders when it made the Mistaken Principal Payment. In cases like this one, where the dispute is between non-debtors and will not involve estate property, continuing the dispute does "not run afoul of the stay." *In re HBL SNF, LLC*, 635 B.R. 725, 734 (Bankr S.D.N.Y. 2022) (concluding that the automatic stay in a debtor-tenant's chapter 11 case did not bar a creditor's foreclosure litigation against non-debtor landlord).

17. While the outcome of the Citibank Appeal will implicate who holds claims against the Debtors, this potential effect is insufficient to trigger application of the automatic stay. In appropriate circumstances, the automatic stay has been applied to cover claims against non-debtors where appropriate to protect a debtor's reorganization. As noted above, staying the Citibank Appeal would impede, not protect, these chapter 11 cases, and a prompt resolution of the Citibank Appeal will aid the Debtors' reorganization efforts. Additionally, there is no identity of interests between the Debtors and the Non-Returning Lenders or Citibank that would warrant the imposition of the automatic stay. *See, e.g., A.H. Robins Co.* v. *Piccinin*, 788 F.2d 994 (4th Cir. 1986). Several situations in which courts have found an identity of interest sufficient for stay extension are clearly inapplicable here: the Debtors have not indemnified the Non-Returning Lenders, *Queenie, Ltd.* v. *Nygard Intern.*, 321 F.3d 282, 287-88 (2d Cir. 2003), the Debtors' acts are not the focus of the litigation against the Non-Returning Lenders, *In re Continental Airlines*,

7

177 B.R 475, 479-80 (D. Del. 1993), and there is not a factual nexus between the claims asserted in the Citibank Appeal and any claims against the Debtors, *Dunaway* v. *Purdue Pharma L.P. (In re Purdue Pharma L.P.)*, 619 B.R. 38, 45 (S.D.N.Y. 2020).

18. Accordingly, the automatic stay does not apply to the Citibank Appeal.

### III. If the Automatic Stay Applies to the Citibank Appeal, There Is Cause to Lift the Stay to Allow the Second Circuit to Rule

19. Even if the automatic stay does apply to the Citibank Appeal, this Court should lift the stay to allow the Second Circuit to decide the Citibank Appeal, as doing so is in the interest of these chapter 11 cases. The uncertainty regarding who holds approximately $500 million of the 2016 Term Loans may derail the efficient administration of these chapter 11 cases, and therefore lifting the stay to allow the Second Circuit to issue a ruling in the Citibank Appeal would aid in the administration of the cases without prejudicing the Debtors or their estates.

20. Section 362 of the Bankruptcy Code allows the automatic stay to be lifted for "cause." 11 U.S.C. § 362(d)(1). While the Bankruptcy Code does not define cause, courts have developed a variety of analyses depending on the precise type of stay relief sought. In this case, where stay relief is sought to allow the continuation of a pending appeal, the Second Circuit suggested twelve relevant factors for courts to consider before determining whether there is cause to lift the stay. *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re HBL SNF, LLC*, 635 B.R. at 733 (applying *Sonnax* factors).[5] The *Sonnax* factors, at a high level, involve two

---

[5] The factors found relevant in *Sonnax* were: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of

8

inquiries: would the bankruptcy be harmed by lifting the stay and allowing the litigation to continue outside the bankruptcy court, and is there a meaningful benefit to be gained by having another court resolve those issues, and they both weigh in favor of lifting the stay to allow the Second Circuit to rule on the Citibank Appeal.

21. First, the Debtors' estates would not be harmed if the Second Circuit ruled on the Citibank Appeal. The concerns raised by other courts applying the *Sonnax* factors, like the cost and distraction of litigation, *In re Residential Capital, LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013), or unequal distributions to unsecured creditors who might recover more than other creditors, *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.NY. 1992), do not apply because the Debtors are not a party to the Citibank Appeal and a ruling will not deplete the Debtors' estates. Further, allowing the action to proceed outside of this Court makes sense because the Citibank Appeal is almost over: all briefing and oral argument is already complete.

22. Additionally, the efficient administration of these cases would be promoted by a prompt resolution of the Citibank Appeal. A ruling by the Second Circuit would clarify the identity of the Debtors' stakeholders and facilitate the Debtors' ability to engage in negotiations with those stakeholders. Resolving the issues presented in the Citibank Appeal anywhere but the Second Circuit would lead to substantial and unnecessary delays and costs. Accordingly, lifting the stay would provide a significant benefit to the Debtors' estates.

### Waiver of Stay under Bankruptcy Rule 4001(a)(3)

23. Pursuant to Bankruptcy Rule 4001(a)(3), an order granting relief from the automatic stay is "stayed until the expiration of fourteen (14) days after the entry of the order,

---

litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms."

9

unless the Court orders otherwise." Bankruptcy Rule 4001(a)(3). Given the nature of the relief requested herein, to the extent applicable, the Debtors submit that it is appropriate that the 14-day stay of Bankruptcy Rule 4001(a)(3) be waived.

[*Remainder of page left blank intentionally.*]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the forms attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

| | |
|---|---|
| New York, New York<br>Dated: June 15, 2022 | */s/ Paul M. Basta*<br>Paul M. Basta, Esq.<br>Alice Belisle Eaton, Esq.<br>Kyle J. Kimpler, Esq.<br>Robert A. Britton, Esq.<br>Brian Bolin, Esq.<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>pbasta@paulweiss.com<br>aeaton@paulweiss.com<br>kkimpler@paulweiss.com<br>rbritton@paulweiss.com<br>bbolin@paulweiss.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| REVLON, INC., *et al.*,[1] | ) Case No. 22-10760 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. __** |

**ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE CITIBANK APPEAL**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), confirming that the automatic stay does not apply to the Citibank Appeal and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

---

[1] The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The automatic stay does not apply to the Citibank Appeal and, accordingly, these chapter 11 cases shall not affect the Citibank Appeal currently pending before the Second Circuit Court of Appeals.

3. To the extent that the automatic stay applies to the Citibank Appeal, it is modified to allow the Citibank Appeal to proceed.

4. Notwithstanding Bankruptcy Rule 4001(a)(3), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

6. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE