**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| REVLON, INC., *et al.*,[1] | ) | Case No. 22-10760 (DSJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

# FINAL ORDER (I) AUTHORIZING
## THE DEBTORS TO (A) OBTAIN POSTPETITION
## FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING
## LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
## EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE
## PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY,
## AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**DIP Motion**")[2] of Revlon, Inc. and each of its affiliates that are debtors and debtors-in-possession (each, a "**Debtor**" and, collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

---

[1] The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.kroll.com/revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

[2] Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the Term DIP Credit Agreement (as defined herein) or the ABL DIP Credit Agreement (as defined herein), as applicable.

and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), seeking entry of this final order (this "**Final Order**") among other things, on a final basis:

(i)    authorizing Revlon Consumer Products Corporation (the "**Borrower**" or "**RCPC**") to obtain postpetition financing ("**DIP Financing**") pursuant to:

    a.    a superpriority, senior secured and priming debtor-in-possession term loan credit facility (the "**Term DIP Facility**"), subject to the terms and conditions set forth in that certain Superpriority Senior Secured Debtor-in-Possession Term Loan Credit Agreement attached to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expenses Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [D.I. 70] (the "**Interim Order**") as <u>**Exhibit 1**</u> thereto (as amended, supplemented, or otherwise modified from time to time, the "**Term DIP Credit Agreement**"), by and among, RCPC, as borrower, Revlon, Inc. ("**Holdings**"), the several banks and other financial institutions or entities from time to time party thereto as "Lenders" (as defined in the Term DIP Credit Agreement) (the "**Term DIP Lenders**"), Jefferies Finance LLC, as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "**Term DIP Agent**" and, collectively, with the Term DIP Lenders, the "**Term DIP Secured Parties**"), in an aggregate principal amount not to exceed $1.025 billion (the commitments in respect thereof, the "**Term DIP Commitments**"; the loans in respect thereof, the "**Term DIP Loans**") from the Term DIP Lenders (as defined herein) ($575 million of such amount being committed and $450 million of such amount being uncommitted and available in the sole discretion of the Term DIP Lenders exclusively for the purpose of refinancing all or a portion of the ABL DIP Facility or the Prepetition ABL Credit Facility (as defined herein) subject to the terms and conditions of the Term DIP Credit Agreement), of which $375 million (the "**Initial Draw**") became available immediately upon entry of the Interim Order (including $76.875 million of such Initial Draw amount available, which was used exclusively for the purpose of refinancing all of the Foreign ABTL Facility [3] ), and the remainder to be available upon the date of entry of this Final Order;

    b.    a superpriority, senior secured and priming debtor-in-possession asset-based revolving credit facility (the "**ABL DIP Facility**"), subject to the terms and conditions set forth in that certain Super-Priority Senior Secured

---

[3] The "**Foreign ABTL Facility**" refers to the credit facility consisting of "Term Loans" under that certain Asset-Based Loan Credit Agreement, dated as of March 2, 2021, by and among Revlon Finance LLC, as borrower, each other loan party, the several banks and other financial institutions or entities from time to time parties thereto as lenders, and Blue Torch Finance LLC, as administrative agent and collateral agent.

Debtor-in-Possession Asset-Based Revolving Credit Agreement [D.I. 161] (as amended, supplemented, or otherwise modified from time to time, the "**ABL DIP Credit Agreement**" and, together with the Term DIP Credit Agreement, the "**DIP Credit Agreements**"), by and among, RCPC, as borrower, Holdings, the several banks and other financial institutions or entities from time to time party thereto as "Lenders" (as defined in the ABL DIP Credit Agreement) (collectively, the "**ABL DIP Lenders**"; the Prepetition LIFO ABL Lenders that are also ABL DIP Lenders, the "**LIFO ABL DIP Lenders**"; the Prepetition SISO ABL Lenders that are also ABL DIP Lenders, the "**SISO ABL DIP Lenders**"), MidCap Funding IV Trust, as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "**ABL DIP Agent**" and, together with the Term DIP Agent, the "**DIP Agents**") and Crystal Financial LLC, d/b/a SLR Credit Solutions, as administrative agent for the SISO ABL DIP Lenders so long as Crystal Financial LLC or any of its affiliates is a SISO ABL DIP Lender (collectively with the ABL DIP Lenders and the ABL DIP Agent, the "**ABL DIP Secured Parties**"), consisting of (i) the roll-up and conversion of all Prepetition LIFO ABL Obligations and any unused Revolving Commitments (as defined in the Prepetition ABL Credit Agreement) into the ABL DIP Facility (the "**Prepetition LIFO ABL Roll-Up**") pursuant to commitments of the LIFO ABL DIP Lenders in an aggregate principal amount equal to $270 million (the "**LIFO ABL DIP Commitments**" and, the loans in respect thereof, the "**LIFO ABL DIP Loans**"), of which an aggregate principal amount equal to $109 million was deemed drawn automatically upon the date of entry of the Interim Order and applied automatically in satisfaction of the outstanding Prepetition LIFO ABL Obligations and (ii) the roll up and conversion of all Prepetition SISO ABL Obligations and any unused SISO Term Commitments (as defined in the Prepetition ABL Credit Agreement) into the ABL DIP Facility (the "**Prepetition SISO ABL Roll-Up**") pursuant to term loan commitments of the SISO ABL DIP Lenders in an aggregate principal amount equal to $130 million (the "**SISO ABL DIP Commitments**" and, together with the LIFO ABL DIP Commitments, the "**ABL DIP Commitments**"; the loans in respect thereof, the "**SISO ABL DIP Loans**" and, together with the LIFO ABL DIP Loans outstanding from time to time, the "**ABL DIP Loans**"), of which the entire amount of the SISO ABL DIP Loans was deemed drawn automatically upon the date of entry of the Interim Order and applied automatically in satisfaction of the outstanding Prepetition SISO ABL Obligations; and

c.  a superpriority junior secured debtor-in-possession intercompany credit facility (the "**Intercompany DIP Facility**" and, together with the Term DIP Facility and the ABL DIP Facility, the "**DIP Facilities**"), subject to the terms and conditions set forth in paragraph 22 below, in an aggregate principal amount not to exceed at any time the aggregate amount of the

royalty payments (the "**Royalty Payments**") owed to the BrandCos[4] under the BrandCo License Agreements (as defined in the Prepetition BrandCo Credit Agreement) that have become due and payable on or after the Petition Date (the commitments in respect thereof, the "**Intercompany DIP Commitments**" and, together with the Term DIP Commitments and the ABL DIP Commitments, the "**DIP Commitments**"; the loans in respect thereof, the "**Intercompany DIP Loans**" and, together with the Term DIP Loans and the ABL DIP Loans, the "**DIP Loans**"), by and among, RCPC, as borrower, and the BrandCos, as lenders (the "**Intercompany DIP Lenders**" or the "**Intercompany DIP Secured Parties**" and, together with the Term DIP Lenders and the ABL DIP Lenders, the "**DIP Lenders**" and, collectively with the Term DIP Secured Parties and the ABL DIP Secured Parties, the "**DIP Secured Parties**"), which Royalty Payments shall be deemed to have been paid to the applicable BrandCo in satisfaction of the obligation to make such payments to the BrandCo as and when the Royalty Payments are due and then immediately loaned to RCPC;

(ii)     authorizing the BrandCos to enter into the Intercompany DIP Facility and provide Intercompany DIP Loans to the Borrower, subject to the terms and conditions set forth herein;

(iii)    authorizing (a) the Debtors other than the Borrower (such Debtors, the "**Debtor DIP Guarantors**" and, together with the Borrower, the "**Debtor Term DIP Loan Parties**") to jointly and severally guarantee the Term DIP Loans and the other Term DIP Obligations (as defined herein); and (b) the Debtor DIP Guarantors other than the BrandCo Entities[5] (together with the Borrower, the "**Debtor ABL DIP Loan Parties**") to jointly and severally guarantee the ABL DIP Loans and the other ABL DIP Obligations (as defined herein) and (c) the Debtor DIP Guarantors other than the BrandCos (together with the Borrower, the "**Debtor Intercompany DIP Loan Parties**" and, together with the Debtor Term DIP Loan Parties and the Debtor ABL DIP Loan Parties, the "**Debtor DIP Loan Parties**") to jointly and severally guarantee the Intercompany DIP Loans and the other Intercompany DIP Obligations (as defined herein);

---

[4] "**BrandCo(s)**" means each of (i) Beautyge II, LLC, a Delaware limited liability company, (ii) BrandCo Almay 2020 LLC, a Delaware limited liability company, (iii) BrandCo Charlie 2020 LLC, a Delaware limited liability company, (iv) BrandCo CND 2020 LLC, a Delaware limited liability company, (v) BrandCo Curve 2020 LLC, a Delaware limited liability company, (vi) BrandCo Elizabeth Arden 2020 LLC, a Delaware limited liability company, (vii) BrandCo Giorgio Beverly Hills 2020 LLC, a Delaware limited liability company, (viii) BrandCo Halston 2020 LLC, a Delaware limited liability company, (ix) BrandCo Jean Nate 2020 LLC, a Delaware limited liability company, (x) BrandCo Mitchum 2020 LLC, a Delaware limited liability company, (xi) BrandCo Multicultural Group 2020 LLC, a Delaware limited liability company, (xii) BrandCo PS 2020 LLC, a Delaware limited liability company and (xiii) BrandCo White Shoulders 2020 LLC, a Delaware limited liability company.

[5] "**BrandCo Entities**" means each BrandCo and Beautyge I, an exempted company incorporated in the Cayman Islands.

(iv)    authorizing the Debtor DIP Loan Parties, as applicable, to execute, deliver and perform under:

    a.    the Term DIP Credit Agreement and all other loan documentation related to the Term DIP Facility, including, without limitation, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, fee and engagement letters related to the Term DIP Facility, including the Jefferies Fee Letter, the Jefferies Engagement Letter and such other documents that may be reasonably requested by the Term DIP Agent and the Term DIP Lenders, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively with the Term DIP Credit Agreement, the Interim Order and this Final Order, the "**Term DIP Documents**");

    b.    the ABL DIP Credit Agreement and all other loan documentation relating to the ABL DIP Facility, including, without limitation, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, fee letters, including the ABL Administrative Agent Fee Letter (together with the Jefferies Fee Letter, the "**Administrative Agent Fee Letters**") and such other documents that may be reasonably requested by the ABL DIP Agent and the ABL DIP Lenders, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively with the ABL DIP Credit Agreement, the Interim Order and this Final Order, the "**ABL DIP Documents**"); and

    c.    all other loan documentation related to the Intercompany DIP Facility, including, without limitation, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, fee letters and such other documents that may be reasonably requested by the Intercompany DIP Lenders, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively with the Interim Order and this Final Order, the "**Intercompany DIP Documents**" and, together with the Term DIP Documents and the ABL DIP Documents, the "**DIP Documents**");

(v)    authorizing the Debtor DIP Loan Parties, as applicable, to incur obligations with respect to:

    a.    loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, commitment fees, administrative agency fees, closing fees, collateral

5

management fees, exit fees, other fees and fees payable pursuant to the Jefferies Engagement Letter and the Jefferies Fee Letter), costs, expenses and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other obligations due or payable under the Term DIP Documents (collectively, the "**Term DIP Obligations**"), including authorizing the Debtors to incur up to $76.875 million of such Term DIP Obligations for the purpose of refinancing all or a portion of the Foreign ABTL Facility, and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

    b.  loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, commitment fees, administrative agency fees, closing fees, collateral management fees, exit fees, other fees and fees payable pursuant to the ABL Administrative Agent Fee Letter), costs, expenses and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other obligations due or payable under the ABL DIP Documents (collectively, the "**ABL DIP Obligations**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith; and

    c.  loans, advances, extensions of credit, financial accommodations, reimbursement obligations, and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other obligations due or payable under the Intercompany DIP Documents in connection with the Intercompany DIP Facility (collectively, the "**Intercompany DIP Obligations**" and, together with the Term DIP Obligations and the ABL DIP Obligations, the "**DIP Obligations**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(vi)    subject to the Carve-Out (as defined herein), granting to the Term DIP Secured Parties and the Term DIP Agent, for itself and for the benefit of the Term DIP Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all Term DIP Obligations of the Debtor Term DIP Loan Parties;

(vii)    subject to the Carve-Out, granting to the ABL DIP Secured Parties and the ABL DIP Agent, for itself and for the benefit of the ABL DIP Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all ABL DIP Obligations of the Debtor ABL DIP Loan Parties;

(viii)    subject to the Carve-Out, granting to the Intercompany DIP Secured Parties allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the

Bankruptcy Code in respect of all Intercompany DIP Obligations of the Debtor Intercompany DIP Loan Parties;

(ix)    subject to the Carve-Out, granting to the Term DIP Secured Parties and the Term DIP Agent, for itself and for the benefit of the Term DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Debtor Term DIP Loan Parties' estates (other than "Excluded Collateral" (as defined in the Term DIP Credit Agreement, the "**Term DIP Excluded Collateral**")) and all proceeds thereof, including any Avoidance Proceeds (as defined herein), in each case with the relative priorities set forth on __**Exhibit 1**__ hereto;

(x)    subject to the Carve-Out, granting to the ABL DIP Secured Parties and the ABL DIP Agent, for itself and for the benefit of the ABL DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Debtor ABL DIP Loan Parties' estates (other than certain excluded property as expressly provided in the ABL DIP Documents (the "**ABL DIP Excluded Collateral**" and, together with the Term DIP Excluded Collateral, the "**Excluded Collateral**")) and all proceeds thereof, including any Avoidance Proceeds, in each case with the relative priorities set forth on __**Exhibit 1**__ hereto;

(xi)    subject to the Carve-Out, granting to the Intercompany DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Debtor Intercompany DIP Loan Parties' estates (other than Term DIP Excluded Collateral) and all proceeds thereof, including any Avoidance Proceeds other than, with respect to the Intercompany DIP Obligations owed to any Intercompany DIP Secured Party, Avoidance Proceeds recovered from such Intercompany DIP Secured Party, in each case with the relative priorities set forth on __**Exhibit 1**__ hereto;

(xii)    authorizing (a) the Term DIP Agent, acting at the direction of the Required Term DIP Lenders,[6] to take all commercially reasonable actions to implement and effectuate the terms of this Final Order, (b) the ABL DIP Agent, acting at the direction of the Required ABL DIP Lenders,[7] to take all commercially reasonable actions to implement and effectuate the terms of this Final Order and (c) the

---

[6] "**Required Term DIP Lenders**" means the "Required Lenders" (as defined in the Term DIP Credit Agreement).

[7] "**Required ABL DIP Lenders**" means, at any given time, the holders of more than 50% of the LIFO ABL DIP Commitments then in effect, or if the LIFO ABL DIP Commitments have been terminated, the LIFO ABL DIP Loans then outstanding. "**Required DIP Lenders**" means the Required Term DIP Lenders and the Required ABL DIP Lenders; *provided* that, references herein to the "applicable Required DIP Lenders" refer to either the Required Term DIP Lenders or the Required ABL DIP Lenders, as the context requires.

Intercompany DIP Lenders, to take all commercially reasonable actions to implement and effectuate the terms of this Final Order;

(xiii)    subject to the Carve-Out, authorizing the Debtors to waive (a) their right to surcharge the Prepetition Collateral or the DIP Collateral (each, as defined herein) (together, but excluding any Excluded Collateral, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(xiv)    waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral and the Prepetition Collateral (including the Cash Collateral (as defined herein));

(xv)    authorizing the Debtors to use proceeds of the DIP Facilities solely in accordance with the Interim Order, this Final Order and the other DIP Documents (including under the Administrative Agent Fee Letters), including the refinancing of the Foreign ABTL Facility;

(xvi)    authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents (including under the Administrative Agent Fee Letters) as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents;

(xvii)    subject to the restrictions set forth in the DIP Documents, including the Interim Order and this Final Order, authorizing the Debtors to use the Prepetition Collateral, including Cash Collateral of the Prepetition Secured Parties under the Prepetition Loan Documents (each, as defined herein), and provide adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for under the Bankruptcy Code, including resulting from the imposition of the automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**"), the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral), and the priming of their respective interests in the Prepetition Collateral (including Cash Collateral);

(xviii)    vacating and modifying the Automatic Stay to the extent set forth herein to the extent necessary to permit the Debtors and their affiliates and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order, this Final Order and the other DIP Documents and to deliver any notices of termination described below and as further set forth herein; and

(xix)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

The interim hearing on the DIP Motion having been held by this Court (as defined herein) on June 16, 2022 and June 17, 2022 (the "**Interim Hearings**"), a final hearing having been held

by this Court on July 28, 2022, July 29, 2022 and August 1, 2022 (the "**Final Hearing**"), and this Court having considered the relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Steven M. Zelin in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [D.I. 35] (the "**Zelin Declaration**"), and the *Declaration of Robert Caruso in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [D.I. 30] (the "**Caruso Declaration**"), the available DIP Documents, and the evidence submitted and arguments made at the Interim Hearings and the Final Hearing; and the Court having entered the Interim Order; and due and sufficient notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtor DIP Loan Parties and their estates, and is essential for the continued operation of the Debtor DIP Loan Parties' businesses and the preservation of the value of the Debtor DIP Loan Parties' assets; and it appearing that the Debtor DIP Loan Parties' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARINGS AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[8]

A.    *Petition Date*. On June 15, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "**Court**"). On June 16, 2022, this Court entered an order approving the joint administration of the Chapter 11 Cases.

B.    *Debtors in Possession*. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    *Jurisdiction and Venue*. This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 363(m), 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

---

[8] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    *Creditors' Committee*. On June 24, 2022, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

E.    *Notice*. The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Proper, timely, adequate and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the DIP Motion or the entry of this Final Order shall be required.

F.    *Cash Collateral*. As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash, except for cash that is Excluded Collateral, as applicable, wherever located and held, including cash in deposit accounts, all of which constitutes or will constitute "cash collateral" of the Prepetition BrandCo Secured Parties, Prepetition ABL Secured Parties (as defined herein), Prepetition 2016 Term Loan Secured Parties and/or DIP Secured Parties, as applicable, within the meaning of section 363(a) of the Bankruptcy Code.

G.    *Debtors' Stipulations*. Subject to the limitations contained in paragraph 29 hereof, and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i)    *Prepetition BrandCo Credit Facilities*. Pursuant to that certain BrandCo Credit Agreement, dated as of May 7, 2020, as may be amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time (the "**Prepetition BrandCo Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition BrandCo Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated,

supplemented, waived, or otherwise modified from time to time, the "**Prepetition BrandCo Loan Documents**"), by and among (a) RCPC (in such capacity, the "**Prepetition BrandCo Borrower**"), (b) Jefferies Finance LLC, as administrative agent (in such capacity, the "**Prepetition BrandCo Administrative Agent**") and each collateral agent (in such capacity as administrative or collateral agent, the "**Prepetition BrandCo Agent**") and (c) the Lenders (as defined in the Prepetition BrandCo Credit Agreement) party thereto (collectively, the "**Prepetition BrandCo Lenders**" and, together with the Prepetition BrandCo Agent, the "**Prepetition BrandCo Secured Parties**"), the Prepetition BrandCo Lenders provided the Term B-1 Loans, Term B-2 Loans and the Initial Term B-3 Loans (each, as defined in the Prepetition BrandCo Credit Agreement), to the Prepetition BrandCo Borrower (collectively, the "**Prepetition BrandCo Credit Facilities**").

(ii)     *Prepetition BrandCo Guarantee and Security Agreements*. Pursuant to (a) that certain First Lien BrandCo Guarantee and Security Agreement, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) by and among the BrandCo Entities, the Prepetition BrandCo Administrative Agent and Jefferies Finance LLC, as the First Lien Collateral Agent (as defined in the Prepetition BrandCo Credit Agreement) (in such capacity, the "**BrandCo First Lien Collateral Agent**"), (b) that certain Second Lien BrandCo Guarantee and Security Agreement, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) by and among the BrandCo Entities, the Prepetition BrandCo Administrative Agent and Jefferies Finance LLC, as Second Lien Collateral Agent (as defined in the Prepetition BrandCo Credit Agreement) (in such capacity, the "**BrandCo Second Lien Collateral Agent**"), (c) that certain Third Lien BrandCo Guarantee and Security Agreement, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time

to time) by and among the BrandCo Entities, the Prepetition BrandCo Administrative Agent and Jefferies Finance LLC, as Third Lien Collateral Agent (as defined in the Prepetition BrandCo Credit Agreement) (in such capacity, the "**BrandCo Third Lien Collateral Agent**") and (d) that certain Term Loan Guarantee and Collateral Agreement, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) by and among Holdings, RCPC, the subsidiaries of RCPC party thereto and Jefferies Finance LLC, as Pari Passu Collateral Agent (as defined in the Prepetition BrandCo Credit Agreement) (in such capacity, the "**BrandCo Pari Passu Collateral Agent**") (collectively, the "**Prepetition BrandCo Guarantee and Security Agreements**"), the Debtors other than RCPC (the "**Prepetition BrandCo Guarantors**") guaranteed on a joint and several basis the obligations under the Prepetition BrandCo Loan Documents.

(iii)    *Prepetition BrandCo Intercreditor Agreement*. Pursuant to that certain Intercreditor Agreement, dated as of May 7, 2020 (the "**Prepetition BrandCo Intercreditor Agreement**"), by and among the BrandCo First Lien Collateral Agent, the BrandCo Second Lien Collateral Agent, the BrandCo Third Lien Collateral Agent, Holdings, RCPC and the Prepetition BrandCo Guarantors, the BrandCo First Lien Collateral Agent, the BrandCo Second Lien Collateral Agent and the BrandCo Third Lien Collateral Agent agreed, among other things: (a) that the Prepetition BrandCo First Liens on the Prepetition BrandCo Collateral are senior to the Prepetition BrandCo Second Liens and the Prepetition BrandCo Third Liens (each, as defined herein) on the Prepetition BrandCo Collateral, (b) that the Prepetition BrandCo Second Liens on the Prepetition BrandCo Collateral are senior to the Prepetition BrandCo Third Liens on the Prepetition BrandCo Collateral, (c) to be bound by the waterfall and turnover provisions contained therein and (d) to (I) consent to, or not oppose, certain actions taken, or rights asserted, by the

13

holders of First Lien Obligations (as defined therein) or the BrandCo First Lien Collateral Agent

and/or the holders of Second Lien Obligations (as defined therein) or the BrandCo Second Lien

Collateral Agent, as applicable, and (II) refrain from taking certain actions with respect to the

Prepetition BrandCo Collateral, including in connection with a bankruptcy proceeding.

(iv)    *Prepetition Pari Passu Term Loan Intercreditor Agreement*. Pursuant to and

to the extent set forth in that certain First Lien Pari Passu Intercreditor Agreement, dated as of

May 7, 2020 (the "**Prepetition Pari Passu Term Loan Intercreditor Agreement**"), by and

among the Prepetition 2016 Term Loan Agent, the Prepetition BrandCo Agent, the BrandCo Pari

Passu Collateral Agent, the Debtors other than the BrandCo Entities (the "**OpCo Debtors**"), the

Prepetition 2016 Term Loan Agent, the Prepetition BrandCo Agent and the BrandCo Pari Passu

Collateral Agent agreed, among other things (a) that the Prepetition BrandCo Pari Passu Liens on

the Prepetition Shared Collateral are pari passu with the Prepetition 2016 Term Loan Liens on the

Prepetition Shared Collateral (each, as defined herein), (b) to be bound by the waterfall and

turnover provisions contained therein with respect to the Prepetition Shared Collateral, and (c) to

(I) consent to, or not oppose, certain actions taken, or rights asserted, by the Applicable Collateral

Agent (as defined therein) and (II) refrain from taking certain actions with respect to the Prepetition

Shared Collateral, including in connection with a bankruptcy proceeding. The Prepetition Pari

Passu Term Loan Intercreditor Agreement is binding and enforceable in accordance with its terms.

(v)    *Prepetition BrandCo Credit Facility Debt*. As of the Petition Date, the

Prepetition BrandCo Borrower was justly and lawfully indebted and liable to the Prepetition

BrandCo Secured Parties, without defense, counterclaim or offset of any kind, (x) in the aggregate

principal amount of not less than $1,878,019,219, including (a) $938,986,931 in outstanding

principal amount of Term B-1 Loans (as defined in the Prepetition BrandCo Credit Agreement),

(b) $936,052,001 in outstanding principal amount of Term B-2 Loans (as defined in the Prepetition BrandCo Credit Agreement), and (c) $2,980,287 in outstanding principal amount of the Initial Term B-3 Loans (as defined in the Prepetition BrandCo Credit Agreement) and (y) for the Applicable Premium (as defined in the Prepetition BrandCo Credit Agreement) in the amount of $98,593,628, which became due and payable on the Petition Date as a result of commencement of the Chapter 11 Cases (all of the foregoing collectively, together with accrued and unpaid interest and all other Obligations (as defined in the Prepetition BrandCo Credit Agreement), the "**Prepetition BrandCo Credit Facility Debt**"), which Prepetition BrandCo Credit Facility Debt has been guaranteed on a joint and several basis by each of the Prepetition BrandCo Guarantors, each of which Prepetition BrandCo Guarantors, as of the Petition Date, was justly and lawfully indebted and liable to the Prepetition BrandCo Secured Parties, without defense, counterclaim or offset of any kind, for all Prepetition BrandCo Credit Facility Debt.

(vi)    *Prepetition BrandCo Liens*. As more fully set forth in the Prepetition BrandCo Loan Documents, (a) prior to the Petition Date, the Prepetition BrandCo Borrower and each Prepetition BrandCo Guarantor granted to the Prepetition BrandCo Agent, for the benefit of itself and the other Prepetition BrandCo Secured Parties, a security interest in and continuing lien (the "**Prepetition BrandCo Liens**") on (1) the "Shared Collateral" (as defined in the Prepetition Pari Passu Term Loan Intercreditor Agreement (as defined below)) (the "**Prepetition Shared Collateral**") (such Prepetition BrandCo Liens, the "**Prepetition BrandCo Pari Passu Liens**") and (2) substantially all of the assets and property of the BrandCo Entities and the other "BrandCo Collateral" (as defined in the Prepetition BrandCo Credit Agreement) (the "**Prepetition BrandCo Collateral**" and, together with the Prepetition Shared Collateral, the "**Prepetition Collateral**") (such Prepetition BrandCo Liens in respect of the Term B-1 Loans, the "**Prepetition BrandCo**

**First Liens**"; such Prepetition BrandCo Liens in respect of the Term B-2 Loans, the "**Prepetition BrandCo Second Liens**"; such Prepetition BrandCo Liens in respect of the Term B-3 Loans, the "**Prepetition BrandCo Third Liens**"), which Prepetition BrandCo Liens are the exclusive liens on the Prepetition BrandCo Collateral (other than the Term DIP Liens and the BrandCo Collateral AP Liens (each, as defined herein)) and (b) all Royalty Payments, all distributions in respect of "Pledged Securities" under the BrandCo Stock Pledge Agreements (as defined in the Prepetition BrandCo Credit Agreement) and all identifiable proceeds of any of the foregoing are proceeds of Prepetition BrandCo Collateral. For the avoidance of doubt, no Prepetition BrandCo Collateral constitutes Prepetition Shared Collateral.

(vii)    *Certain BrandCo Collateral and BrandCo License Agreements*. The Prepetition BrandCo Collateral owned by any BrandCo Entity is property of the estate of the such BrandCo Entity. The BrandCo License Agreements (as defined in the Prepetition BrandCo Credit Agreement) are in full force and effect and have not been amended, modified, revoked, or repealed since the Petition Date. Nothing in this Final Order shall modify the status of the BrandCo License Agreements.

(viii)    *Prepetition 2016 Term Loan Liens*. As more fully set forth in the Prepetition 2016 Term Loan Documents,[9] prior to the Petition Date, the OpCo Debtors each granted to the Prepetition 2016 Term Loan Agent, for the benefit of itself and the other Prepetition 2016 Term

---

[9] The "**Prepetition 2016 Term Loan Documents**" mean collectively (i) that certain credit agreement, dated as of September 7, 2016, as modified by that certain Incremental Joinder Agreement, dated as of April 30, 2020, and as further amended and restated by that certain Amendment No. 1, dated as of May 7, 2020 (the "**Prepetition 2016 Term Loan Credit Agreement**"), by and among Holdings, RCPC (in such capacity, the "**Prepetition 2016 Term Loan Borrower**"), Citibank, N.A. ("**Citibank**"), as administrative agent and collateral agent (in such capacities, the "**Prepetition 2016 Term Loan Agent**") and the Lenders (as defined in the Prepetition 2016 Term Loan Credit Agreement) party thereto (collectively, the "**Prepetition 2016 Term Loan Lenders**") (the Prepetition 2016 Term Loan Lenders, collectively with the Prepetition 2016 Term Loan Agent, the "**Prepetition 2016 Term Loan Secured Parties**") and (ii) the other "Loan Documents" (as defined in the Prepetition 2016 Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time.

Loan Secured Parties, a security interest in and continuing lien on the Prepetition Shared Collateral (the "**Prepetition 2016 Term Loan Liens**").

(ix)    *Prepetition ABL Credit Facility.* Pursuant to that certain Asset-Based Revolving Credit Agreement, dated as of September 7, 2016, as amended and restated by that certain Amendment No. 1, dated as of April 17, 2018, as further amended and restated by that certain Amendment No. 2, dated as of March 6, 2019, and as further amended and restated by that certain Amendment No. 3, dated as of April 17, 2020, and as further amended and restated by that certain Amendment No. 4, dated as of May 7, 2020, as further amended and restated by that certain Amendment No. 5, dated as of October 23, 2020, as further amended by that certain Limited Waiver to Credit Agreement, dated as of November 27, 2020, as further amended by that certain Second Limited Waiver to Credit Agreement, dated as of December 11, 2020, as further amended and restated by that certain Amendment No. 6, dated as of December 21, 2020, as further amended and restated by that certain Amendment No. 7, dated as of March 8, 2021, as further amended and restated by that certain Amendment No. 8, dated as of May 7, 2021, and as further amended by that certain Amendment No. 9, dated as of March 31, 2022 (the "**Prepetition ABL Credit Agreement**" and, collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition ABL Loan Documents**" and, together with the Prepetition BrandCo Loan Documents and the Prepetition 2016 Term Loan Documents, the "**Prepetition Loan Documents**"), by and among (a) Holdings, (b) RCPC and the subsidiaries of RCPC party from time to time thereto as borrowers (in such capacities, the "**Prepetition ABL Borrowers**"), (c) MidCap Funding IV Trust, as administrative agent and collateral agent (in such capacities, the "**Prepetition LIFO ABL Agent**"), issuing lender and

17

swingline lender, (d) Crystal Financial LLC d/b/a SLR Credit Solutions, as SISO Term Loan Agent (as defined therein) (in such capacity, the "**Prepetition SISO ABL Agent**"), (e) Alter Domus (US) LLC, as Tranche B Administrative Agent (as defined therein) (the "**Prepetition FILO ABL Agent**" and, together with the Prepetition LIFO ABL Agent, the Prepetition SISO ABL Agent and the Prepetition ABL Collateral Agent (as defined herein), the "**Prepetition ABL Agents**" and, together with the Prepetition BrandCo Agent, the Prepetition 2016 Term Loan Agent, the Prepetition LIFO ABL Agent and the Prepetition SISO ABL Agent, the "**Prepetition Agents**") and (f) the several banks and other financial institutions or entities party from time to time thereto consisting of the Tranche A Revolving Lenders (as defined in the Prepetition ABL Credit Agreement) (the "**Prepetition LIFO ABL Lenders**" and, together with the Prepetition LIFO ABL Agent, the "**Prepetition LIFO ABL Secured Parties**"), the SISO Term Lenders (as defined in the Prepetition ABL Credit Agreement) (the "**Prepetition SISO ABL Lenders**" and, together with the Prepetition SISO ABL Agent, the "**Prepetition SISO ABL Secured Parties**"), and the Tranche B Term Lenders (as defined in the Prepetition ABL Credit Agreement) (the "**Prepetition FILO ABL Lenders**" and, together with the Prepetition LIFO ABL Lenders and the Prepetition SISO ABL Lenders, the "**Prepetition ABL Lenders**," and the Prepetition FILO ABL Lenders together with the Prepetition FILO ABL Agent, the "**Prepetition FILO ABL Secured Parties**") (the Prepetition ABL Lenders, collectively with the Prepetition ABL Agents and all other holders of Prepetition ABL Credit Facility Debt (as defined herein), the "**Prepetition ABL Secured Parties**" and together with the Prepetition BrandCo Secured Parties and the Prepetition 2016 Term Loan Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition ABL Lenders provided revolving credit loans to the Prepetition ABL Borrowers from time to time pursuant to the Prepetition ABL Loan Documents (the "**Prepetition ABL Credit Facility**").

(x)    *Prepetition ABL Guarantee and Collateral Agreement*. Pursuant to that certain ABL Guarantee and Collateral Agreement, dated as of September 7, 2016 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) by and among RCPC and the subsidiaries of RCPC party from time to time thereto and MidCap Funding IV Trust, as collateral agent (in such capacity, the "**Prepetition ABL Collateral Agent**") (the "**Prepetition ABL Guarantee and Collateral Agreement**"), the OpCo Debtors (the "**Prepetition ABL Guarantors**") guaranteed on a joint and several basis the Prepetition ABL Credit Facility Debt.

(xi)    *Prepetition ABL Intercreditor Agreement*. Pursuant to and to the extent set forth in that certain Intercreditor Agreement, dated as of September 7, 2016, as supplemented by that certain Intercreditor Joinder Agreement, dated as of May 7, 2020 (the "**Prepetition ABL Intercreditor Agreement**" and, together with the Prepetition BrandCo Intercreditor Agreement and the Prepetition Pari Passu Term Loan Intercreditor Agreement, the "**Prepetition Intercreditor Agreements**"), by and among the Prepetition 2016 Term Loan Agent, the Prepetition ABL Agent, the BrandCo Pari Passu Collateral Agent and the OpCo Debtors, the Prepetition ABL Agent, the Prepetition 2016 Term Loan Agent and the BrandCo Pari Passu Collateral Agent agreed, among other things, that: (a) the Prepetition ABL Liens (as defined herein) on the Prepetition Shared Collateral constituting "ABL Facility First Priority Collateral" (as defined therein) (the "**Prepetition ABL Priority Collateral**") are senior to the Prepetition BrandCo Pari Passu Liens and the Prepetition 2016 Term Loan Liens on the Prepetition ABL Priority Collateral, (b) that the Prepetition BrandCo Pari Passu Liens and the Prepetition 2016 Term Loan Liens on the Prepetition Shared Collateral constituting "Term Facility First Priority Collateral" (as defined therein) (the "**Prepetition Shared Term Priority Collateral**") are senior to the Prepetition ABL

19

Liens on the Prepetition Shared Term Priority Collateral, (c) to be bound by the other waterfall and turnover provisions contained therein and (d) to refrain from taking certain actions with respect to the Prepetition Shared Collateral, including in connection with a bankruptcy proceeding.

(xii)    *Prepetition ABL Credit Facility Debt*. As of the Petition Date, the Prepetition ABL Borrowers were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $289,000,000, including (a) $109,000,000 in outstanding principal amount of "Tranche A Revolving Loans," (b) $130,000,000 in outstanding principal amount of "SISO Term Loans," and (c) $50,000,000 in outstanding principal amount of "Tranche B Term Loans" (in each case, as defined in the Prepetition ABL Credit Agreement) (the Tranche A Revolving Loans, SISO Term Loans and Tranche B Term Loans, together with accrued and unpaid interest and all other Obligations (as defined in the Prepetition ABL Credit Agreement), the "**Prepetition ABL Credit Facility Debt**"; the Prepetition ABL Credit Facility Debt owed to the Prepetition LIFO ABL Secured Parties, the "**Prepetition LIFO ABL Obligations**"; the Prepetition ABL Credit Facility Debt owed to the Prepetition SISO ABL Secured Parties, the "**Prepetition SISO ABL Obligations**"; and the Prepetition ABL Credit Facility Debt owed to the Prepetition FILO ABL Secured Parties, the "**Prepetition FILO ABL Obligations**"), which Prepetition ABL Credit Facility Debt has been guaranteed on a joint and several basis by each of the Prepetition ABL Guarantors.

(xiii)    *Prepetition ABL Liens*. As more fully set forth in the Prepetition ABL Loan Documents, prior to the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors each granted to the Prepetition ABL Collateral Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, a security interest in and continuing lien on

(the "**Prepetition ABL Liens**" and, together with the Prepetition BrandCo Liens and the Prepetition 2016 Term Loan Liens, the "**Prepetition Liens**") the Prepetition Shared Collateral, including both Prepetition ABL Priority Collateral and Prepetition Shared Term Priority Collateral.

(xiv)    *Validity, Perfection and Priority of Prepetition BrandCo Liens and Prepetition BrandCo Credit Facility Debt*. The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition BrandCo Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition BrandCo Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition BrandCo Liens were senior in priority over any and all other liens on the Prepetition Collateral, and as to other collateral, subject only to (1) the Prepetition 2016 Term Loan Liens on the Prepetition Shared Collateral, which rank equally in priority with the Prepetition BrandCo Pari Passu Liens with respect to the Prepetition Shared Collateral, (2) the Prepetition ABL Liens on the Prepetition Shared Term Priority Collateral, which rank junior in priority to the Prepetition BrandCo Pari Passu Liens with respect to the Prepetition Shared Term Priority Collateral, (3) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, which rank senior in priority to the Prepetition BrandCo Pari Passu Liens with respect to the Prepetition ABL Priority Collateral and (4) certain other liens senior by operation of law or otherwise permitted by the Prepetition BrandCo Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition BrandCo Liens as of the Petition Date, the "**Prepetition BrandCo Permitted Prior Liens**"); (c) the Prepetition BrandCo Credit Facility Debt constitutes legal, valid, binding, and non-avoidable obligations of the Prepetition BrandCo Borrower and Prepetition BrandCo Guarantors enforceable in accordance with the terms of the applicable Prepetition BrandCo Loan Documents; (d) no offsets, recoupments, challenges,

21

objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition

BrandCo Liens or Prepetition BrandCo Credit Facility Debt exist, and no portion of the Prepetition

BrandCo Liens or Prepetition BrandCo Credit Facility Debt is subject to any challenge or defense,

including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable

or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law (including,

without limitation based on any theory under the Prepetition 2016 Term Loan Documents); (e) the

Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in

action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state

law equivalents or actions for recovery or disgorgement, against any of the Prepetition BrandCo

Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals,

officers, directors and employees arising out of, based upon or related to the Prepetition BrandCo

Credit Facilities; and (f) the Debtors waive, discharge, and release any right to challenge any of

the Prepetition BrandCo Credit Facility Debt, the priority of the Debtors' obligations thereunder,

and the validity, extent, and priority of the Prepetition BrandCo Liens securing the Prepetition

BrandCo Credit Facility Debt.

(xv)    *Validity, Perfection and Priority of Prepetition ABL Liens and Prepetition*

*ABL Credit Facility Debt*. The Debtors acknowledge and agree that as of the Petition Date (a) the

Prepetition ABL Liens on the Prepetition Shared Collateral were valid, binding, enforceable, non-

avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition ABL

Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL

Liens were senior in priority over any and all other liens on the Prepetition Shared Collateral,

subject only to (1) the Prepetition BrandCo Pari Passu Liens on the Prepetition Shared Collateral,

which rank senior in priority to the Prepetition ABL Liens only with respect to the Prepetition

Shared Term Priority Collateral and which rank junior in priority to the Prepetition ABL Liens only with respect to the Prepetition ABL Priority Collateral, (2) the Prepetition 2016 Term Loan Liens on the Prepetition Shared Collateral, which rank senior in priority to the Prepetition ABL Liens only with respect to the Prepetition Shared Term Priority Collateral and which rank junior in priority to the Prepetition ABL Liens only with respect to the Prepetition ABL Priority Collateral and (3) certain other liens senior by operation of law or otherwise permitted by the Prepetition ABL Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "**Prepetition ABL Permitted Prior Liens**"); (c) the Prepetition ABL Credit Facility Debt constitutes legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Borrower and Prepetition ABL Guarantors enforceable in accordance with the terms of the applicable Prepetition ABL Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Credit Facility Debt exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Credit Facility Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition ABL Credit Facilities; and (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition ABL Credit Facility

23

Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition ABL Liens securing the Prepetition ABL Credit Facility Debt.

(xvi)    *Validity, Perfection and Priority of Prepetition 2016 Term Loan Liens*. The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition 2016 Term Loan Liens on the Prepetition Shared Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition 2016 Term Loan Secured Parties for fair consideration and reasonably equivalent value, (b) the Prepetition 2016 Term Loan Liens were senior in priority over any and all other liens on the Prepetition Shared Collateral, subject only to (1) the Prepetition BrandCo Pari Passu Liens on the Prepetition Shared Collateral, which rank equally in priority with the Prepetition 2016 Term Loan Liens with respect to the Prepetition Shared Collateral, (2) the Prepetition ABL Liens on the Prepetition Shared Collateral, which rank junior in priority to the Prepetition 2016 Term Loan Liens with respect to the Prepetition Shared Term Priority Collateral and which rank senior in priority to the Prepetition 2016 Term Loan Liens with respect to the Prepetition ABL Priority Collateral and (3) certain other liens senior by operation of law or otherwise permitted by the Prepetition 2016 Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition 2016 Term Loan Liens as of the Petition Date, the "**Prepetition 2016 Term Loan Permitted Prior Liens**" and, together with the Prepetition BrandCo Permitted Prior Liens and the Prepetition ABL Permitted Prior Liens, the "**Permitted Prior Liens**"); and (c) the Debtors waive, discharge, and release any right to challenge the validity, perfection or priority of the Prepetition 2016 Term Loan Liens, in each case, to the extent such Prepetition 2016 Term Loan Liens secure allowed claims against the OpCo Debtors.

(xvii)  *No Control*. None of the Prepetition Secured Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition BrandCo Loan Documents, the Prepetition 2016 Term Loan Documents or the Prepetition ABL Loan Documents.

(xviii)  *No Claims or Causes of Action*. No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition BrandCo Secured Parties, the Prepetition ABL Secured Parties, the DIP Secured Parties or any of their respective Representatives (as defined herein) (in each case in their capacity as such) under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date.

(xix)  *Release*. Each of the Debtors and the Debtors' estates, on its own behalf, and on behalf of its and their respective past, present and future predecessors, successors, subsidiaries, and assigns, hereby (a) reaffirms the releases granted pursuant to paragraph G(xviii) of the Interim Order and (b) absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition BrandCo Secured Parties, the Prepetition ABL Secured Parties, the DIP Secured Parties and each of their respective Representatives (collectively, the "**Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or

25

unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, (collectively, the "**Released Claims**") in each case arising out of or related to (as applicable) any prepetition financing agreements with the Debtors or their subsidiaries or the DIP Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions and agreements reflected thereby, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order. Notwithstanding the foregoing or the Interim Order, (x) the Released Claims shall not include any claims, causes of action, defenses or liabilities of the Debtors against any of the Prepetition FILO ABL Secured Parties that may arise or have arisen on or after the Petition Date under the Prepetition ABL Loan Documents in connection with the filing by the Prepetition FILO ABL Agent of its *Request for Adequate Protection and Response of ABL Tranche B Lenders' Agent Relating to the DIP Motion* [D.I. 197] (the "**FILO Filing**"), the taking of any discovery in connection therewith, and any other activities ancillary thereto, and (y) the rights (if any) of the Debtors and the Prepetition ABL Secured Parties are reserved as to any claims, causes of action, defenses or liabilities among the Debtors and the Prepetition ABL Secured Parties that may arise or have arisen on or after the Petition Date under the Prepetition ABL Loan Documents in connection with (i) the FILO Filing, taking of any discovery in connection therewith, and any other activities ancillary thereto, and (ii) the proposed treatment under the DIP Motion of the Prepetition FILO ABL Agent and the other Prepetition ABL Secured Parties in the DIP Motion, or acts or omissions in connection therewith by the Debtors, the Prepetition LIFO ABL Secured Parties, and the Prepetition SISO ABL Secured Parties, including in agreeing to, requesting or

26

supporting the DIP Motion, the ABL DIP Facility or the ABL DIP Credit Agreement, or opposing

the relief sought in connection with the FILO Filing, and the taking of any discovery in connection

therewith, and any other activities ancillary thereto. For the avoidance of doubt, nothing in this

release shall relieve the DIP Secured Parties or the Debtors of their obligations under the DIP

Documents from and after the date of this Final Order.

      H.    Findings Regarding the DIP Financing and Use of Cash Collateral.

      (i)    Good and sufficient cause has been shown for the entry of this Final Order

and for authorization of the Debtor DIP Loan Parties to obtain financing pursuant to the DIP

Documents.

      (ii)    The Debtor DIP Loan Parties have a critical need to obtain the DIP

Financing and to use the Prepetition Collateral (including Cash Collateral) in order to permit,

among other things, the orderly continuation of the operation of their businesses, to maintain

business relationships with vendors, suppliers and customers, to make payroll, to make capital

expenditures, to satisfy other working capital and operational needs and to fund expenses of these

Chapter 11 Cases. The access of the Debtor DIP Loan Parties to sufficient working capital and

liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new

indebtedness under the DIP Documents and other financial accommodations provided under the

DIP Documents are necessary and vital to the preservation and maintenance of the going concern

values of the Debtor DIP Loan Parties and to a successful reorganization of the Debtor DIP Loan

Parties.

      (iii)    The Debtor DIP Loan Parties are unable to obtain financing on more

favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable

to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as

an administrative expense. The Debtor DIP Loan Parties are also unable to obtain secured credit

allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without

granting to the DIP Secured Parties, the DIP Liens and the DIP Superpriority Claims (each, as

defined herein) and incurring the Adequate Protection Obligations (as defined herein), in each case

subject to the Carve-Out, under the terms and conditions set forth in this Final Order and in the

other DIP Documents.

(iv)    The Debtor DIP Loan Parties continue to collect cash, rents, income,

offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire

equipment, inventory and other personal property, all of which constitute Prepetition Collateral

under the Prepetition Loan Documents that are subject to the Prepetition Secured Parties' security

interests as set forth in the Prepetition Loan Documents.

(v)    The Debtor DIP Loan Parties desire to use a portion of the cash, rents,

income, offspring, products, proceeds and profits described in the preceding paragraph in their

business operations that constitute Cash Collateral of the Prepetition Secured Parties under

section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products,

proceeds, and profits, in existence as of the Petition Date, including balances of funds in the Debtor

DIP Loan Parties' prepetition and postpetition operating bank accounts, also constitute Cash

Collateral.

(vi)    Upon entry of the Interim Order, the outstanding Prepetition LIFO ABL

Obligations were converted into ABL DIP Loans in accordance with the ABL DIP Term Sheet

attached to the Interim Order as **Exhibit 2** (the "**ABL DIP Term Sheet**"). The Prepetition LIFO

ABL Lenders would not otherwise consent to the use of their Cash Collateral, the release of

reserves or the subordination of their liens to the DIP Liens without the inclusion of the ABL DIP

Loans in the DIP Obligations pursuant to the Prepetition LIFO ABL Roll-Up. The conversion (or "roll-up") of the Prepetition LIFO ABL Obligations was, by the Interim Order, and hereby shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition LIFO ABL Lenders to provide new-money liquidity and permit access to Cash Collateral, and not as payments under, adequate protection for, or otherwise on account of, any Prepetition ABL Credit Facility Debt. Because the Prepetition LIFO ABL Roll-Up is subject to the reservation of rights in paragraph 29, such roll-up does not prejudice any party in interest.

(vii)    Upon entry of the Interim Order, the outstanding Prepetition SISO ABL Obligations were converted into ABL DIP Loans in accordance with the ABL DIP Term Sheet and the ABL DIP Credit Agreement. The conversion (or "roll-up") of the Prepetition SISO ABL Obligations was, by the Interim Order, and hereby shall be authorized as compensation for, in consideration for, and on account of (a) the agreement of the Prepetition SISO ABL Lenders to permit access to Cash Collateral and (b) the waiver of the SISO Buy-Out Option (as defined herein), and not as payments under, adequate protection for, or otherwise on account of, any Prepetition ABL Credit Facility Debt. Because the Prepetition SISO ABL Roll-Up is subject to the reservation of rights in paragraph 29, such roll-up does not prejudice any party in interest.

(viii)    Based on the DIP Motion, the Zelin Declaration, the Caruso Declaration and the record presented to the Court at the Interim Hearings and the Final Hearing, the terms of the DIP Financing, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraphs 14–20 of this Final Order (the "**Adequate Protection**"), and the terms on which the Debtor DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order, the DIP Documents are fair and reasonable, reflect

29

the Debtor DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(ix)    The DIP Financing, the Adequate Protection and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Debtor DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties, and all of the Debtor DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtor DIP Loan Parties pursuant to the DIP Documents and any other DIP Obligations, shall be deemed to have been for credit extended by the DIP Agents and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agents and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(x)    The Prepetition BrandCo Agent and the Prepetition BrandCo Secured Parties have acted in good faith regarding the DIP Financing and the Debtor DIP Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtor DIP Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition BrandCo Agent and Prepetition BrandCo Secured Parties (and the successors and assigns thereof)

shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xi)    The Prepetition ABL Secured Parties and the Prepetition 2016 Term Loan Secured Parties, in each case, that did not file any objection to entry of this Final Order, have acted in good faith regarding the DIP Financing and the Debtor DIP Loan Parties' continued use of the Prepetition Shared Collateral (including Cash Collateral) to fund the administration of the Debtor DIP Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition ABL Secured Parties and the Prepetition 2016 Term Loan Secured Parties (in each case, that did not file any objection to entry of this Final Order), and the successors and assigns thereof, shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xii)    The Intercompany DIP Lenders have acted in good faith regarding the Intercompany DIP Facility, and the Intercompany DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xiii)    The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. Based on the DIP Motion and on the record presented to the

Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition

Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtor DIP Loan Parties'

prudent exercise of business judgment and constitute reasonably equivalent value and fair

consideration for the use of the Prepetition Collateral, including the Cash Collateral, and the

Prepetition Secured Parties have consented or are deemed to have consented to the use of the

Prepetition Collateral, including the Cash Collateral, on the terms set forth in this Final Order, and

the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP Documents; *provided*

that nothing in this Final Order or the other DIP Documents, or any consent or deemed consent

provided in connection therewith, shall (a) be construed as the consent (or deemed consent) by any

of the Prepetition Secured Parties, or as an authorization by this Court, for the use of Cash

Collateral other than on the terms set forth in this Final Order and in the context of the DIP

Financing authorized by this Final Order, (b) be construed as a consent (or deemed consent) by

any party to, or as an authorization by this Court of, the terms of any other financing or any other

lien encumbering the Prepetition Collateral (whether senior or junior) other than as contemplated

by this Final Order and in the context of the DIP Financing, (c) be construed as a determination

that the Adequate Protection provided herein is adequate without such consent (or deemed consent)

or (d) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, upon

a change in circumstances, subject to the Prepetition Intercreditor Agreements, to seek new,

different or additional adequate protection or assert the interests of any of the Prepetition Secured

Parties, and the rights of any other party in interest, including the Debtor DIP Loan Parties and the

DIP Secured Parties, to object to such relief are hereby preserved. Any request by the Debtors to

incur new postpetition financing to replace the DIP Financing, to grant liens securing the same,

and to use Prepetition Collateral (including Cash Collateral) in connection therewith, shall be made

pursuant to a separate motion filed with the Court, and upon notice to all parties in interest, and nothing in this Final Order or any consent (or deemed consent provided in connection herewith) shall be used as the basis for the relief requested therein, and the rights of all parties in interest are reserved with respect to any adequate protection to be provided in connection therewith. For the avoidance of doubt, the foregoing findings of good faith shall apply only to the DIP Financing and Adequate Protection provided hereunder and shall not extend to the Prepetition Secured Parties' participation in the Prepetition BrandCo Credit Facilities, Prepetition ABL Credit Facility, the credit facilities provided under the Prepetition 2016 Term Loan Credit Agreement, or any other prepetition transaction, event or occurrence between any of such parties and the Debtors unrelated to the preparation, filing or financing of these Chapter 11 Cases.

(xiv) The Debtors have prepared and delivered to the advisors to the DIP Secured Parties an initial budget (the "**Initial DIP Budget**"), filed with the Court at D.I. 47. The Initial DIP Budget reflects, among other things, the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week, and is in form and substance satisfactory to the Required DIP Lenders. The Initial DIP Budget may be modified, amended and updated from time to time in accordance with the DIP Credit Agreements, and, once approved by the Required DIP Lenders, such modified, amended and/or updated budget shall supplement and replace the Initial DIP Budget (the Initial DIP Budget and each subsequent approved budget, shall constitute without duplication, an "**Approved Budget**"). The Debtors believe that the Initial DIP Budget is reasonable under the facts and circumstances. The DIP Secured Parties are relying, in part, upon the Debtor DIP Loan Parties' agreement to comply with the Approved Budget (subject only to permitted variances), this Final Order and the other DIP Documents in determining to enter into the postpetition financing arrangements provided for in this Final Order.

33

(xv)    Each of the Prepetition BrandCo Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition BrandCo Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

(xvi)   Each of the Prepetition ABL Secured Parties and Prepetition 2016 Term Loan Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Secured Parties and Prepetition 2016 Term Loan Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Shared Collateral.

I.      *Relief Essential; Best Interest*. The Final Hearing was held in accordance with Bankruptcy Rules 4001(b)(2) and (c)(2). Consummation of the DIP Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Final Order and the other DIP Documents are therefore in the best interests of the Debtor DIP Loan Parties' estates and consistent with the Debtor DIP Loan Parties' exercise of their fiduciary duties.

J.      *Permitted Prior Liens; Continuation of Prepetition Liens*. Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtor DIP Loan Parties, the DIP Agents, the DIP Secured Parties, the Prepetition BrandCo Agent, the Prepetition LIFO ABL Agent, the Prepetition SISO ABL Agent, Prepetition BrandCo Secured Parties, Prepetition LIFO ABL Secured Parties, the Prepetition SISO ABL Secured Parties, the other Prepetition Secured Parties

and any statutory committee pursuant to section 328 or 1103 of the Bankruptcy Code or any other non-Debtor party in interest to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the DIP Liens. The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility, the DIP Documents and the Prepetition Loan Documents.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted*. The relief sought in the DIP Motion is granted, the financing described herein is authorized and approved, and the use of Cash Collateral is authorized, in each case, on a final basis and subject to the terms and conditions set forth in this Final Order and the other DIP Documents. All objections to this Final Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled on the merits.

2.      *Authorization of the DIP Financing and the DIP Documents*.

(a)      The Debtor DIP Loan Parties were, by the Interim Order, and hereby are authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith. The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreements, in an aggregate principal amount not to exceed $1,025,000,000 under the Term

DIP Credit Agreement and in an aggregate principal amount not to exceed $400,000,000 under the

ABL DIP Credit Agreement, in each case, subject to any limitations on borrowings under the DIP

Documents, which may be used for any purposes permitted under the DIP Documents (subject to

and in accordance with the Approved Budget (subject to any permitted variances)), and including

in an amount, pursuant to the ABL DIP Credit Agreement, equal to the aggregate amount of the

Prepetition LIFO ABL Roll-Up and the Prepetition SISO ABL Roll-Up. Each Debtor DIP

Guarantor was, by the Interim Order, and hereby is authorized to provide a guaranty of payment

in respect of the Borrower's obligations with respect to such borrowings.

(b)      In furtherance of the foregoing and without further approval of this Court,

each Debtor DIP Loan Party was, by the Interim Order, and hereby is authorized to perform all

acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and

documents (including, without limitation, the execution or recordation of pledge and security

agreements, mortgages, financing statements and other similar documents), and to pay all fees,

expenses and indemnities in connection with or that may be reasonably required, necessary, or

desirable for the Debtor DIP Loan Parties' performance of their obligations under or related to the

DIP Financing, including, without limitation:

> (i)      the execution and delivery of, and performance under, each of
> the DIP Documents;
>
> (ii)     the execution and delivery of, and performance under, one or
> more amendments, waivers, consents or other modifications to
> and under the DIP Documents, in each case, in such form as the
> applicable Debtor DIP Loan Parties, the applicable DIP Agent
> and the applicable Required DIP Lenders may agree, it being
> understood that no further approval of this Court shall be
> required for (A) any authorizations, amendments, waivers,
> consents or other modifications to and under the DIP Documents
> (and any fees and other expenses (including attorneys',
> accountants', appraisers' and financial advisors' fees), amounts,
> charges, costs, indemnities and other obligations paid in
> connection therewith) that do not shorten the maturity of the

extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder or (B) any updates and supplements to the Approved Budget delivered by the Debtor DIP Loan Parties under the DIP Documents, which updates and supplements shall not be considered amendments or modifications to the Approved Budget or the other DIP Documents and shall not be subject to the requirements of paragraph 41 hereof;

(iii)    the non-refundable payment to the DIP Agents and the DIP Secured Parties, as the case may be, of (A) all fees, including unused facility fees, amendment fees, prepayment premiums, early termination fees, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent's, collateral agent's or security trustee's fees (including fees payable under the Administrative Agent Fee Letters), upfront fees, closing fees, commitment fees, exit fees, closing date fees, backstop fees, original issue discount fees, prepayment fees or agency fees, indemnities and professional fees (the payment of which fees shall be irrevocable, and which payment was, and shall hereby be deemed to have been, approved upon entry of the Interim Order, whether any such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and, upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise), (B) any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreements or the other DIP Documents (or in any separate letter agreements, including, without limitation, any fee letters between any or all Debtor DIP Loan Parties, on the one hand, and any of the DIP Agents and/or DIP Secured Parties, on the other, in connection with the DIP Financing) and (C) the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by, or on behalf of, any of the Term DIP Agent (including, without limitation, those of Paul Hastings LLP and any local counsel retained thereby), that certain ad hoc group of Prepetition BrandCo Lenders that are Term DIP Lenders (the "**Ad Hoc Group of BrandCo Lenders**") (including, without limitation, those of Davis Polk & Wardwell LLP, Kobre & Kim LLP, Goodmans LLP, each other local or special counsel retained thereby, and Centerview Partners LLC), or the ABL DIP Secured Parties (including, without limitation, those of

Proskauer Rose LLP, Morgan Lewis & Bockius LLP, Berkeley Research Group LLC) and any local counsel retained thereby), in each case, as provided for in the DIP Documents (collectively, the "**DIP Fees and Expenses**"), without the need to file retention motions or fee applications, but subject to the review procedures set forth in paragraph 28;

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens as provided herein and therein; and

(v)    the incurrence of up to $1,025,000,000 in aggregate principal amount of Term DIP Loans and the use of the proceeds thereof to refinance all or a portion of the Foreign ABTL Facility and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith, in each case in accordance with the terms of the Interim Order, this Final Order and the other Term DIP Documents; *provided*, *however*, that the $450 million of such amount that is uncommitted and available in the sole discretion of the Term DIP Lenders shall only be extended for the purpose of refinancing the ABL DIP Facility or the Prepetition ABL Credit Facility and only upon request from the Debtors in accordance with the DIP Documents; *provided*, *further*, that the Debtors shall provide all other DIP Notice Parties[10] at least five (5) business days' written notice of, and the opportunity to object (subject to any applicable contractual restrictions on such party's right to do so) to, such refinancing.

3.    *DIP Obligations*. Upon execution and delivery of the DIP Documents, the DIP Documents constituted (and shall continue to constitute) legal, valid, binding and non-avoidable obligations of the Debtor DIP Loan Parties, enforceable against each Debtor DIP Loan Party and their estates, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively,

---

[10] "**DIP Notice Parties**" shall mean (i) counsel to the Debtors, (ii) the U.S. Trustee, (iii) counsel to the Creditors' Committee, (iv) counsel to each Prepetition Agent, (v) counsel to each DIP Agent, (vi) Davis Polk & Wardwell LLP and Kobre & Kim LLP, as counsel to the Ad Hoc Group of BrandCo Lenders and (vii) Akin Gump Strauss Hauer & Feld LLP ("**Akin**"), as counsel to that certain ad hoc group of 2016 Term Loan Lenders (the "**Ad Hoc Group of 2016 Term Loan Lenders**").

the "**Successor Cases**"), in accordance with the terms of this Final Order and the other DIP

Documents. Upon execution and delivery of the DIP Documents, the DIP Obligations included

(and shall continue to include) all loans and any other indebtedness or obligations, contingent or

absolute, which may now or from time to time be owing by any of the Debtor DIP Loan Parties to

any of the DIP Agents or DIP Secured Parties, in each case, under, or secured by, the DIP

Documents, including all principal, interest, costs, fees, expenses, indemnities and other amounts

under the DIP Documents (including this Final Order). The Debtor DIP Loan Parties shall be

jointly and severally liable for the applicable DIP Obligations. Except as permitted hereby, no

obligation, payment, transfer, or grant of security hereunder or under the other DIP Documents to

the DIP Agents and/or the DIP Secured Parties (including their Representatives) shall be stayed,

restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable

law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy

Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent

Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject

to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination

(whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim,

cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation

by any person or entity.

        4.     *Carve-Out*.

        (a)     As used in this Final Order, the term "**Carve-Out**" means the sum of: (i) all

fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section

1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to

31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and

expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) subject, in each case, to application of any retainers that may be held and to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, all unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code and the Creditors' Committee (collectively, the "**Estate Professionals**") (in each case, other than any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors) (the "**Allowed Professional Fees**"), to the extent incurred at any time before or on the first business day following delivery by any DIP Agent of a Carve-Out Trigger Notice (as defined below), and without regard to whether such fees and expenses are provided for in any Approved Budget, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the amounts set forth in this clause (iii) being the "**Pre-Carve-Out Trigger Notice Cap**"); and (iv) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $20,000,000 incurred after the first business day following delivery by any DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**" and, together with the Pre-Carve-Out Trigger Notice Cap and the amounts set forth in clauses (i) through (ii), the "**Carve-Out Cap**"). The Carve-Out shall be subject to the restrictions on the use of proceeds of the DIP Loans and Cash Collateral.

(b)    The ABL DIP Agent shall be entitled to maintain, and the Debtors shall reflect in each borrowing base report delivered to the DIP Agents by the Debtors, a reserve in an amount not less than the sum of (i) the amounts set forth in paragraph 4(a)(i) above, (ii) the Post-Carve-Out Trigger Notice Cap, (iii) the fees and expenses for Estate Professionals (other than any

restructuring, sale, success or other transaction fee of any investment banker or financial advisor) ("**Professional Fees**") set forth in the Approved Budget from the Petition Date through the end of the then-current week (to the extent then unpaid), and (iv) a reasonable estimate of the amount by which Professional Fees may exceed amounts set forth in the Approved Budget for the succeeding two-week period (the "**Carve-Out Reserve**"). The Carve-Out Reserve shall be established by the ABL DIP Agent in its sole discretion in consultation with the Debtors' professionals.

(c)       Immediately upon the delivery of a Carve-Out Trigger Notice, and prior to any further payment of any DIP Obligations or any Adequate Protection payments, the Debtor DIP Loan Parties shall be required to deposit into a separate account not subject to the control of the DIP Agents, the Prepetition BrandCo Agents, the Prepetition 2016 Term Loan Agent or the Prepetition ABL Agents (the "**Carve-Out Account**") an amount equal to the Carve-Out Cap. Notwithstanding anything to the contrary herein or in the DIP Documents, following delivery of a Carve-Out Trigger Notice, the DIP Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Account has been fully funded in an amount equal to all obligations benefitting from the Carve-Out. The amounts in the Carve-Out Account shall be available only to satisfy Allowed Professional Fees and other amounts included in the Carve-Out Cap until such amounts are paid in full. The amount in the Carve-Out Account shall be reduced on a dollar-for-dollar basis for Allowed Professional Fees and other amounts included in the Carve-Out Cap that are paid after the delivery of the Carve-Out Trigger Notice, and the Carve-Out Account shall not be replenished for such amounts so paid. The failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out. For the avoidance of doubt, (i) to the extent the Carve-Out is funded from borrowings under the DIP Facilities, such borrowed

amounts shall constitute DIP Obligations, and (ii) the incurrence or payment of any Carve-Out Account or amounts included in the Carve-Out shall not be restricted by the Approved Budget. In no way shall the Carve-Out, the Carve-Out Account, or any Approved Budget be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).

(d)     For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by a DIP Agent (or, after the Term DIP Obligations have been indefeasibly paid in full and the Term DIP Commitments have been terminated, the Prepetition BrandCo Agent) to lead restructuring counsel to the Debtors (Paul, Weiss, Rifkind, Wharton & Garrison LLP) and each other DIP Notice Party, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined herein) and acceleration of the obligations under the ABL DIP Facility or the Term DIP Facility (or, after the Term DIP Obligations have been indefeasibly paid in full and the Term DIP Commitments have been terminated, any occurrence that would constitute an Event of Default hereunder) or the occurrence of a Maturity Date (as defined in either DIP Credit Agreement), stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(e)     On the day on which a Carve-Out Trigger Notice is received by the Debtors (the "**Carve-Out Trigger Notice Date**"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize cash on hand to transfer to the Carve-Out Account cash in an amount equal to all obligations benefitting from the Carve-Out.

(f)     For the avoidance of doubt, to the extent that Professional Fees have been incurred by an Estate Professional at any time before or on the first business day after delivery by

42

a DIP Agent or Prepetition Agent, as applicable, of a Carve-Out Trigger Notice but have not yet been allowed by the Court, such Professional Fees shall constitute Allowed Professional Fees benefiting from the Carve-Out pursuant to clause (iii) of the definition thereof in the amounts incurred, subject to adjustment upon their allowance by the Court, whether by interim or final compensation order and whether before or after delivery of the Carve-Out Trigger Notice, and the Debtors shall fund the Carve-Out Account in the amount of such Allowed Professional Fees.

(g)     The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code. Nothing in the Interim Order, this Final Order or otherwise shall be construed to obligate any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties, in any way to pay compensation to or reimburse expenses of any Estate Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

(h)     All funds in the Carve-Out Account shall be used first to pay all obligations benefitting from the Carve-Out (other than obligations benefitting from the Post-Carve-Out Trigger Notice Cap), until paid in full, and then the obligations benefitting from the Post-Carve-Out Trigger Notice Cap. If, after paying all amounts set forth in the definition of Carve-Out, the Carve-Out Account has not been reduced to zero, all remaining funds in the Carve-Out Account that are funded pursuant to paragraph 4(b) out of DIP Collateral that constitutes (i) Term Priority DIP Collateral or BrandCo DIP Collateral (each, as defined herein) or the proceeds thereof shall be distributed to the Term DIP Agent on account of the Term DIP Loans, and (ii) ABL Priority

43

DIP Collateral (as defined herein) or the proceeds thereof shall be distributed to the ABL DIP

Agent on account of the ABL DIP Loans.

5.    *DIP Superpriority Claims*.

(a)    *Term DIP Superpriority Claims*. Pursuant to section 364(c)(1) of the

Bankruptcy Code, all of the Term DIP Obligations shall constitute allowed superpriority

administrative expense claims against the Debtor Term DIP Loan Parties on a joint and several

basis (without the need to file any proof of claim) with priority over any and all claims against the

Debtor Term DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all other administrative expenses of the kind specified in sections

503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims

arising under section 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113

or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not

such expenses or claims may become secured by a judgment lien or other non-consensual lien,

levy or attachment, which allowed claims (the "**Term DIP Superpriority Claims**") shall, for

purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses

allowed under section 503(b) of the Bankruptcy Code, and which Term DIP Superpriority Claims

shall be payable from and have recourse to all prepetition and postpetition property of the Debtor

Term DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under

sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance

actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but including any

proceeds or property recovered, whether unencumbered or otherwise, from Avoidance Actions,

whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")) in accordance with the

Term DIP Documents, including this Final Order, subject only to the liens on such property and

the Carve-Out as set forth in this Final Order and the other Term DIP Documents. The Term DIP

Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy

Code in the event that this Final Order or any provision hereof is vacated, reversed or modified,

on appeal or otherwise.

(b)    *ABL DIP Superpriority Claims*. Pursuant to section 364(c)(1) of the

Bankruptcy Code, all of the ABL DIP Obligations shall constitute allowed superpriority

administrative expense claims against the Debtor ABL DIP Loan Parties on a joint and several

basis (without the need to file any proof of claim) with priority over any and all claims against the

Debtor ABL DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including,

without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b)

of the Bankruptcy Code and any and all other administrative expenses or other claims arising under

section 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of

the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or

attachment, which allowed claims (the "**ABL DIP Superpriority Claims**") shall, for purposes of

section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed

under section 503(b) of the Bankruptcy Code, and which ABL DIP Superpriority Claims shall be

payable from and have recourse to all prepetition and postpetition property of the Debtor ABL DIP

Loan Parties and all proceeds thereof (excluding Avoidance Actions, but including any Avoidance

Proceeds) in accordance with the ABL DIP Documents, including this Final Order, subject only

to the liens on such property and the Carve-Out as set forth in this Final Order and the other ABL

DIP Documents. The ABL DIP Superpriority Claims shall be entitled to the full protection of

45

section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is
vacated, reversed or modified, on appeal or otherwise.

        (c)    *Intercompany DIP Superpriority Claims*. Pursuant to section 364(c)(1) of
the Bankruptcy Code, all of the Intercompany DIP Obligations shall constitute allowed
superpriority administrative expense claims against the Debtor Intercompany DIP Loan Parties on
a joint and several basis (without the need to file any proof of claim) with priority over any and all
claims against the Debtor Intercompany DIP Loan Parties, now existing or hereafter arising, of
any kind whatsoever, including, without limitation, all administrative expenses of the kind
specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all other
administrative expenses or other claims arising under section 105, 326, 327, 328, 330, 331, 365,
503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate
Protection Obligations), whether or not such expenses or claims may become secured by a
judgment lien or other non-consensual lien, levy or attachment, which allowed claims
(the "**Intercompany DIP Superpriority Claims**" and, together with the Term DIP Superpriority
Claims and the ABL DIP Superpriority Claims, the "**DIP Superpriority Claims**") shall, for
purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses
allowed under section 503(b) of the Bankruptcy Code, and which Intercompany DIP Superpriority
Claims shall be payable from and have recourse to all prepetition and postpetition property of the
Debtor Intercompany DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions,
but including any Avoidance Proceeds (other than, with respect to the Intercompany DIP
Obligations owed to any Intercompany DIP Secured Party, Avoidance Proceeds or any other
amounts recovered from such Intercompany DIP Secured Party in respect of an Avoidance Action
or any other cause of action or claim asserted against such Intercompany DIP Secured Party)), in

accordance with the Intercompany DIP Documents, including this Final Order, subject only to the liens on such property and the Carve-Out as set forth in this Final Order. The Intercompany DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(d)    *Priority of DIP Superpriority Claims*. The Term DIP Superpriority Claims and the ABL DIP Superpriority Claims against a Debtor shall be *pari passu* in right of payment with one another and senior to the Intercompany DIP Superpriority Claims against such Debtor. All DIP Superpriority Claims against any Debtor shall be senior in right of payment to the 507(b) Claims (as defined herein) against such Debtor, and subordinated to the Carve-Out.

6.    *DIP Liens*.

(a)    *Term DIP Liens*. As security for the Term DIP Obligations, effective and automatically and properly perfected as of the date of the Interim Order without the necessity of the execution, recordation or filing by the Debtor DIP Loan Parties or any of the Term DIP Secured Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the Term DIP Agent of, or over, any Collateral, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens (all security interests and liens granted to the Term DIP Agent, for its benefit and for the benefit of the Term DIP Secured Parties, pursuant to the Interim Order, this Final Order and the other Term DIP Documents, the "**Term DIP Liens**") were, and hereby are, granted to the Term DIP Agent for its own benefit and the benefit of the Term DIP Secured Parties (all property identified in clauses (a)(i) through (a)(viii) below being collectively referred to as the "**Term DIP**

47

**Collateral**"); *provided* that, notwithstanding anything herein to the contrary, the Term DIP Liens

shall be (a) subject and junior to the Carve-Out in all respects and (b) in each case in accordance

with the priorities set forth in the Prepetition Intercreditor Agreements and **Exhibit 1**:

(i)     *First Lien on OpCo Unencumbered Term Priority Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first (subject only to the Carve-Out) priority senior security interest in and lien upon all prepetition and postpetition property of the OpCo Debtors, whether existing on the Petition Date or thereafter acquired, that (X) on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the OpCo Debtors (whether maintained with any of the DIP Secured Parties or otherwise) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (the "**OpCo Unencumbered Property**") and (Y) that is not of the same nature, scope, and type as Prepetition ABL Priority Collateral (the "**OpCo Unencumbered Term Priority Property**"), other than the Avoidance Actions (but, for the avoidance of doubt, including Avoidance Proceeds);

(ii)    *Third Lien on OpCo Unencumbered ABL Priority Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected third (subject to the Carve-Out and junior and subject only to (I) the ABL DIP Liens (as defined herein) and (II) the FILO ABL AP Liens (as defined herein), in each case, on the OpCo Unencumbered ABL Priority Property) priority security interest in and lien upon all OpCo Unencumbered Property that is of the same nature, scope,

48

and type as the Prepetition ABL Priority Collateral (the "**OpCo Unencumbered ABL Priority Property**"), other than the Avoidance Actions (but, for the avoidance of doubt, including Avoidance Proceeds);

(iii)  *First Lien on BrandCo Unencumbered Property*. For the benefit of the Term DIP Obligations only, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first (subject only to the Carve-Out) priority senior security interest in and lien upon all prepetition and postpetition property of the BrandCo Entities, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the BrandCo Entities (whether maintained with any of the DIP Secured Parties or otherwise) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (the "**BrandCo Unencumbered Property**" and, together with the OpCo Unencumbered Property, the "**Unencumbered Property**"), in each case, other than the Avoidance Actions (but, for the avoidance of doubt, including Avoidance Proceeds);

(iv)  *Liens Priming the Prepetition Secured Parties' Liens on Prepetition Shared Term Priority Collateral*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first (subject only to the Carve-Out) priority senior priming security interest in and lien upon all Prepetition Shared Term Priority Collateral, regardless of where located (the "**Term DIP Term Priority Collateral Priming Liens**"), which Term DIP Term Priority Collateral Priming Liens shall prime in all respects the interests of the Prepetition

49

Secured Parties arising from the current and future liens of the Prepetition Secured Parties on the Prepetition Shared Term Priority Collateral (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (the "**Term DIP Term Priority Collateral Primed Liens**");

(v)     *Liens Priming Certain Prepetition Secured Parties' Liens on Prepetition ABL Priority Collateral.* Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected fourth (subject to the Carve-Out and junior and subject only to (I) the ABL DIP ABL Priority Collateral Priming Liens (as defined herein), (II) the FILO ABL AP Liens and (III) the Prepetition ABL Liens held by the Prepetition FILO ABL Agent (the "**Prepetition FILO ABL Liens**"), in each case, on the Prepetition ABL Priority Collateral) priority priming security interest in and lien upon all Prepetition ABL Priority Collateral, regardless of where located (the "**Term DIP ABL Priority Collateral Priming Liens**"), which Term DIP ABL Priority Collateral Priming Liens shall prime in all respects the interests of the Prepetition 2016 Term Loan Secured Parties and the Prepetition BrandCo Secured Parties arising from the current and future liens of such Prepetition Secured Parties on the Prepetition ABL Priority Collateral (including, without limitation, the Adequate Protection Liens granted to such Prepetition Secured Parties) (the "**Term DIP ABL Priority Collateral Primed Liens**");

(vi)    *Liens Priming the Prepetition BrandCo Secured Parties' Liens on Prepetition BrandCo Collateral.* For the benefit of the Term DIP Obligations only, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first (subject only to the Carve-Out) priority senior priming security interest in and lien upon all Prepetition BrandCo Collateral (together with the BrandCo Unencumbered Property and any DIP Collateral described in clause (vii) below that is property of any BrandCo Entity, the "**BrandCo DIP Collateral**"), regardless of where located (the "**Term DIP BrandCo Collateral Priming Liens**" and, together with the Term DIP Term Priority Collateral Priming Liens and the Term DIP ABL Priority Collateral Priming Liens, the "**Term DIP Priming Liens**"), which Term DIP BrandCo Collateral Priming Liens shall prime in all respects the interests of the Prepetition Secured Parties arising from the current and future liens of the Prepetition Secured Parties on the Prepetition BrandCo Collateral (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (the "**BrandCo Collateral Primed Liens**" and, together with

50

the Term DIP Term Priority Collateral Primed Liens and Term DIP ABL Priority Collateral Primed Liens, the "**Term DIP Primed Liens**");

(vii)    *Liens Junior to Certain Other Liens.* Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor Term DIP Loan Party that is not described in the foregoing clauses (i) through (vi), which shall be junior and subordinate only to (A) any (x) valid, perfected and non-avoidable senior liens on such property (other than the Primed Liens (as defined herein)) in existence immediately prior to the Petition Date and (y) any such valid and non-avoidable senior liens on such property (other than the Primed Liens) in existence immediately prior to the Petition Date that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code, and, in each case, are senior in priority to the Primed Liens (any such lien, a "**Non-Primed Excepted Lien**") and (B) with respect to any such property of an OpCo Debtor that is of the same nature, scope and type as the Prepetition ABL Priority Collateral (such property, together with the Prepetition ABL Priority Collateral and the OpCo Unencumbered ABL Priority Property, the "**ABL Priority DIP Collateral**"), the ABL DIP Liens and the FILO ABL AP Liens on such property; *provided* that, nothing in the foregoing shall limit the rights of the Term DIP Secured Parties under the Term DIP Documents to the extent such Non-Primed Excepted Liens are not permitted thereunder;[11] and

(viii)   *Term DIP Liens Senior to Certain Other Liens.* The Term DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order or the other Term DIP Documents, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor Term DIP Loan

---

[11] With respect to any Prepetition Collateral that is subject to a Term DIP Primed Lien and a Non-Primed Excepted Lien, the Term DIP Priming Liens on such Prepetition Collateral shall prime and be senior to the applicable Term DIP Primed Lien but junior and subordinate to the Non-Primed Excepted Lien; *provided* that nothing herein shall limit the rights of the Term DIP Secured Parties under the Term DIP Documents to the extent such Non-Primed Excepted Lien is not permitted thereunder.

Parties, or (C) any intercompany or affiliate liens of the Debtor Term DIP Loan Parties or security interests of the Debtor Term DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(b)    *Intercompany DIP Liens*. As security for the Intercompany DIP Obligations, effective and automatically and properly perfected as of the date of the Interim Order without the necessity of the execution, recordation or filing by the Debtor Intercompany DIP Loan Parties or any of the Intercompany DIP Secured Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the Intercompany DIP Lenders of, or over, any Collateral, valid, binding, continuing, enforceable and non-avoidable priming security interests and liens (all security interests and liens granted to the Intercompany DIP Secured Parties pursuant to the Interim Order, this Final Order or the other Intercompany DIP Documents, the "**Intercompany DIP Liens**") on all Term DIP Collateral that constitutes property of the estates of the Debtor Intercompany DIP Loan Parties, other than, with respect to the Intercompany DIP Obligations owed to any Intercompany DIP Secured Party, Avoidance Proceeds or any other amounts recovered from such Intercompany DIP Secured Party in respect of an Avoidance Action or any other cause of action or claim asserted against such Intercompany DIP Secured Party (the "**Intercompany DIP Collateral**"), immediately junior and subject to the Term DIP Liens on such Intercompany DIP Collateral, as set forth in **Exhibit 1**.

(c)    *ABL DIP Liens*. As security for the ABL DIP Obligations, effective and automatically and properly perfected as of the date of the Interim Order, and without the necessity of the execution, recordation or filing by the Debtor ABL DIP Loan Parties or any of the ABL DIP Secured Parties of mortgages, security agreements, control agreements, pledge agreements,

52

financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the ABL DIP Agent of, or over, any Collateral, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens (all security interests and liens granted to the ABL DIP Agent, pursuant to the Interim Order, this Final Order and the other ABL DIP Documents, for its benefit and for the benefit of the LIFO ABL DIP Lenders, the "**LIFO ABL DIP Liens**," and for the benefit of the SISO ABL DIP Lenders, the "**SISO ABL DIP Liens**," together with the LIFO ABL DIP Liens, the "**ABL DIP Liens**" and, together with the Term DIP Liens and the Intercompany DIP Liens, the "**DIP Liens**") were, and hereby are, granted to the ABL DIP Agent for its own benefit and the benefit of the ABL DIP Secured Parties (all property identified in clauses (i) through (vi) below being collectively referred to as the "**ABL DIP Collateral**" and, together with the Term DIP Collateral and the Intercompany DIP Collateral, the "**DIP Collateral**"); *provided* that, notwithstanding anything herein to the contrary, (1) the LIFO ABL DIP Liens shall be senior in all respects to the SISO ABL DIP Liens and (2) the ABL DIP Liens shall be (a) subject to the Carve-Out in all respects and (b) in each case in accordance with the priorities set for in the Prepetition Intercreditor Agreements and **Exhibit 1**:

(i)     *Fourth Lien on OpCo Unencumbered Term Priority Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected fourth (subject to the Carve-Out and junior and subject only to (I) the Term DIP Liens, (II) the Intercompany DIP Liens and (III) the Shared Term Collateral AP Liens (as defined herein), in each case, on the OpCo Unencumbered Term Priority Property) priority security interest in and lien upon all OpCo Unencumbered Term Priority Property, other than the Avoidance Actions (but, for the avoidance of doubt, including Avoidance Proceeds);

(ii)    *First Lien on OpCo Unencumbered ABL Priority Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first (subject only to the Carve-Out) priority senior security interest in and lien

53

upon all OpCo Unencumbered ABL Priority Property, other than the Avoidance Actions (but, for the avoidance of doubt, including Avoidance Proceeds);

(iii)    *Liens Priming Certain Prepetition Secured Parties' Liens on Prepetition Shared Term Priority Collateral*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected fifth (subject to the Carve-Out and junior and subject only to (I) the Term DIP Term Priority Collateral Priming Liens, (II) the Intercompany DIP Liens, (III) the Shared Term Collateral AP Liens and (IV) the Prepetition BrandCo Liens and the Prepetition 2016 Term Loan Liens, in each case, on the Prepetition Shared Term Priority Collateral) priority priming security interest in and lien upon all Prepetition Shared Term Priority Collateral, regardless of where located, (the "**ABL DIP Term Priority Collateral Priming Liens**"), which ABL DIP Term Priority Collateral Priming Liens shall prime in all respects the interests of the Prepetition ABL Secured Parties arising from the current and future liens of the Prepetition ABL Secured Parties on the Prepetition Shared Term Priority Collateral (including, without limitation, the Adequate Protection Liens granted to the Prepetition ABL Secured Parties) (the "**ABL DIP Term Priority Collateral Primed Liens**");

(iv)    *Liens Priming Certain Prepetition Secured Parties' Liens on Prepetition ABL Priority Collateral*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first (subject only to the Carve-Out) priority senior priming security interest in and lien upon all Prepetition ABL Priority Collateral, regardless of where located (the "**ABL DIP ABL Priority Collateral Priming Liens**" and, together with the ABL DIP Term Priority Collateral Priming Liens, the "**ABL DIP Priming Liens**"), which ABL DIP ABL Priority Collateral Priming Liens shall prime in all respects the interests of the Prepetition Secured Parties arising from the current and future liens of the Prepetition Secured Parties on the Prepetition ABL Priority Collateral (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (the "**ABL DIP ABL Priority Collateral Primed Liens**" and, together with the ABL DIP Term Priority Collateral Primed Liens, the "**ABL DIP Primed Liens**" and, together with the Term DIP Primed Liens, the "**Primed Liens**");

(v)    *Liens Junior to Certain Other Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor ABL DIP Loan Party that is not described in the foregoing clauses (i) through (iv), which shall be junior and subordinate only to (A) any Non-Primed Excepted Lien on such property and (B) with respect to any such property that is of the same nature, scope and type as the Prepetition Shared Term Priority Collateral (such property, together with the Prepetition Shared Term Priority Collateral and the OpCo Unencumbered Term Priority Property, the "**Term Priority DIP Collateral**"), the Term DIP Liens, the Intercompany DIP Liens and the Shared Term Collateral AP Liens on such property; *provided* that nothing in the foregoing shall limit the rights of the ABL DIP Secured Parties under the ABL DIP Documents to the extent such Non-Primed Excepted Liens are not permitted thereunder;[12] and

(vi)     *ABL DIP Liens Senior to Certain Other Liens.* The ABL DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order or the other ABL DIP Documents, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor ABL DIP Loan Parties, or (C) any intercompany or affiliate liens of the Debtor ABL DIP Loan Parties or security interests of the Debtor ABL DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(d)     *Relative Priority of Liens*. Notwithstanding anything to the contrary in this

Final Order or in the other DIP Documents, subject to paragraph 29 hereof, the relative priority of

each DIP Lien granted in paragraph 6 of the Interim Order and this paragraph 6, the Prepetition

---

[12] With respect to any Prepetition Shared Collateral that is subject to an ABL DIP Primed Lien and a Non-Primed Excepted Lien, the ABL DIP Priming Liens on such Prepetition Collateral shall prime and be senior to the applicable ABL DIP Primed Lien but junior and subordinate to the Non-Primed Excepted Lien; *provided* that nothing herein shall limit the rights of the ABL DIP Secured Parties under the ABL DIP Documents to the extent such Non-Primed Excepted Lien is not permitted thereunder.

BrandCo Liens, the Prepetition 2016 Term Loan Liens, the Prepetition FILO ABL Liens, the

Shared Term Collateral AP Liens, the BrandCo Collateral AP Liens and the FILO ABL AP Liens

shall be as set forth in **Exhibit 1** attached hereto; *provided* that, for the avoidance of doubt, each

such lien shall be subject to the Carve-Out in all respects.

(e)    *Specified Leases*. Notwithstanding anything to the contrary in this Final

Order or in the other DIP Documents, in no event shall the DIP Collateral include, or the DIP Liens

and/or Adequate Protection Liens granted under the Interim Order or this Final Order attach to,

any leasehold interest to the extent that a grant of a security interest therein would violate, breach

or invalidate such lease or create a right of acceleration, modification, termination or cancellation

in favor of any other party to such lease (other than any Debtor DIP Loan Party) after giving effect

to the Bankruptcy Code, applicable anti-assignment provisions of the Uniform Commercial Code

in effect in the State of New York or any successor provision thereof as the same may from time

to time be in effect in the State of New York or the Uniform Commercial Code of another

applicable jurisdiction or any successor provision thereof (or similar code or statute)

(the "**Uniform Commercial Code**") and any other applicable law, and only for so long as such

prohibition exists and to the extent such prohibition was not created in contemplation of such grant

of the DIP Liens and/or Adequate Protection Liens (such leases collectively referred to as

the "**Specified Leases**"); provided that, prior to foreclosing on any leasehold interest pursuant to

an exercise of remedies after the occurrence of an Event of Default, the DIP Secured Parties (and

Prepetition Secured Parties, as applicable) shall provide such counterparty with five (5) business

days' prior written notice; provided, further, that the foregoing shall not preclude any counterparty

to a lease with the Debtors from an opportunity to be heard in this Court on notice with respect to

whether such lease is a Specified Lease and the Court shall retain jurisdiction to hear and adjudicate

issues related thereto. Notwithstanding the foregoing, the DIP Liens (and Adequate Protection Liens) shall in all events attach to all of the applicable Debtor DIP Loan Parties' rights to proceeds, receivables, products and profits from all sales, transfers, dispositions, or monetizations of any and all unexpired leases, including Specified Leases. Notwithstanding anything to the contrary in this Final Order or in the other DIP Documents: (a) the rights of all parties are reserved with respect to whether (i) that certain office lease between One NY Plaza Co. LLC ("**One NY Plaza**") and Revlon Consumer Products Corp. for space at One New York Plaza, New York, New York (the "**One NY Plaza Lease**") or (ii) that certain distribution center lease between SIR Roanoke LLC ("**SIR Roanoke**"), and Elizabeth Arden, Inc. for space at 1751 Blue Hills Drive, Roanoke, VA (the "**SIR Roanoke Lease**") is a Specified Lease; and (b) neither the DIP Secured Parties nor Prepetition Secured Parties shall exercise foreclosure remedies with respect to the One NY Plaza Lease or the SIR Roanoke Lease without an order by the Court that the One NY Plaza Lease or the SIR Roanoke Lease, as applicable, is not a Specified Lease.

7.      *Protection of DIP Lenders' Rights*.

(a)      So long as there are any Term DIP Obligations outstanding or the Term DIP Lenders have any outstanding Term DIP Commitments under the Term DIP Documents, each Prepetition Secured Party shall (i) take no action to foreclose upon, or recover in connection with, the Term DIP Primed Liens on the DIP Collateral granted thereto pursuant to the Prepetition Loan Documents, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral subject to such Term DIP Primed Liens, including in connection with the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, the DIP Collateral subject to such Term DIP Primed Liens (but not any proceeds of such transfer, disposition or sale to the extent remaining after

payment in cash in full of the Term DIP Obligations and termination of the Term DIP Commitments), to the extent provided in any applicable Prepetition Intercreditor Agreement; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral subject to such Term DIP Primed Liens other than as necessary to give effect to this Final Order other than, solely as to this clause (iii), (x) the DIP Agents filing financing statements or other documents to perfect the liens granted pursuant to the Interim Order and this Final Order, or (y) as may be required by applicable state law or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the Debtor DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the Term DIP Agents or the Term DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to such Term DIP Primed Liens, subject to any ordinary course sale or court-approved disposition.

(b)     So long as there are any ABL DIP Obligations outstanding or the ABL DIP Lenders have any outstanding ABL DIP Commitments under the ABL DIP Documents, each Prepetition Secured Party shall (i) take no action to foreclose upon, or recover in connection with, the ABL DIP Primed Liens on the DIP Collateral granted thereto pursuant to the Prepetition Loan Documents, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral subject to such ABL DIP Primed Liens, including in connection with the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, the DIP Collateral subject to such ABL DIP Primed

Liens (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the ABL DIP Obligations and termination of the ABL DIP Commitments), to the extent provided in any applicable Prepetition Intercreditor Agreement; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral subject to such ABL DIP Primed Liens other than as necessary to give effect to this Final Order other than, solely as to this clause (iii), (x) the DIP Agents filing financing statements or other documents to perfect the liens granted pursuant to the Interim Order and this Final Order, or (y) as may be required by applicable state law or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the Debtor DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the ABL DIP Agents or the ABL DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to such ABL DIP Primed Liens, subject to any ordinary course sale or court-approved disposition.

(c)    To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the applicable DIP Agents and the applicable DIP Secured Parties. In addition, to the extent that the Prepetition LIFO ABL Agent or

Prepetition BrandCo Agent is named as a mortgagee or control party, or is a party to any landlord waiver, bailee letter, debenture or other collateral agreement each applicable DIP Agent (on behalf of the applicable DIP Lenders) is also deemed to be a party thereto and shall act in that capacity for the applicable DIP Secured Parties, and the ABL DIP Facility is further deemed to be an amendment and restatement of the Prepetition LIFO ABL Obligations and Prepetition SISO ABL Obligation for purposes of any applicable mortgages, control agreements, landlord waivers, bailee letters, debentures or other collateral agreements, respectively.

(d)     Any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Agents, shall be segregated and held in trust for the benefit of and forthwith paid over to the applicable DIP Agents for the benefit of the applicable DIP Secured Parties in the same form as received, with any necessary endorsements. The DIP Agents are hereby authorized to make any such endorsements as agent for the Prepetition Agents or any such Prepetition Secured Parties. This authorization is coupled with an interest and is irrevocable.

(e)     The Automatic Stay is hereby modified to the extent necessary to permit each DIP Agent (acting at the direction of the applicable required parties under the DIP Documents) to take any or all of the following actions, at the same or different time, in each case without further order or application of the Court: (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any applicable further DIP Commitment to the extent any such DIP Commitment remains, (B) all applicable DIP Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtor DIP Loan Parties, notwithstanding anything

60

herein or in any DIP Document to the contrary, and (C) the termination of the applicable DIP Documents as to any future liability or obligation of the DIP Agents and the applicable DIP Lenders with respect to the DIP Commitments thereunder (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), and (ii) upon the occurrence and continuance of an Event of Default and the giving of seven (7) days' prior written notice (a "**Remedies Notice**") (which shall run concurrently with any notice required to be provided under the DIP Documents, including paragraph 26(b)) (the "**Remedies Notice Period**") via email to the DIP Notice Parties, which notice shall also be filed on the docket of the Court, unless this Court orders otherwise during the Remedies Notice Period after a hearing, (A) exercise all rights and remedies available under the applicable DIP Documents and otherwise available under applicable law whether or not the maturity of any of the DIP Obligations shall have been accelerated and (B) withdraw consent to the Debtors' continued use of applicable Cash Collateral. Solely following the payment in full of the Term DIP Obligations and termination of the Term DIP Commitments upon the occurrence of any Event of Default, the Prepetition BrandCo Agent shall be permitted to (A) file a Remedies Notice with the Court in accordance with this paragraph 7(e) and, unless the Court orders otherwise during the Remedies Notice Period after a hearing, withdraw consent to the Debtors' continued use of Prepetition Collateral (including Cash Collateral) and (B) file a motion on seven (7) days' notice (which shall run concurrently with the notice required to be provided in respect of the Remedies Notice and any notice required under paragraph 26(b)) seeking authority to proceed to protect, enforce and exercise all other rights and remedies provided under the Prepetition Loan Documents or applicable law (subject to the Prepetition Intercreditor Agreements).

(f)     During the Remedies Notice Period, the Debtors shall be permitted to cure any Event of Default and to use Cash Collateral solely to (A) pay payroll and other critical administrative expenses to keep the business of the Debtors operating, strictly in accordance with the Approved Budget (without variance) or as necessary to maintain and maximize the value of the DIP Collateral, or as otherwise agreed by the DIP Agents, each acting at the direction of the applicable Required DIP Lenders, (B) fund the Carve-Out Account and (C) seek a hearing before the Court. During the Remedies Notice Period, the Debtors, the Creditors' Committee and/or any party in interest shall be entitled to seek an emergency hearing with the Court within the Remedies Notice Period solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this Final Order, the Debtors hereby waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Secured Parties set forth in this Final Order or the other DIP Documents.

(g)     No rights, protections or remedies of the DIP Agents or the DIP Secured Parties granted by the provisions of this Final Order or the other DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

8.     *Limitation on Charging Expenses Against Collateral*. No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy

Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the applicable DIP Agent or Prepetition Agent (including, for the avoidance of doubt, the Prepetition FILO ABL Agent in the case of the Prepetition ABL Priority Collateral), as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Agents, the DIP Secured Parties, the Prepetition Agents or the Prepetition Secured Parties, and nothing contained in the Interim Order or this Final Order shall be deemed to be a consent by the DIP Agents, the DIP Secured Parties, the Prepetition Agents or the Prepetition Secured Parties to any charge, lien, assessment or claims against the DIP Collateral (including Cash Collateral) under section 506(c) of the Bankruptcy Code or otherwise.

9.     *"Equities of the case" exception*. In no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to (a) the Prepetition BrandCo Agent or the Prepetition BrandCo Secured Parties with respect to proceeds, products, offspring or profits of any Prepetition Collateral or (b) the Prepetition ABL Agents, the Prepetition 2016 Term Loan Agent, the Prepetition ABL Secured Parties or the Prepetition 2016 Term Loan Secured Parties with respect to proceeds, products, offspring or profits of any Prepetition Shared Collateral.

10.     *No Marshaling*. In no event shall (a) the DIP Agents or the DIP Secured Parties or (b) the Prepetition BrandCo Agent, the Prepetition BrandCo Secured Parties, the Prepetition 2016 Term Loan Secured Parties, the Prepetition 2016 Term Loan Agent, the Prepetition ABL Agents or the Prepetition ABL Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition BrandCo Credit Facility Debt, the Prepetition ABL Credit Facility Debt or the Prepetition Collateral.

11.     *Payments Free and Clear*. Any and all payments or proceeds remitted to (i) the DIP Agents by, through or on behalf of the DIP Secured Parties or (ii) Intercompany DIP Lenders, pursuant to the provisions of this Final Order, the other DIP Documents or any subsequent order of the Court, shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

12.     *Use of Cash Collateral*. The Debtors were, by the Interim Order, and hereby are, subject to the terms and conditions of this Final Order, authorized to use all Cash Collateral in accordance with the DIP Documents and Approved Budget (subject to permitted variances); *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

13.     *Disposition of DIP Collateral*. The Debtor DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Documents and, to the extent required under the Bankruptcy Code, further order of this Court, upon notice to each of the DIP Notice Parties and all other parties in interest entitled to receive notices in these Chapter 11 Cases.

14.     *Adequate Protection on Account of Prepetition Shared Term Priority Collateral*. The Prepetition BrandCo Secured Parties and the Prepetition 2016 Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), 503 and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Shared Term Priority Collateral in an

amount equal to the aggregate diminution in the value of such parties' interests in the Prepetition Shared Term Priority Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any diminution resulting from the sale, lease or use by the OpCo Debtors of the Prepetition Shared Term Priority Collateral, the priming of the Prepetition 2016 Term Loan Liens and the Prepetition BrandCo Liens on the Prepetition Shared Term Priority Collateral by the DIP Liens pursuant to the DIP Documents, the Interim Order and this Final Order, the payment of any amounts under the Carve-Out or pursuant to the Interim Order, this Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, or the imposition of the Automatic Stay in respect of the Prepetition Shared Term Priority Collateral (the "**Term Collateral Diminution Claims**"). For the avoidance of doubt, the Creditors' Committee and all other parties in interest reserve all of their respective rights in respect of whether any such diminution has occurred. In consideration of the foregoing, the Prepetition BrandCo Agent, for the benefit of the Prepetition BrandCo Secured Parties, and the Prepetition 2016 Term Loan Agent, for the benefit of the Prepetition 2016 Term Loan Secured Parties, are hereby granted the following as Adequate Protection for, and to secure repayment of an amount equal to such Term Collateral Diminution Claims (collectively, the "**Term Collateral Adequate Protection Obligations**"):

(a)      *Prepetition Shared Term Priority Collateral Adequate Protection Liens*. The Prepetition BrandCo Agent, for itself and for the benefit of the other Prepetition BrandCo Secured Parties, and the Prepetition 2016 Term Loan Agent, for itself and for the benefit of the Prepetition 2016 Term Loan Secured Parties, were, by the Interim Order, and hereby are granted (effective and perfected as of the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other

agreements) in the amount of their respective Term Collateral Diminution Claims, a valid, perfected replacement security interest in and lien upon all Term Priority DIP Collateral and ABL Priority DIP Collateral (the "**Shared Term Collateral AP Liens**"), in accordance with the priorities shown in **Exhibit 1** and in each case subject to the Carve-Out; *provided* that the Shared Term Collateral AP Liens of the Prepetition BrandCo Secured Parties and the Prepetition 2016 Term Loan Secured Parties shall be subject to the Prepetition Pari Passu Term Loan Intercreditor Agreement and the Prepetition ABL Intercreditor Agreement.

(b)     *Prepetition Shared Term Priority Collateral Section 507(b) Claims*. The Prepetition BrandCo Agent, for itself and for the benefit of the other Prepetition BrandCo Secured Parties, and the Prepetition 2016 Term Loan Agent, for itself and for the benefit of the Prepetition 2016 Term Loan Secured Parties, are hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim against the OpCo Debtors as provided for in section 507(b) of the Bankruptcy Code in the amount of any portion of such parties' Term Collateral Diminution Claims not satisfied by the Shared Term Collateral AP Liens, with priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, except as set forth below, and subject to, as applicable, the Prepetition Intercreditor Agreements (the "**Term Collateral 507(b) Claims**"), which Term Collateral 507(b) Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses of the OpCo Debtors allowed under section 503(b) of the Bankruptcy Code, and which Term Collateral 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the OpCo Debtors and all proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds). The Term Collateral 507(b) Claims shall be subject to the Carve-Out and the DIP Superpriority Claims. Except to the extent expressly set

forth in the Interim Order, this Final Order or the other DIP Documents, neither the Prepetition

BrandCo Secured Parties nor the Prepetition 2016 Term Loan Secured Parties shall receive or

retain any payments, property or other amounts in respect of the Term Collateral 507(b) Claims

unless and until the DIP Obligations (other than contingent indemnification obligations as to which

no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments

have been terminated.

(c)     *Prepetition 2016 Term Loan Secured Parties Fees and Expenses*. As

Adequate Protection for any diminution in value of their interests in the Prepetition Shared

Collateral, Citibank, solely in its capacity as Prepetition 2016 Term Loan Agent, shall be entitled

to payment of all reasonable and documented prepetition and postpetition fees and expenses of

Latham & Watkins LLP, as lead counsel to the Prepetition 2016 Term Loan Agent, and one

financial advisor (such fees and expenses, the "**2016 Term Loan Agent Fees and Expenses**"),

subject to (i) the review procedures set forth in paragraph 28 of this Final Order, including the

notice provisions thereof and (ii) the limitations on the use of funds set forth in paragraph 30.

15.     *Adequate Protection on Account of Prepetition BrandCo Collateral*. The

Prepetition BrandCo Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1),

503 and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition

BrandCo Collateral in an amount equal to the aggregate diminution in the value of the Prepetition

BrandCo Secured Parties' interests in the Prepetition BrandCo Collateral from and after the

Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without

limitation, any diminution resulting from the sale, lease or use by the Debtors of the Prepetition

BrandCo Collateral, the priming of the Prepetition BrandCo Liens on the Prepetition BrandCo

Collateral by the DIP Liens pursuant to the DIP Documents, the Interim Order and this Final Order,

the payment of any amounts under the Carve-Out or pursuant to the Interim Order, this Final Order

or any other order of the Court or provision of the Bankruptcy Code or otherwise, or the imposition

of the Automatic Stay in respect of the Prepetition BrandCo Collateral (the "**BrandCo Collateral**

**Diminution Claims**"). In consideration of the foregoing, the Prepetition BrandCo Agent, for the

benefit of the Prepetition BrandCo Secured Parties (or, with respect to paragraph 17, the holders

of the Term B-1 Loans only), is hereby granted the following as Adequate Protection for, and to

secure repayment of an amount equal to such BrandCo Collateral Diminution Claims (collectively,

the "**BrandCo Collateral Adequate Protection Obligations**"):

(a)      *Prepetition BrandCo Collateral Adequate Protection Liens*. The Prepetition

BrandCo Agent, for itself and for the benefit of the other Prepetition BrandCo Secured Parties,

was, by the Interim Order, and hereby is granted (effective and perfected as of the date of the

Interim Order and without the necessity of the execution of any mortgages, security agreements,

pledge agreements, financing statements or other agreements), in the amount of the Prepetition

BrandCo Secured Parties' BrandCo Collateral Diminution Claims, a valid, perfected replacement

security interest in and lien upon all BrandCo DIP Collateral (the "**BrandCo Collateral AP**

**Liens**"), in accordance with the priorities shown in **Exhibit 1** and in each case subject to the Carve-

Out; *provided* that the BrandCo Collateral AP Liens of the Prepetition BrandCo Secured Parties

shall be subject to the Prepetition BrandCo Intercreditor Agreement. For the avoidance of doubt,

the BrandCo Collateral AP Liens will not attach to any Avoidance Proceeds recovered by the

OpCo Debtors from the BrandCo Entities.

(b)      *Prepetition BrandCo Collateral Section 507(b) Claims*. The Prepetition

BrandCo Agent, for itself and for the benefit of the other Prepetition BrandCo Secured Parties, is

hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim

against the BrandCo Entities as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition BrandCo Secured Parties' BrandCo Collateral Diminution Claims, with priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, except as set forth below, and subject to, as applicable, the Prepetition Intercreditor Agreements (the "**BrandCo Collateral 507(b) Claims**"), which BrandCo Collateral 507(b) Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses of the BrandCo Entities allowed under section 503(b) of the Bankruptcy Code, and which BrandCo Collateral 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the BrandCo Entities and all proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds). For the avoidance of doubt, the BrandCo Collateral 507(b) Claims will not have recourse to Avoidance Proceeds recovered by the OpCo Debtors from the BrandCo Entities. The BrandCo Collateral 507(b) Claims shall be subject to the Carve-Out and the Term DIP Superpriority Claims. Except to the extent expressly set forth in the Interim Order, this Final Order or the other Term DIP Documents, the Prepetition BrandCo Secured Parties shall not receive or retain any payments, property or other amounts in respect of the BrandCo Collateral 507(b) Claims unless and until the Term DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all Term DIP Commitments have been terminated.

16.    *Adequate Protection of Prepetition FILO ABL Secured Parties*. The Prepetition FILO ABL Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), 503 and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition ABL Priority Collateral in an amount equal to (i) in the case of the FILO ABL AP Liens as set forth and defined

below in paragraph 16(a), the Prepetition FILO ABL Secured Parties' allowed claims in respect

of the Prepetition FILO ABL Obligations, and (ii) in the case of the FILO ABL 507(b) Claims as

set forth and defined below in paragraph 16(b), the aggregate diminution in the value of the

Prepetition FILO ABL Secured Parties' interests in the Prepetition ABL Priority Collateral from

and after the Petition Date, if any and only to the extent not satisfied by the FILO ABL AP Liens,

for any reason provided for under the Bankruptcy Code, including, without limitation, any

diminution resulting from the sale, lease or use by the Debtors of the Prepetition ABL Priority

Collateral, the priming of the Prepetition FILO ABL Liens on the Prepetition ABL Priority

Collateral by the DIP Liens pursuant to the DIP Documents, the Interim Order and this Final Order,

the payment of any amounts under the Carve-Out or pursuant to the Interim Order, this Final Order

or any other order of the Court or provision of the Bankruptcy Code or otherwise, or the imposition

of the Automatic Stay in respect of the Prepetition ABL Priority Collateral (the "**FILO ABL**

**Diminution Claims**" and, together with the Term Collateral Diminution Claims and the BrandCo

Collateral Diminution Claims, the "**Diminution Claims**").  In consideration of the foregoing, the

Prepetition FILO ABL Agent, for the benefit of the Prepetition FILO ABL Secured Parties, is

hereby granted the following as Adequate Protection in the amounts set forth and as described in

paragraphs 16(a) and 16(b) (collectively, the "**FILO ABL Adequate Protection Obligations**"

and, together with the Term Collateral Adequate Protection Obligations and the BrandCo

Collateral Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)    *Prepetition FILO ABL Adequate Protection Liens*. The Prepetition FILO

ABL Agent, for itself and for the benefit of the other Prepetition FILO ABL Secured Parties, was,

by the Interim Order, and hereby is granted (effective and perfected as of the date of the Interim

Order and without the necessity of the execution of any mortgages, security agreements, pledge

agreements, financing statements or other agreements) a valid, perfected replacement security interest in and lien upon, to the extent of the Prepetition FILO ABL Secured Parties' allowed claims in respect of the Prepetition FILO ABL Obligations, all Term Priority DIP Collateral and ABL Priority DIP Collateral (the "**FILO ABL AP Liens**" and, together with the Shared Term Collateral AP Liens and the BrandCo Collateral AP Liens, the "**Adequate Protection Liens**"), in accordance with the priorities shown in **Exhibit 1** and in each case subject to the Carve-Out; *provided* that the FILO ABL AP Liens of the Prepetition FILO ABL Secured Parties shall be subject to the Prepetition ABL Credit Agreement.

(b)    *FILO ABL Section 507(b) Claims*. The Prepetition FILO ABL Agent, for itself and for the benefit of the other Prepetition FILO ABL Secured Parties, is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim against the OpCo Debtors as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition FILO ABL Secured Parties' FILO ABL Diminution Claims, with priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, except as set forth below, and subject to, as applicable, the Prepetition Intercreditor Agreements and the other Prepetition ABL Loan Documents (the "**FILO ABL 507(b) Claims**" and, together with the Term Collateral 507(b) Claims and the BrandCo Collateral 507(b) Claims, the "**507(b) Claims**"), which FILO ABL 507(b) Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses of the OpCo Debtors allowed under section 503(b) of the Bankruptcy Code, and which FILO ABL 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the OpCo Debtors and all proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds). The FILO ABL 507(b) Claims shall be subject to the Carve-Out and the DIP

71

Superpriority Claims. Interest shall accrue in respect of the Prepetition FILO ABL Obligations in accordance with the Prepetition ABL Credit Agreement; *provided* that, to the extent that any such accrual of interest (x) is the subject of a successful Challenge (as defined herein) under paragraph 29 or (y) is otherwise determined to be inconsistent with sections 506(a) and (b) of the Bankruptcy Code, then such accrual of postpetition interest may be unwound. Except to the extent expressly set forth in the Interim Order, this Final Order or the other DIP Documents, the Prepetition FILO ABL Secured Parties shall not receive or retain any payments, property or other amounts in respect of the FILO ABL 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments have been terminated. Notwithstanding anything in this paragraph 16, the Debtors and the Prepetition FILO ABL Secured Parties reserve their rights as to whether section 10.19 of the Prepetition ABL Credit Agreement or any other provision of the Prepetition ABL Credit Agreement or Prepetition ABL Intercreditor Agreement waives or limits the amount of the FILO ABL Diminution Claims, including as a result of any transaction being permitted thereunder without the consent of the Prepetition FILO Secured Parties.

17.    *Prepetition BrandCo Term B-1 Loans Interest Payment*. As (x) Adequate Protection for any diminution in value of their interests in the Prepetition BrandCo Collateral and (y) consideration for their agreement to extension of the Intercompany DIP Facility, (a) the Prepetition BrandCo Agent, on behalf of the holders of the Term B-1 Loans, shall continue to receive quarterly payments (the "**BrandCo B-1 Payments**") equal to the interest payable in cash accrued since the last interest payment in respect of the Term B-1 Loans (including (i) as to the first such BrandCo B-1 Payment, amounts accrued prior to the Petition Date that became due as of June 8, 2022, which shall be paid as soon as reasonably practicable after the Petition Date, and

(ii) as to the second such BrandCo B-1 Payment, amounts accrued since June 8, 2022, which shall be paid on the next regularly scheduled quarterly payment date, which is September 8, 2022) at the non-default interest rate applicable to the Term B-1 Loans under the Prepetition BrandCo Credit Agreement during such quarterly period, (b) interest paid in kind under the terms of the Prepetition BrandCo Credit Agreement shall continue to accrue and be paid in kind in respect of the Term B-1 Loans at the non-default rate that would otherwise be owed to the Prepetition BrandCo Lenders holding the Term B-1 Loans in accordance with the Prepetition BrandCo Credit Agreement and (c) default interest due under the terms of the Prepetition BrandCo Credit Agreement shall accrue and be paid in kind in respect of the Term B-1 Loans in accordance with the Prepetition BrandCo Credit Agreement; *provided* that, to the extent that any BrandCo B-1 Payments (x) must be repaid as a result of a successful Challenge (as defined herein) under paragraph 29 or (y) are otherwise determined to be inconsistent with sections 506(a) and (b) of the Bankruptcy Code, then such BrandCo B-1 Payments shall be recharacterized as repayment of principal of the secured claims in respect of the Prepetition BrandCo Credit Facility Debt (or disgorged, in the event that the Prepetition BrandCo Credit Facility Debt is determined by final, non-appealable order of this Court or another court of competent jurisdiction not to be an allowed secured claim), and the accrual of postpetition interest paid in kind and default interest may be unwound. The Prepetition BrandCo Agent and the Prepetition BrandCo Lenders reserve all rights to assert claims for payment of additional interest, whether adequate protection or otherwise, and the Debtors, the Creditors' Committee and other parties in interest reserve all of their respective rights to object to such claims if and when asserted. The rights of all parties in interest are reserved with respect to whether the BrandCo B-1 Payments made by the Borrower are required to be distributed pursuant to the waterfall set forth in the Prepetition Pari Passu Term Loan Intercreditor

Agreement. In the event that any party in interest obtains a final non-appealable order ruling that the BrandCo B-1 Payments made by the Borrower are required to be distributed pursuant to the waterfall set forth in the Prepetition Pari Passu Term Loan Intercreditor Agreement, each BrandCo B-1 Payment made by the Borrower prior to such ruling shall be deemed to have reduced the Intercompany DIP Obligations as a prepayment as of the date of such BrandCo B-1 Payment, and each BrandCo B-1 Payment made by the Borrower after the date of such ruling shall be deemed to reduce the Intercompany DIP Obligations as a prepayment.

18.    *Prepetition BrandCo Secured Parties Fees and Expenses*. As (a) Adequate Protection for any diminution in value of their interests in the Prepetition BrandCo Collateral, (b) consideration for their agreement to extension of the Intercompany DIP Facility and (c) consideration for their commitment to extend the Term DIP Facility, the Prepetition BrandCo Agent and the Ad Hoc Group of BrandCo Lenders shall be entitled to current cash payment of all reasonable and documented prepetition and postpetition fees and expenses, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of primary, special, conflicts and local counsel (in each applicable jurisdiction) and financial advisors, including without limitation, Davis Polk & Wardwell LLP, Centerview Partners LLC, Kobre & Kim LLP, Goodmans LLP, Paul Hastings LLP and any other advisors retained by or on behalf of the Prepetition BrandCo Agent or the Ad Hoc Group of BrandCo Lenders (such fees and expenses, the "**BrandCo Fees and Expenses**" and, such counsel and advisors, the "**Prepetition BrandCo Secured Parties Advisors**"), subject to the review procedures set forth in paragraph 28 of this Final Order, including the notice provisions thereof.

19.    *Letters of Credit.*

(a)   *JP Morgan Letters of Credit*. Pursuant to the Continuing Agreement for Standby Letters of Credit, dated May 6, 2021, the Assignment of Deposits, dated October 20, 2020, and the Amended and Restated Assignment of Deposits, dated June 7, 2021, in each case between RCPC and JPMorgan Chase Bank, N.A. (together, the "J**PMC LC Agreements**"), JPMorgan Chase Bank, N.A. ("**JPMC**") has issued letters of credit in the aggregate face amount of approximately $2,280,000 (subject to adjustment based upon foreign currency exchange rates in accordance with the JPMC LC Agreements) (the "**JPMC LCs**") for the account of one or more Debtors and the Debtors have provided cash collateral in the amount of approximately $2,508,000 (subject to adjustment based upon foreign currency exchange rates in accordance with the JPMC LC Agreements) to JPMC (the "**JPMC Cash Collateral**"). The Debtors agree that JPMC is entitled to Adequate Protection of its interest in the JPMC Cash Collateral and the Debtors were, by the Interim Order, and hereby are authorized to provide such Adequate Protection in accordance with this paragraph 19(a). The JPMC Cash Collateral will (i) continue to be held by JPMC during the pendency of the Debtors' Chapter 11 Cases, in accordance with the terms of the JPMC LC Agreements, and (ii) continue to secure all reimbursement obligations and the payment of fees, costs and expenses now or hereafter owing to JPMC in respect of the JPMC LCs, all of which shall continue to accrue and be payable to JPMC in accordance with the JPMC LC Agreements (collectively, the "**JPMC LC Obligations**"). JPMC was, by the Interim Order, and hereby is authorized to apply all or any portion of the JPMC Cash Collateral to the payment of the JPMC LC Obligations from time to time without further notice to or consent by the Debtors or any other party in interest and without further order of the Court. Notwithstanding anything to the contrary in this Final Order or any other order, (a) JPMC's lien on the JPMC Cash Collateral shall not be subject or subordinate to the Carve-Out, the DIP Liens, the Adequate Protection Liens, the

75

Permitted Prior Liens or the Prepetition Liens, and (b) JPMC shall be entitled to an allowed administrative expense claim in an amount equal to the JPMC LC Obligations (but limited to the amount of the JPMC Cash Collateral) in each of the OpCo Debtors' Chapter 11 Cases and in any Successor Cases (the "**JPMC Adequate Protection Claim**"). The JPMC Adequate Protection Claim shall be senior to all other administrative claims (including the Carve-Out, the DIP Superpriority Claim and the 507(b) Claims). The JPMC Cash Collateral shall be returned to the Debtors upon (x) the expiration of the JPMC LCs, (y) the provision to JPMC of a backup LC satisfactory to JPMC, or (z) the return of the undrawn JPMC LCs.

(b)     *Citibank Letters of Credit*. Pursuant to the Continuing Agreement for Standby Letters of Credit, dated August 2, 2021, and the Pledge, Assignment and Control Agreement, dated August 2, 2021, in each case between RCPC and Citibank (together, the "**Citibank LC Agreements**"), Citibank has issued letters of credit in the aggregate face amount of approximately $5,921,787 (subject to adjustment based upon foreign currency exchange rates in accordance with the Citibank LC Agreements) (the "**Citibank LCs**") for the account of one or more Debtors and the Debtors have provided cash collateral in the amount of approximately $6,099,441 (subject to adjustment based upon foreign currency exchange rates in accordance with the Citibank LC Agreements) to Citibank (the "**Citibank LC Cash Collateral**"). The Debtors agree that Citibank is entitled to Adequate Protection of its interest in the Citibank LC Cash Collateral and the Debtors hereby are authorized to provide such Adequate Protection in accordance with this paragraph 19(b). The Citibank LC Cash Collateral will (i) continue to be held by Citibank during the pendency of the Debtors' Chapter 11 Cases, in accordance with the terms of the Citibank LC Agreements, and (ii) continue to secure all reimbursement obligations and the payment of fees, costs and expenses now or hereafter owing to Citibank in respect of the Citibank

LCs, all of which shall continue to accrue and be payable to Citibank in accordance with the Citibank LC Agreements (collectively, the "**Citibank LC Obligations**"). Citibank hereby is authorized to apply all or any portion of the Citibank LC Cash Collateral to the payment of the Citibank LC Obligations from time to time without further notice to or consent by the Debtors or any other party in interest and without further order of the Court. Notwithstanding anything to the contrary in this Final Order or any other order, (a) Citibank's lien on the Citibank LC Cash Collateral shall not be subject or subordinate to the Carve-Out, the DIP Liens, the Adequate Protection Liens, the Permitted Prior Liens or the Prepetition Liens, and (b) Citibank shall be entitled to an allowed administrative expense claim in an amount equal to the Citibank LC Obligations (but limited to the amount of the Citibank LC Cash Collateral) in each of the OpCo Debtors' Chapter 11 Cases and in any Successor Cases (the "**Citibank LC Adequate Protection Claim**"). The Citibank LC Adequate Protection Claim shall be senior to all other administrative claims (including the Carve-Out, the DIP Superpriority Claim and the 507(b) Claims). The Citibank LC Cash Collateral shall be returned to the Debtors upon (x) the expiration of the Citibank LCs, (y) the provision to Citibank of a backup LC satisfactory to Citibank or (z) the return to Citibank of the undrawn Citibank LCs.

20.    *Prepetition Secured Parties' Adequate Protection Information Rights*. The Debtor DIP Loan Parties shall promptly provide the Prepetition Agents, for distribution to the Prepetition Secured Parties and, to the extent applicable, counsel to such parties, including counsel to the Ad Hoc Group of BrandCo Lenders, counsel to the Prepetition FILO ABL Agent and counsel to the Ad Hoc Group of 2016 Term Loan Lenders (and subject to applicable confidentiality restrictions in any of the Prepetition Loan Documents, including with respect to any "private" side lender database), with all required written financial reporting and other periodic reporting that is required

to be provided to the DIP Agents or the DIP Secured Parties under the DIP Documents, including

without limitation the reporting required under sections 6.1 and 6.2 of the Term DIP Credit

Agreement (the "**Adequate Protection Reporting Requirement**"). Upon the indefeasible

payment in full of all DIP Obligations and termination of all DIP Commitments, the Prepetition

Secured Parties shall continue to be entitled hereby to satisfaction of the Adequate Protection

Reporting Requirement. Copies of all reports delivered to the Prepetition Agents pursuant to this

paragraph 20 shall be substantially simultaneously delivered to the financial advisors and

investment bankers for the Creditors' Committee (pursuant to a confidentiality agreement or

information sharing protocol in form and substance reasonably satisfactory to the Debtors) and

following delivery of such reports, the Debtors' financial advisors shall conduct an explanatory

call in regards to such reports with the Creditors' Committee's financial advisors. Copies of all

Approved Budgets shall be delivered to the Creditors' Committee's advisors.

21.     *Maintenance of Collateral*. The Debtor DIP Loan Parties shall continue to maintain

and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the

entities, as required under the Prepetition Loan Documents and the DIP Documents.

22.     *Ad Hoc Group of 2016 Term Loan Lenders and Prepetition FILO ABL Agent Fees
and Expenses*.

(a)     Akin, as lead counsel, and Moelis & Company ("**Moelis**"), as financial

advisor, to the Ad Hoc Group of 2016 Term Loan Lenders, shall be entitled to payment of all

reasonable and documented prepetition and postpetition fees and expenses subject to the following

limits (a) on account of Akin's fees and expenses accrued through the Petition Date, capped in an

amount not to exceed $1 million in the aggregate; (b) on account of Akin's fees and expenses

accrued between the Petition Date and July 31, 2022, capped in an amount not to exceed $1 million

in the aggregate; and (c) on account of such fees and expenses accrued by (i) Akin beginning August 1, 2022, capped in an amount not to exceed $450,000 per month, and (ii) Moelis beginning June 1, 2022, in a fixed amount of $125,000 per month plus reasonable and documented expenses, subject, in each case, to (x) the review procedures set forth in paragraph 28 of this Final Order, including the notice provisions thereof and (y) the limitations on the use of funds set forth in paragraph 30 of this Final Order (such fees and expenses, the "**2016 Ad Hoc Group Fees and Expenses**" and, together with the 2016 Term Loan Agent Fees and Expenses, the "**2016 Term Loan Fees and Expenses**"); *provided* that the Required Term DIP Lenders or the Debtors may terminate the foregoing clause (c) after providing Akin and Moelis seven (7) days' advance written notice (x) beginning November 8, 2022; (y) if (I) prior to the issuance of a decision in the Citibank Appeal (as defined herein) or after the issuance of a decision in the Citibank Appeal against Citibank, the Ad Hoc Group of 2016 Term Loan Lenders ceases to hold a majority of the term loans under the Prepetition 2016 Term Loan Credit Agreement that are not subject to the Citibank Appeal, such holdings to be reported to the Required Term DIP Lenders every thirty (30) days after the entry of this Final Order or (II) the Citibank Appeal is decided in Citibank's favor requiring the mistaken payments be returned to Citibank; or (z) if the Ad Hoc Group of 2016 Term Loan Lenders asserts or supports any Challenge or Third-Party Claim (as defined herein) against any Prepetition BrandCo Secured Party or BrandCo Entity or objects to any plan of reorganization or restructuring support agreement; *provided*, *however*, that any such termination will not affect the obligation to pay any 2016 Ad Hoc Group Fees and Expenses accrued, including amounts accrued but unpaid, prior to the effective date of such termination.

(b)    Munger, Tolles, & Olson LLP ("**Munger**"), Cohn-Reznick LLC, and Holland & Knight LLP, as professionals to the Prepetition FILO ABL Agent, shall be reimbursed

by the Debtors for all documented postpetition fees and expenses incurred in connection with the DIP Motion, the Interim Order, and this Final Order, in an aggregate amount not to exceed $150,000 and subject to the review procedures set forth in paragraph 28 of this Final Order, including the notice provisions thereof (such fees and expenses, the "**Prepetition FILO ABL Agent Fees and Expenses**"); *provided* that the rights (if any) of the Debtors, the Prepetition FILO ABL Agent, and all other parties in interest are reserved, and not subject to paragraph 29(a) hereof, as to whether any additional fees, expenses, or other amounts incurred by the Prepetition FILO ABL Agent or the Prepetition FILO ABL Lenders are included in their allowed claims or are required to be reimbursed by the Debtors in accordance with the terms of the Prepetition ABL Loan Documents and the pertinent provisions of the Bankruptcy Code.

23.    *Intercompany DIP Facility Terms.* Amounts deemed borrowed under the Intercompany DIP Facility shall accrue interest, paid in kind on the last Business Day of each calendar quarter, from the date of each deemed borrowing at the rate applicable to "ABR Loans" and following the methods of computation set forth in section 2.15 of the Term DIP Credit Agreement. The Maturity Date for the Intercompany DIP Facility shall be the same as the "Maturity Date" provided in the Term DIP Credit Agreement. Upon such Maturity Date, the Borrower promises to pay the Intercompany DIP Lenders the unpaid principal amount of borrowings under the Intercompany DIP Facility and accrued interest on the unpaid principal amount of such borrowings made to the Borrower from time to time outstanding from the date made until payment in full thereof at the rates per annum, and on the dates, set forth in section 2.15 of the Term DIP Credit Agreement. The obligations of the Borrower under the Intercompany DIP Facility shall be guaranteed by the other Debtor Intercompany DIP Loan Parties on a joint and

several basis. For the avoidance of doubt, no further discounts, fees, or premiums shall be due in connection with the Intercompany DIP Facility.

24.    *Reservation of Rights of Prepetition Secured Parties*. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties and any other parties holding interests that are secured by Primed Liens; *provided* that the Prepetition Agents acting on their own behalf or at the direction of the requisite Prepetition Secured Parties, as well as any Prepetition Secured Party in its individual capacity (in each case, subject to the applicable Prepetition Intercreditor Agreements and any other applicable contractual limitations on such rights), may, upon a change in circumstances, request further or different adequate protection, upon notice to the Debtors, the Creditors' Committee and other parties in interest, and the Debtor DIP Loan Parties or any other party in interest, including the Creditors' Committee, may contest any such request, in each case, subject to the Prepetition Intercreditor Agreements and any other contractual limitations on such rights.

25.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    Without in any way limiting the automatically valid and effective perfection of the DIP Liens granted pursuant to paragraph 6 of the Interim Order and paragraph 6 hereof and the Adequate Protection Liens granted pursuant to paragraphs 14–16 of the Interim Order and paragraphs 14–16 hereof, the DIP Agents, the DIP Secured Parties, the Prepetition Agents and the Prepetition Secured Parties were, by the Interim Order, and hereby are authorized, but not required, to file or record (and to execute in the name of the Debtor DIP Loan Parties and the Prepetition Secured Parties (as applicable), as their true and lawful attorneys, with full power of substitution,

81

to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, including as may be reasonably required or deemed appropriate by the applicable DIP Agent, acting at the direction of the applicable required parties under the DIP Documents, and the Prepetition Agents, acting at the direction of the required parties under the applicable Prepetition Loan Documents, under applicable local laws, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into, amend or modify intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to document, validate and perfect the liens and security interests granted to them under the Interim Order and hereunder (the "**Perfection Actions**"). Whether or not the applicable DIP Agent, on behalf of the applicable DIP Secured Parties and acting at the direction of the applicable required parties under the DIP Documents, or the applicable Prepetition Agent, on behalf of the applicable Prepetition Secured Parties and acting at the direction of the applicable required parties under the applicable Prepetition Loan Documents, shall take such Perfection Actions, the liens and security interests granted pursuant to the Interim Order and hereunder were and shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order. Upon the request of a DIP Agent, acting at the direction of the applicable required parties under the DIP Documents, or a Prepetition Agent, acting at the direction of the applicable required parties under the applicable Prepetition Loan Documents, each of the Prepetition Secured Parties and the Debtor DIP Loan Parties, without any further consent of any party, and at the sole cost of the Debtors as set forth herein, was, by the Interim Order, and hereby is authorized (in the case of the Debtor DIP Loan Parties) and directed (in the case of the Prepetition Secured Parties), and such direction is

hereby deemed to constitute required direction under the applicable DIP Documents or Prepetition Loan Documents, to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Agents to further validate, perfect, preserve and enforce the DIP Liens in all jurisdictions required under the DIP Credit Agreements, including all local law documentation therefor determined to be reasonably necessary by such DIP Agent, acting at the direction of the applicable required parties under the DIP Documents; *provided*, *however*, that no action need be taken in a foreign jurisdiction that would jeopardize the validity and enforceability of the Prepetition Liens. All such documents were or will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of the Interim Order or this Final Order may, in the discretion of each DIP Agent, acting at the direction of the applicable required parties under the DIP Documents, and the Prepetition Agents, acting at the direction of the applicable required parties under the Prepetition Loan Documents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this Final Order for filing and/or recording, as applicable. The Automatic Stay shall be modified to the extent necessary to permit the DIP Agents and the Prepetition Agents to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

26.     *Preservation of Rights Granted Under this Final Order.*

(a)     Other than the Carve-Out and other claims and liens expressly granted by this Final Order and as expressly provided in paragraphs 6 and 14–16, no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Agents, the DIP Secured Parties, the Prepetition Agents or the Prepetition Secured Parties

shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in this Final Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor DIP Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtor DIP Loan Parties.

(b)     The occurrence and continuance of (x) any Event of Default (as defined in either of the DIP Credit Agreements) or (y) any violation of any of the terms of this Final Order, after notice by the applicable DIP Agent (acting at the direction of the applicable Required DIP Lenders) in writing to the DIP Notice Parties (or, after the indefeasible payment in full of the Term DIP Obligations and termination of the Term DIP Commitments, notice to such parties by the Prepetition BrandCo Agent, acting at the direction of the required parties under the applicable Prepetition BrandCo Loan Documents), shall constitute an event of default under this Final Order (each, an "**Event of Default**"); *provided* that the milestones set forth in section 6.17(d) of the Term DIP Credit Agreement and section 6.20(d) of the ABL DIP Credit Agreement shall be deemed to be August 2, 2022 (and any event of default previously resulting from the failure to comply with such provisions shall be deemed not to have occurred), the milestones set forth in section 6.17(e) of the Term DIP Credit Agreement and section 6.20(e) of the ABL DIP Credit Agreement shall be

deemed to be November 15, 2022, and the milestones set forth in section 6.17(f) of the Term DIP

Credit Agreement and section 6.20(f) of the ABL DIP Credit Agreement shall be deemed to be

December 14, 2022, in each case unless otherwise agreed in writing by the Required DIP Lenders.

Upon an Event of Default, interest, including, where applicable, default interest, shall accrue and

be paid as set forth in the DIP Credit Agreements. Notwithstanding any order that may be entered

dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code: (A) the DIP

Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens, and

any claims related to the foregoing, shall continue in full force and effect and shall maintain their

priorities as provided in this Final Order until all DIP Obligations and Adequate Protection

Obligations shall have been paid in full (and that such DIP Superpriority Claims, 507(b) Claims,

DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding

on all parties in interest); (B) the other rights granted by this Final Order, including with respect

to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding

such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in

this paragraph and otherwise in this Final Order.

        (c)      If any or all of the provisions of this Final Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the

validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations

incurred prior to the actual receipt of written notice by either DIP Agent or the applicable

Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur or

stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection

Liens or the Carve-Out. Notwithstanding any reversal, modification, vacatur or stay of any use of

Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate

Protection Liens incurred by the Debtor DIP Loan Parties and granted to the DIP Agents, the DIP Secured Parties, the Prepetition Agents or the other Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by either DIP Agent or any Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order. The DIP Secured Parties and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code, this Final Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations, as applicable.

(d)    Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Agents, the DIP Secured Parties, the Prepetition Agents and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents and the Carve-Out shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor DIP Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in

any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP Secured Parties, the Prepetition Agents and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated (and in the case of rights and remedies of the Prepetition BrandCo Agent, the Prepetition 2016 Term Loan Agent and Prepetition Secured Parties, shall remain in full force and effect thereafter, subject to the terms of this Final Order, until the Adequate Protection Obligations are indefeasibly paid in full in cash), and the Carve-Out shall continue in full force and effect.

27.    *SISO Buy-Out Option*. The Prepetition SISO ABL Agent is deemed to waive its right to exercise the buy-out option (the "**SISO Buy-Out Option**") pursuant to Section 10 of the Amended and Restated Agreement among Lenders, dated as of March 31, 2022, among each lender executing such agreement and MidCap Funding IV Trust, as administrative agent under the Prepetition ABL Credit Agreement, which shall remain in full force and effect and continue to govern the relative priorities, rights and remedies of the ABL DIP Lenders under the ABL DIP Facility and the Prepetition ABL Secured Parties under the Prepetition ABL Credit Agreement.

28.    *Payment of Fees and Expenses*. The Jefferies Engagement Letter and the Administrative Agent Fee Letters were, by the Interim Order, and hereby are approved, and the Debtor DIP Loan Parties were, by the Interim Order, and hereby are authorized to and shall pay the DIP Fees and Expenses, the BrandCo Fees and Expenses and the 2016 Term Loan Fees and Expenses,  in each case to the extent reasonable and as provided for in this Final Order and the

other DIP Documents.  The Debtor DIP Loan Parties are hereby authorized to and shall pay the

Prepetition FILO ABL Agent Fees and Expenses in an amount not to exceed $150,000, subject

only to documentation.  Subject to the review procedures set forth in this paragraph 28, payment

of all DIP Fees and Expenses, BrandCo Fees and Expenses, 2016 Term Loan Fees and Expenses

and Prepetition FILO ABL Agent Fees and Expenses shall not be subject to allowance or review

by the Court.  Professionals for the DIP Secured Parties and the Prepetition Secured Parties entitled

to payment under this Final Order shall not be required to comply with the U.S. Trustee fee

guidelines, however any time that any such professional seeks payment of fees and expenses from

the Debtor DIP Loan Parties after the Initial Draw and prior to confirmation of a chapter 11 plan,

such professional shall provide summary copies of its invoices including aggregate amounts of

fees and expenses and total amount of time (which shall not be required to contain individual time

entries and which may be redacted, summarized or modified to the extent necessary to delete any

information subject to the attorney-client privilege, any information constituting attorney work

product, or any other confidential information, and the provision of their invoices shall not

constitute any waiver of the attorney-client privilege or of any benefits of the attorney work

product doctrine) to the Debtor DIP Loan Parties, the U.S. Trustee (provided that such invoices

submitted to the U.S. Trustee shall be unredacted), and counsel to the Creditors' Committee

(together, the "**Review Parties**"). In no event shall any invoice or other statement submitted by or

on behalf of any professional for a DIP Secured Party or a Prepetition Secured Party to any Debtor,

the Creditors' Committee, the U.S. Trustee or any other interested person (or any of their respective

professionals) in accordance with the foregoing operate to waive the attorney/client privilege, the

work-product doctrine or any other evidentiary privilege or protection recognized under applicable

law. Any objections raised by any Review Party with respect to such invoices must be in writing

88

and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after the receipt by the Review Parties (the "**Review Period**"). If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Debtor DIP Loan Parties shall pay such invoices within five (5) calendar days thereafter. If an objection to a professional's invoice is received within the Review Period, the Debtor DIP Loan Parties shall promptly pay the undisputed amount of the invoice, without the necessity of filing formal fee applications, regardless of whether such amounts arose or were incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtor DIP Loan Parties are authorized and directed to pay on the Closing Date (as defined in the DIP Credit Agreements) the DIP Fees and Expenses, the BrandCo Fees and Expenses and the 2016 Term Loan Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the DIP Secured Parties or the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtor DIP Loan Parties). No attorney or advisor to any DIP Secured Party or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the (i) DIP Secured Parties in connection with or with respect to the DIP Facility and (ii) Prepetition Secured Parties in connection with or with respect to these matters, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtor DIP Loan Parties or any other person.

29.    *Effect of Stipulations on Third Parties*.

(a)      The Debtors' stipulations, admissions, agreements and releases contained in paragraph G of this Final Order shall be binding upon the Debtors and any successor thereto in all circumstances and for all purposes, including with respect to any Prepetition LIFO ABL Obligations or Prepetition SISO ABL Obligations to the extent such obligations are recharacterized or not rolled-up into DIP Obligations. The Debtors' stipulations, admissions, agreements and releases contained in contained in paragraph G of this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (i) any party in interest, including the Creditors' Committee, with requisite standing (in each case, subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than ninety (90) days after entry of the Final Order; *provided* that, if, prior to such date, a party in interest, including the Creditors' Committee, files a motion seeking standing and authority to commence litigation as a representative of any of the estates of the OpCo Debtors and attaching to such motion a proposed complaint identifying and describing all claims and causes of action on behalf of such estates for which such party in interest is seeking standing, and such motion is granted by the Court, such party in interest shall have until the later of ninety (90) days after entry of the Final Order and three (3) business days from the entry of the order granting such standing motion to commence the litigation in respect of the claims and causes of action described in the proposed complaint for which the Court granted such party in interest standing (it being understood that all parties agree

90

to an expedited hearing on the standing motion subject to the availability of the Court); *provided*, *further*, that the deadline set forth in the foregoing clauses may be extended to any such later date as has been agreed to in writing, in each case, without further order of this Court, by (A) with respect to Challenges to or against the Prepetition ABL Credit Facility, the Prepetition ABL Credit Facility Debt, the Prepetition ABL Liens or the Prepetition ABL Secured Parties, the Prepetition ABL Agents (acting with the direction of the applicable required parties pursuant to the applicable Prepetition ABL Loan Documents) and the ABL DIP Agent (acting with the direction of the Required ABL DIP Lenders), (B) with respect to Challenges to or against the Prepetition BrandCo Credit Facilities, the Prepetition BrandCo Credit Facility Debt, the Prepetition BrandCo Liens or the Prepetition BrandCo Secured Parties, the Prepetition BrandCo Agent (acting at the direction of the Required Lenders (as defined in the Prepetition BrandCo Credit Agreement)) and (C) with respect to Challenges to the Prepetition 2016 Term Loan Liens, the Prepetition 2016 Term Loan Agent in consultation with the Ad Hoc Group of 2016 Term Loan Lenders, or as ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses, the "**Challenge Period**"), (x) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition ABL Credit Facility Debt, Prepetition BrandCo Credit Facility Debt, Prepetition ABL Liens or the Prepetition BrandCo Liens, or the validity, perfection or enforceability of the Prepetition 2016 Term Loan Liens, or (y) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Challenges**") against the Prepetition ABL Secured Parties or the Prepetition BrandCo Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys,

accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such and not in any other capacity (each, a "**Representative**" and, collectively, "**Representatives**") in connection with matters related to the Prepetition BrandCo Loan Documents, the Prepetition ABL Loan Documents, the Prepetition BrandCo Credit Facility Debt, the Prepetition ABL Credit Facility, the Prepetition BrandCo Liens, the Prepetition ABL Liens, the Prepetition 2016 Term Loan Liens, the Prepetition BrandCo Collateral or the Prepetition Shared Collateral; and (ii) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge (including, with respect to any Challenge seeking avoidance of any transfer or incurrence, ordering recovery in respect of such avoidance) in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any challenges or claims that are not specifically included in a complaint or motion filed in connection with a Challenge prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff or movant, as applicable, in any such proceeding then: (1) the Debtors' stipulations, admissions, agreements and releases contained in paragraph G of this Final Order shall be binding on all parties in interest; (2) the obligations of the Debtors under the Prepetition ABL Loan Documents and Prepetition BrandCo Loan Documents, including the Prepetition ABL Credit Facility Debt and the Prepetition BrandCo Credit Facility Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, recoupment, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (3) the Prepetition BrandCo Liens on the Prepetition Collateral and the Prepetition ABL Liens and the Prepetition 2016 Term Loan Liens (to the extent such Prepetition 2016 Term Loan Liens secure allowed claims that have not

been recharacterized, subordinated, avoided or otherwise disallowed) on the Prepetition Shared

Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected,

security interests and liens, not subject to recharacterization, subordination, avoidance or other

defense; and (4) the Prepetition BrandCo Credit Facility Debt, the Prepetition BrandCo Liens on

the Prepetition Collateral, the Prepetition ABL Credit Facility Debt and the Prepetition ABL Liens

and the Prepetition 2016 Term Loan Liens (to the extent such Prepetition 2016 Term Loan Liens

secure allowed claims that have not been recharacterized, subordinated, avoided or otherwise

disallowed) on the Prepetition Shared Collateral shall not be subject to any other or further claim

or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11

Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates,

including, without limitation, any successor thereto (including, without limitation, any chapter 7

trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), and any

defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory

committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to

act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including,

without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for

any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the

Prepetition ABL Secured Parties or Prepetition BrandCo Secured Parties or their respective

Representatives arising out of or relating to any of the Prepetition ABL Loan Documents, the

Prepetition BrandCo Loan Documents, the Prepetition ABL Credit Facility Debt, the Prepetition

BrandCo Credit Facility Debt, the Prepetition ABL Liens, the Prepetition BrandCo Liens, the

Prepetition Shared Collateral or the Prepetition BrandCo Collateral, as applicable, shall be deemed

forever waived, released and barred. If any such Challenge is timely filed during the Challenge

Period by the Creditors' Committee, any other statutory or nonstatutory committee appointed or

formed in the Chapter 11 Cases or any other person or entity with requisite standing, the

stipulations, admissions, agreements and releases contained in paragraph G of this Final Order

shall nonetheless remain binding and preclusive (as provided in the foregoing provisions of this

paragraph) on each other statutory or nonstatutory committee appointed or formed in the Chapter

11 Cases and on any other person or entity, except to the extent that such stipulations, admissions,

agreements and releases were expressly challenged in such Challenge and such Challenge was

upheld as to such stipulations, admissions, agreements and releases as set forth in a final, non-

appealable order of a court of competent jurisdiction.

      (b)    For the avoidance of doubt, neither the approval of the DIP Facilities nor

entry of this Final Order (including anything contained therein) is intended to or shall:

      (i)    vest or confer on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition BrandCo Loan Documents, the Prepetition ABL Loan Documents, the Prepetition BrandCo Credit Facility Debt, the Prepetition ABL Credit Facility Debt, the Prepetition BrandCo Liens, the Prepetition 2016 Term Loan Liens, the Prepetition ABL Liens, the Prepetition BrandCo Collateral or the Prepetition Shared Collateral;

      (ii)    prohibit any of the Debtors from commencing, initiating, participating in or being a party to any litigation, adversary proceeding or other contested matter, including pursuant to section 506 of the Bankruptcy Code that is consistent with the DIP Documents, including the Debtors' stipulations, admissions, agreements and releases contained in this Final Order;

      (iii)    be construed or deemed to be an admission as to the amount, basis for, priority or validity of any claim against any Debtor held by any Prepetition 2016 Term Loan Secured Party or any obligation owed by any Debtor to any Prepetition 2016 Term Loan Secured Party under any Prepetition 2016 Term Loan

94

Document, the Bankruptcy Code or other applicable nonbankruptcy law;

(iv)    prejudice, limit, impact or otherwise impair any claim, cause of action, defense, counterclaim, offset, crossclaim or other right (including any argument, assertion or possible remedy in respect of any of the foregoing) of any Debtor, the Creditors' Committee or other party in interest (A) against any Prepetition 2016 Term Loan Secured Party under the Bankruptcy Code or any other applicable law, including any right to dispute any claim against or obligation owed by any Debtor asserted by any Prepetition 2016 Term Loan Secured Party; *provided* that, for the avoidance of doubt, the foregoing reservation shall not apply with respect to the validity, perfection or priority of the Prepetition 2016 Term Loan Liens (to the extent such Prepetition 2016 Term Loan Liens secure allowed claims that have not been recharacterized, subordinated, avoided or otherwise disallowed), which is governed by, and any Challenge must brought in accordance with, paragraph 29(a); or (B) in opposition to any claim or lien asserted by Citibank against the Debtors' estates in respect of the amounts Citibank alleges were wrongfully paid to certain of the Prepetition 2016 Term Loan Lenders and which are the subject of the appeal currently pending in the Second Circuit Court of Appeals captioned *Citibank, N.A. v. Brigade Capital Management, LP*, No. 21-487-cv (the "**Citibank Appeal**"); *provided* that, in each case of clauses (A) and (B) above, all rights, remedies, privileges, defenses, objections, claims, causes of action, offset, crossclaims and counterclaims of Citibank, whether in its capacity as administrative or collateral agent under the Prepetition 2016 Term Loan Facility or in any other capacity, in either case, on behalf of itself and not any other Prepetition 2016 Term Loan Secured Party, are reserved in connection with, and with respect to, any claim, cause of action, defense, counterclaim, offset, crossclaim or other right asserted against Citibank, and nothing contained in this Final Order shall, or shall be deemed to constitute, a release or waiver thereof by Citibank or prejudice, limit, impact or otherwise impair such rights, remedies, privileges, defenses, objections, claims, causes of action, offset, crossclaims and counterclaims of Citibank (including any argument, assertion or possible remedy in respect of any of the foregoing);

(v)    prejudice, limit, impact or otherwise impair any claim, cause of action, defense, counterclaim, offset, crossclaim or other right (including any argument, assertion or possible remedy in respect of any of the foregoing) of any Debtor, the Creditors' Committee or other party in interest regarding (A)  the value of any Debtor,

including the value of any assets of such Debtor, or the appropriate allocation of such value for purposes of distribution to creditors of such Debtor, whether through a plan of reorganization, plan of liquidation, distribution of sale proceeds or any other manner for distributing value of such Debtor's estate to creditors in such Debtor's Chapter 11 Case or (B) the allocation of the economic burden of repayment of the DIP Obligations and/or payment of Adequate Protection Obligations provided pursuant to this Final Order among the Debtors pursuant to subrogation, reimbursement, contribution rights or other similar appropriate claims or remedies of the Debtors (if such other appropriate claim or remedy is not expressly waived in this Final Order) available under applicable law;

(vi)      prejudice, limit, impact or otherwise impair any claim, counterclaim, offset, crossclaim or cause of action, whether arising under law or in equity, of any non-Debtor Person, to the extent such claim, counterclaim, offset, crossclaim or cause of action is personal to such non-Debtor Person and could not be asserted by the Debtors or any other Person acting or seeking to act on behalf of the Debtors' estates, and is not a claim, counterclaim, offset, crossclaim or cause of action of the Debtors or their estates or otherwise capable of being released by the Debtors or their estates (claims, counterclaims, offset, crossclaims and causes of action described in this clause (vi), collectively, the "**Third-Party Claims**"), and any available remedies associated with such Third-Party Claims;

(vii)     modify or affect the Automatic Stay to permit any person or entity, including any person or entity acting or seeking to act on behalf of any Debtor's estate, to assert any Challenge or seek recovery in respect thereof, including to assert any Challenge against, or recovery in respect thereof from, any Debtor;

(viii)    preclude a final, non-appealable order in favor of any plaintiff or movant sustaining one or more Challenges from resulting in the avoidance, disallowance, recharacterization, subordination, recovery or invalidation of one or more prepetition claims, agreements, liens or transfers of assets that are the subject of the stipulations, admissions, agreements and releases contained in paragraph G of this Final Order; or

(ix)      impair the Court's authority to modify any provision of this Final Order to the extent (A) (I) such provision relates to the Intercompany DIP Facility, the BrandCo License Agreements or the Adequate Protection Obligations and is premised upon the validity or priority of a prepetition claim or lien, the validity of

96

a prepetition agreement or the inclusion of any asset in any specific Debtor's estate and (II) pursuant to a successful Challenge, such prepetition claim is disallowed, such lien is avoided, such priority is altered, such prepetition agreement is invalidated or such asset is determined to be property of another Debtor's estate or (B) (I) such provision relates to the relative rights of the Prepetition BrandCo Secured Parties and the Prepetition 2016 Term Loan Secured Parties under this Final Order and is premised upon the validity of the Prepetition Pari Passu Term Loan Intercreditor Agreement and (II) pursuant to a successful Challenge, the Prepetition Pari Passu Term Loan Intercreditor Agreement is invalidated; *provided* that, for the avoidance of doubt, this Final Order shall be final with respect to all other provisions, including, without limitation, any provisions related to the Term DIP Facility and the ABL DIP Facility, except that, in the event of a successful Challenge in respect of the Prepetition ABL Credit Facility Debt, the Court may unwind the roll-up thereof into the ABL DIP Facility pursuant to the Interim Order and/or order such other and further relief as it deems warranted under the circumstances.

Notwithstanding anything else in this paragraph 29(b) or otherwise in this Final Order, (x) any party in interest shall be bound by the stipulations set forth in paragraph G (unless, solely with respect to any party in interest other than a Debtor and solely to the extent that, any such stipulation is the subject of a successful Challenge brought in accordance with paragraph 29(a)), (y) this paragraph shall not extend or otherwise delay any Challenge Period and (z) the stipulations, admissions and releases in favor of the Prepetition Secured Parties under this Final Order are applicable to such Prepetition Secured Parties solely in their respective capacities as such and not in any other capacity.

30.    *Limitation on Use of DIP Financing Proceeds and Collateral*. Notwithstanding any other provision of the Interim Order, this Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, (a) in connection with the investigation, threatened

97

initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, the Prepetition BrandCo Secured Parties, the Prepetition ABL Secured Parties, any member of the Ad Hoc Group of BrandCo Lenders or, with respect to each of the foregoing, their respective Representatives, in each case in their respective capacity as such, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition BrandCo Credit Facility Debt, the Prepetition ABL Credit Facility Debt and/or the Adequate Protection Obligations and Adequate Protection Liens granted to the Prepetition Secured Parties and Prepetition ABL Secured Parties, as applicable, (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition BrandCo Credit Facility Debt, or the Prepetition ABL Credit Facility Debt and/or the liens, claims, rights, or security interests under the Interim Order, this Final Order, the other DIP Documents, the Prepetition BrandCo Loan Documents or the Prepetition ABL Loan Documents securing or supporting or otherwise in respect of DIP Obligations, the Prepetition BrandCo Credit Facility Debt or the Prepetition ABL Credit Facility Debt, including, without limitation, any obligations arising from or related to the Applicable Premium (as defined in the Prepetition BrandCo Credit Agreement), and, in the case of each of (i) and (ii), including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, or (iii) challenging the validity, perfection or priority of the Prepetition 2016 Term Loan Liens (to the extent such Prepetition 2016 Term Loan Liens secure allowed claims that have not been recharacterized, subordinated, avoided or otherwise disallowed) (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and/or DIP Collateral (including Cash Collateral) (other than any DIP Collateral held by the

BrandCo Entities) may be used by the Creditors' Committee to investigate (but not to prosecute
or initiate the prosecution of, including the preparation of any complaint or motion on account of)
(A) the claims and liens of the Prepetition BrandCo Secured Parties or the Prepetition ABL
Secured Parties or the Prepetition 2016 Term Loan Liens and (B) potential claims, counterclaims,
causes of action or defenses of the OpCo Debtors against the Prepetition BrandCo Secured Parties
or the Prepetition ABL Secured Parties (together, the "**Investigation**"), up to an aggregate cap of
no more than $350,000 (the "**Investigation Budget**")), (b) to prevent, hinder, or otherwise delay
or interfere with the Prepetition BrandCo Agent's, the Prepetition LIFO ABL Agent's, the
Prepetition BrandCo Secured Parties', the Prepetition ABL Secured Parties', the DIP Agents', or
the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition BrandCo
Credit Facility Debt, the Prepetition ABL Credit Facility Debt, the Prepetition BrandCo Collateral,
the Prepetition Shared Collateral, the DIP Obligations, DIP Collateral, and the liens, claims and
rights granted to such parties under the Interim Order or this Final Order, as applicable, each in
accordance with the DIP Documents, the Prepetition BrandCo Loan Documents, the Prepetition
ABL Loan Documents, the Interim Order or this Final Order; (c) to seek to modify without the
requisite consents any of the rights and remedies granted to the Prepetition BrandCo Agent, the
Prepetition LIFO ABL Agent, the Prepetition BrandCo Secured Parties, the Prepetition ABL
Secured Parties, the DIP Agents, or the DIP Secured Parties under the Interim Order, this Final
Order, the Prepetition BrandCo Loan Documents, the Prepetition ABL Loan Documents or the
DIP Documents, as applicable; (d) to apply to the Court for authority to approve superpriority
claims or grant liens (other than as permitted pursuant to the DIP Documents) or security interests
in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP
Superpriority Claims, Adequate Protection Liens and 507(b) Claims granted to the Prepetition

ABL Secured Parties or the Prepetition BrandCo Secured Parties (in each case, except as permitted by the DIP Documents); or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Required DIP Lenders, expressly permitted under this Final Order or permitted under the DIP Documents (including the Approved Budget, subject to permitted variances), in each case unless all DIP Obligations, Prepetition BrandCo Credit Facility Debt, Prepetition ABL Credit Facility Debt, Adequate Protection Obligations and claims granted to the DIP Agents, DIP Secured Parties, Prepetition Agents and Prepetition Secured Parties under, the Interim Order or this Final Order have been paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the Required DIP Lenders. For the avoidance of doubt, this paragraph 30 shall not (A) limit any right of the Debtors or the Creditors' Committee to contest, or the Debtors' right to use DIP Collateral, including Cash Collateral, to contest, whether an Event of Default has occurred hereunder or to take any other action permitted pursuant to paragraph 7(e) of this Final Order consistent with the terms thereof; (B) apply to the Creditors' Committee's prosecution of an objection (inclusive of related discovery, diligence, discussions and negotiations) to confirmation of any proposed chapter 11 plan; or (C) be deemed to (I) limit the ability of the Creditors' Committee's professionals to seek approval from the Court to be paid from unencumbered assets, if any, for services rendered in connection with a Challenge, an Investigation or any other matter as to which the use of DIP Loans, DIP Collateral, Prepetition Collateral and the Carve-Out is limited or prohibited under this paragraph 30; (II) preclude the Court from awarding fees and expenses to the Creditors' Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; or (III) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of

any plan, in each case it being understood and agreed that the DIP Lenders', Debtors' and any other party in interest's right to object to any such administrative claim that may be asserted are fully preserved.

31.     *Final Order Governs.* In the event of any inconsistency between the provisions of this Final Order and the other DIP Documents (including, but not limited to, with respect to the Adequate Protection Obligations) or any other order entered by this Court, the provisions of this Final Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made or actions taken by the Debtors pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the other DIP Documents, including, without limitation, the Approved Budget (subject to permitted variances).

32.     *Interim Order.* Except as specifically amended or otherwise modified hereby, all of the provisions of the Interim Order and any actions taken by the Debtors, the DIP Secured Parties or the Prepetition Secured Parties in accordance therewith shall remain in effect and are hereby ratified by this Final Order.

33.     *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agents, the DIP Secured Parties, the Prepetition BrandCo Agent, the Prepetition 2016 Term Loan Agent, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal

101

representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Secured Parties, the Prepetition BrandCo Agent, the Prepetition 2016 Term Loan Agent, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agents, the DIP Secured Parties, the Prepetition BrandCo Agent, the Prepetition 2016 Term Loan Agent and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

34.     *Exculpation*. Nothing in this Final Order, the other DIP Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party, or any Prepetition Secured Party that did not file any objection to entry of this Final Order, of any liability for any claims arising from the prepetition (subject to paragraph 29) or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The DIP Secured Parties and the Prepetition Secured Parties that did not file any objection to entry of this Final Order shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

35.     *Limitation of Liability*. In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral

(including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the other DIP Documents or Prepetition Loan Documents, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in the Interim Order or this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Agents, DIP Secured Parties, the Prepetition BrandCo Agent, the Prepetition 2016 Term Loan Agent or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

36.    *Master Proofs of Claim*. The Prepetition BrandCo Agent, the Prepetition BrandCo Secured Parties, the Prepetition ABL Agents and/or any other Prepetition BrandCo Secured Parties or Prepetition ABL Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to assert claims on behalf of themselves or the Prepetition Secured Parties for payment of the Prepetition BrandCo Credit Facility Debt or the Prepetition ABL Credit Facility Debt arising under the Prepetition Loan Documents, as applicable, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Loan Documents. The statements of claim in respect of such indebtedness set forth in this Final Order, together with any evidence accompanying the DIP Motion and presented at the

Interim Hearings and the Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Agents are authorized, but not directed or required, to file in the Debtors' lead Chapter 11 Case, *In re Revlon, Inc.*, Case No. 22-10760 (DSJ), a master proof of claim on behalf of their respective Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Loan Documents and hereunder (each, a "**Master Proof of Claim**") against each of the Debtors that are obligors under their respective Prepetition Loan Documents. Upon the filing of a Master Proof of Claim by a Prepetition Agent, it shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of such Debtors of any type or nature whatsoever with respect to the applicable Prepetition Loan Documents, and the claim of each applicable Prepetition Secured Party (and each of its respective successors and assigns) named in a Master Proof of Claim shall be treated as if it had filed a separate proof of claim in each of such Debtor's Chapter 11 Case. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among the holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 36 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in the applicable Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the applicable Debtors to the applicable Prepetition

104

Secured Parties so long as such instruments, agreements or other documents are reasonably described in such Master Proof of Claim and are provided by the applicable Prepetition Agent upon written request thereto. The DIP Agents and the DIP Secured Parties shall similarly not be required to file proofs of claim with respect to their DIP Obligations under the DIP Documents, and the evidence presented with the DIP Motion and the record established at the Interim Hearings and the Final Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, secured status, and priority.

37.    *Insurance*. To the extent that the Prepetition BrandCo Agent, the Prepetition LIFO ABL Agent or the Prepetition SISO ABL Agent is listed as loss payee under the Borrower's or any Debtor DIP Guarantor's insurance policies, each applicable DIP Agent (on behalf of the applicable DIP Lenders) is also deemed to be the loss payee under the insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies, to the indefeasible payment in full of the applicable DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitments, and to the payment of the applicable Prepetition BrandCo Credit Facility Debt and the Prepetition ABL Credit Facility Debt, as applicable, in each case subject to the Prepetition ABL Intercreditor Agreement.

38.    *Credit Bidding*. (a) Each DIP Agent shall have the right to credit bid, in accordance with the applicable DIP Documents, up to the full amount of the applicable DIP Obligations in any sale of the applicable DIP Collateral outside the ordinary course of business and (b) subject to paragraph 29 and section 363(e) of the Bankruptcy Code, each of the Prepetition BrandCo Secured Parties and the Prepetition LIFO ABL Agent shall have the right, subject to the provisions of the Prepetition BrandCo Loan Documents or the Prepetition ABL Loan Documents, as applicable,

including, as applicable, the Prepetition Intercreditor Agreements (and providing for the DIP

Obligations, to the extent secured by the subject Prepetition Collateral, to be indefeasibly repaid

in full in cash and the termination of the applicable DIP Commitments, unless otherwise agreed

by the applicable Required DIP Lenders), to credit bid up to the full amount of the Prepetition

BrandCo Credit Facility Debt or the Prepetition ABL Credit Facility Debt, as applicable, in any

sale of the Prepetition BrandCo Collateral or the Prepetition Shared Collateral, as applicable, in

each case outside the ordinary course of business, without the need for further Court order

authorizing the same and whether any such sale is effectuated through section 363(k), 1123 or

1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code,

or otherwise; *provided* that (x) no Prepetition BrandCo Credit Facility Debt or Term DIP

Obligations may be credit bid in any disposition of any Prepetition ABL Priority Collateral unless

such sale provides for indefeasible payment in full in cash to the ABL DIP Agent and the ABL

DIP Lenders of all ABL DIP Obligations and (y) no Prepetition ABL Credit Facility Debt or ABL

DIP Obligations may be credit bid in any disposition of any Prepetition Shared Term Priority

Collateral unless such sale provides for indefeasible payment in full in cash to the Term DIP Agent

and the Term DIP Lenders of all Term DIP Obligations and, for the avoidance of doubt, no

Prepetition ABL Credit Facility Debt or ABL DIP Obligations may be credit bid in any disposition

of any Prepetition BrandCo Collateral.

39.    *Certain Provisions Relating to the BrandCo License Agreements*.

(a)    The rejection or termination of, or default under, the BrandCo License

Agreements, without the consent or waiver of the Required DIP Lenders, shall constitute an Event

of Default.

106

(b)      Each of the BrandCos expressly agrees, in the case of Intellectual Property that is the subject of the BrandCo License Agreements, that the ABL DIP Credit Agreement shall constitute a "Group Credit Agreement" under each BrandCo License Agreement. In furtherance and not in limitation of the foregoing, the Debtor ABL DIP Loan Parties and each of the BrandCos hereby agree and acknowledge that, notwithstanding any termination of the applicable BrandCo License Agreements, including pursuant to Section 13.1 or the terms of Sections 13.4 and 13.5 thereof, the license granted under section 6.4(a) of the ABL DIP Guarantee and Collateral Agreement (as defined in the ABL DIP Credit Agreement) constitutes a non-exclusive, irrevocable, royalty-free license to the ABL DIP Agent to the Licensed IP (as defined in the applicable BrandCo License Agreements), solely for the purpose of enabling (subject to the other provisions of this Final Order) the ABL DIP Agent to exercise its rights and remedies under the ABL DIP Guarantee and Collateral Agreement at such time as the ABL DIP Agent shall be lawfully entitled to exercise such rights and remedies, and for no other purpose, with respect to the DIP Collateral constituting Prepetition ABL Priority Collateral or OpCo Unencumbered ABL Priority Property which rights and remedies shall include the right of the ABL DIP Agent to conduct an orderly liquidation of such DIP Collateral subject to the terms of the ABL DIP Documents, and that such license is made in accordance with, and subject to the terms and conditions of, the applicable BrandCo License Agreement (including the last sentence of Section 2.1 of the relevant BrandCo License Agreement) and survives any such termination, but is exercisable solely during the occurrence of an Event of Default. For the avoidance of doubt, except as expressly set forth above, nothing in the ABL DIP Documents, including the ABL DIP Guarantee and Collateral Agreement, shall amend, modify or waive any provision of the BrandCo License Agreements.

40.    *Effectiveness*. This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

41.    *Modification of DIP Documents and Approved Budget*. The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties (or the Prepetition BrandCo Secured Parties after the indefeasible payment in full of the Term DIP Obligations and termination of the Term DIP Commitments) providing for any consensual non-material amendments, modifications, waivers or supplements to the DIP Documents, or of any other amendments, modifications, waivers or supplements to the DIP Documents necessary to conform the terms of the DIP Documents to this Final Order, in each case consistent with the amendment provisions of the DIP Documents; *provided*, *however*, that notice of any material amendment, modification, waivers or supplement to the DIP Documents shall be provided to the DIP Notice Parties, which shall have five (5) days from the date of such notice within which to object, in writing, to the amendment, modification, waiver or supplement. If any such party timely objects to any such material amendment, modification, waivers or supplement to the DIP Documents, the material amendment, modification, waiver or supplement shall only be permitted pursuant to an order of the Court. The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material amendment, modification, waivers or supplement on an expedited basis. For the avoidance of doubt, any amendment, modification,

waiver, or supplement to the Prepetition ABL Credit Agreement or ABL DIP Documents that impacts the calculation of the Tranche A Borrowing Base, the Tranche A Revolving Borrowing Base, or the Tranche B Borrowing Base (as such terms are defined in the relevant ABL DIP Documents or Prepetition ABL Loan Documents, as applicable), including but not limited to any waiver or modification of the Availability Reserve or Push Down Reserve (as such terms are defined in the relevant ABL DIP Documents or Prepetition ABL Loan Documents, as applicable) or any other reserve or carve out, in each case that would have the effect of increasing the applicable Tranche A Borrowing Base, decreasing the Tranche B Borrowing Base (as such terms are defined in the relevant ABL DIP Documents or Prepetition ABL Loan Documents, as applicable) or permitting additional extensions of credit under the ABL DIP Facility or Prepetition ABL Credit Agreement, shall be deemed a material amendment, modification, waiver or supplement, as applicable, for purposes of this paragraph 41. The rights of the Debtors, the Prepetition FILO ABL Agent, and all other parties in interest are reserved with respect to any such amendment, modification, waiver or supplement, including the rights and defenses (if any, and subject to applicable provisions of the Bankruptcy Code and applicable contractual obligations) to oppose such amendment, modification, waiver or supplement, to demand additional adequate protection or to enforce the terms of the Prepetition ABL Loan Documents.

42.    *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

43.    *Payments Held in Trust*. Except as expressly permitted in this Final Order or the other DIP Documents, and subject to the Carve-Out and except with respect to the Debtor DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives

any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agents and the DIP Secured Parties and shall immediately turn over the proceeds to the DIP Agents, or as otherwise instructed by this Court, for application in accordance with this Final Order and the other DIP Documents.

44.     *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

45.     *Chubb Reservation of Rights*. For the avoidance of doubt, nothing in this Final Order and any document related thereto, including the DIP Documents, except for paragraph 37 of this Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by ACE American Insurance Company and Federal Insurance Company and each of their affiliates and successors to the Debtors.

46.     *No Third Party Rights*. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

47.     *Necessary Action*. The Debtors, the DIP Secured Parties and the Prepetition Secured Parties are authorized to take all actions as are necessary or appropriate to implement the terms of this Final Order. In addition, the Automatic Stay is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 cases to take all actions as are necessary or appropriate to implement the terms of this Final Order.

48.     *Retention of Jurisdiction*. The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and

consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the

terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.


Dated: New York, New York
        August 2, 2022

                                    _s/ David S. Jones_____
                                    HONORABLE DAVID S. JONES
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Lien Priorities[13]**

| Priority | Prepetition Shared Term Priority Collateral | Prepetition ABL Priority Collateral | ABL Priority DIP Collateral (other than Prepetition Collateral) | Term Priority DIP Collateral (other than Prepetition Collateral) held by OpCo Debtors | Prepetition BrandCo Collateral held by Debtor Intercompany DIP Loan Parties | Prepetition BrandCo Collateral held by Intercompany DIP Secured Parties | BrandCo DIP Collateral (other than Prepetition BrandCo Collateral) |
|---|---|---|---|---|---|---|---|
| 1st | A | C | C | A | A | A | A |
| 2nd | B | D | D | B | B | F-1 | F-1 |
| 3rd | E-1 \| E-2 \| E-3 \| E-4 | G | G | E-1 \| E-2 \| E-3 \| E-4 | F-1 | H-1 | F-2 |
| 4th | I-1 \| I-2 \| I-3 \| J | K | A | C | H-1 | F-2 | F-3 |
| 5th | C | A | B | D | F-2 | H-2 | – |
| 6th | D | B | E-1 \| E-2 \| E-3 \| E-4 | G | H-2 | F-3 | – |
| 7th | G | E-1 \| E-2 \| E-3 \| E-4 | - | - | F-3 | H-3 | – |
| 8th | K | I-1 \| I-2 \| I-3 \| J | - | - | H-3 | – | – |

| | | | | |
|---|---|---|---|---|
| A | Term DIP Liens | | H-1 | Prepetition BrandCo Liens on Prepetition BrandCo Collateral securing Term B-1 Loans |
| B | Intercompany DIP Liens | | H-2 | Prepetition BrandCo Liens on Prepetition BrandCo Collateral securing Term B-2 Loans |
| C | LIFO ABL DIP Liens | | H-3 | Prepetition BrandCo Liens on Prepetition BrandCo Collateral securing Term B-3 Loans |
| D | SISO ABL DIP Liens | | I-1 | Prepetition BrandCo Liens on Prepetition Shared Collateral securing Term B-1 Loans |
| E-1 | Shared Term Collateral AP Liens securing Term B-1 Loans | | I-2 | Prepetition BrandCo Liens on Prepetition Shared Collateral securing Term B-2 Loans |
| E-2 | Shared Term Collateral AP Liens securing Term B-2 Loans | | I-3 | Prepetition BrandCo Liens on Prepetition Shared Collateral securing Term B-3 Loans |
| E-3 | Shared Term Collateral AP Liens securing Term B-3 Loans | | J | Prepetition 2016 Term Loan Liens |
| E-4 | Shared Term Collateral AP Liens securing 2016 Term Loans | | K | Prepetition ABL Liens securing Prepetition FILO ABL Obligations |
| F-1 | BrandCo Collateral AP Liens securing Term B-1 Loans | | | |
| F-2 | BrandCo Collateral AP Liens securing Term B-2 Loans | | | |
| F-3 | BrandCo Collateral AP Liens securing Term B-3 Loans | | | |
| G | FILO ABL AP Liens | | | |

---

[13] The DIP Liens and Adequate Protection Liens shall be junior and subordinate to any Non-Primed Excepted Liens.