**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone.: (212) 450-4000
Facsimile: (212) 701-5800
Elliot Moskowitz
Eli J. Vonnegut
Cristina M. Rincon
Stephanie Massman

*Counsel to the Ad Hoc Group of BrandCo*
*Lenders*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| REVLON, INC., *et al.*,[1] | Case No. 22-10760 (DSJ) |
| Debtors | (Jointly Administered) |

### AD HOC GROUP OF BRANDCO LENDERS' JOINDER IN THE DEBTORS' OBJECTION TO THE AD HOC GROUP OF NON-INSIDER REVLON, INC. SHAREHOLDERS' MOTION FOR ENTRY OF AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN OFFICIAL EQUITY COMMITTEE

---

[1] The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.kroll.com/revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

# TABLE OF AUTHORITIES

Page(s)

### CASE(S)

*In re Sunedison, Inc.*,
556 B.R. 94 (Bankr. S.D.N.Y. 2016) ................................................................................. 1, 2

*In re Williams Commc'ns Grp., Inc.*,
281 B.R. 216 (Bankr. S.D.N.Y. 2002) ............................................................................. 1, 2

### OTHER AUTHORITIES

Claire Ballentine & Jeremy Hill, Retail Army Defies Bond Logic to Drive Revlon Stock 600%
Higher, BLOOMBERG (June 23, 2022), https://www.bloomberg.com/news/articles/2022-06-
23/should-i-buy-revlon-rev-bankrupt-cosmetics-company-is-latest-meme-stock....................2

The ad hoc group of lenders under the Prepetition BrandCo Credit Agreement ("**Ad Hoc Group of BrandCo Lenders**" or "**Ad Hoc Group**"),[2] the members of which also hold over 90% of the Term DIP Facility, hereby submits this joinder to the Debtors' Objection ("**Debtors' Objection**"), to the *Motion of the Ad Hoc Group of Non-Insider Revlon, Inc. Shareholders for Entry of an Order Directing the United States Trustee to Appoint an Official Equity Committee* [ECF No. 348][3] (the "**Motion**") and states as follows:[4]

## JOINDER

1.      The appointment of an official committee of equity holders ("**Equity Committee**") is neither necessary nor appropriate in these Chapter 11 cases for all of the reasons set forth in the Debtors' Objection.  As the Debtors note, appointment of an Equity Committee in this jurisdiction is the "rare exception."  *In re SunEdison, Inc.*, 556 B.R. 94, 103 (Bankr. S.D.N.Y. 2016) (quoting *In re Williams Commc'ns Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002)).  One should not be appointed unless the proponents can demonstrate that (1) there is "a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule," and (2) "they are unable to represent their interests in the bankruptcy case without an official committee."  *Id*. (quoting *Williams*, 281 B.R. at 223).  The Ad Hoc Equity Committee's Motion falls woefully short of meeting this "onerous" and "high standard," *id.,* for at least three critical reasons:

---

[2] The Ad Hoc Group members are identified in the *Verified Statement of Davis Polk & Wardwell LLP and Kobre & Kim LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [ECF No. 43].

[3] The Ad Hoc Shareholder Group includes Christopher Mittleman, Kevin Barnes, and Adam Gui and holds approximately 376,525 shares of Revlon, Inc. common stock, comprising fewer than 2% of all outstanding shares in the company.

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them, as applicable, in the Motion or the Debtors' Objection, as defined herein.

1

2.      *First*, the Ad Hoc Equity Committee fails to show that there is a "substantial likelihood" of a "meaningful recovery" for equity holders.  The only piece of evidence it cites in support of the notion that there would be any recovery for equity is the Debtors' recent stock price.  Mot. ¶¶ 24-28.  But even putting aside that the Debtors' stock price has been subject to recent (and significant) fluctuations that appear untethered from market realities,[5] the Ad Hoc Equity Committee ignores the recent trading prices of Debtors' <u>debt</u> securities.  The Debtors have approximately $3.5 billion in funded debt obligations.  Mot. ¶ 12.  Under the absolute priority rule, these obligations would have to be satisfied in full before there could be one cent of recovery for equity.  Several issuances of the Debtors' funded debt instruments, however, have been trading well below par for months—some for as little as approximately ten cents on the dollar.  *See* Debtors' Obj. ¶ 42 (citing Decl. of Scott Mates, Ex. A).  This indicates that the markets have reached the opposite judgement than the one the Ad Hoc Equity Committee urges this Court to make.[6]  The Ad Hoc Equity Committee provides no reason why this evidence should be discounted, much less ignored.

3.      The Ad Hoc Equity Committee also asks the Court to overlook other concrete indicia of enterprise value, including the Debtors' own public filings.  For example, for the quarter ending June 30, 2022, the Debtors' Form 10-Q states that, on a consolidated basis, the

---

[5] As the Ad Hoc Equity Committee acknowledges, the stock price jumped 650% upon the Debtors' chapter 11 petitions.  Mot. ¶ 25.  The Ad Hoc Equity Committee further cites to a Bloomberg article concerning Revlon, Inc. stock titled "Retail Army Defies Bond Logic to Drive Revlon Stock 600% Higher."  *Id.* ¶ 39 n.11.  That article explains that the movement of the Revlon, Inc. share price "harkened back to the meme-stock craze," made "little sense to professional traders," and was "strangely incongruous with the broader market."   Claire Ballentine & Jeremy Hill, Retail Army Defies Bond Logic to Drive Revlon Stock 600% Higher, BLOOMBERG (June 23, 2022), https://www.bloomberg.com/news/articles/2022-06-23/should-i-buy-revlon-rev-bankrupt-cosmetics-company-is-latest-meme-stock.

[6] *See SunEdison,* 556 B.R. at 104 (stating that significant discounts on a debtor's publicly traded debt indicates insolvency); *Williams*, 281 B.R. at 220-21 (explaining that both significant discounts on a debtor's traded debt and a balance sheet deficit in the billions supported a finding that the debtor was "hopelessly insolvent").

enterprise has a shareholder deficit of nearly $2.35 billion, further evidencing that equity is very unlikely to be in the money.

4.      Finally, the Ad Hoc Equity Committee's remaining "factual" assertions, Mot. ¶¶ 29-35, rely on nothing more than rank speculation that disputed claims against the estates will—at some point in the future—be disallowed by this Court.   But this cannot suffice to satisfy the Ad Hoc Committee' significant burden.  Indeed, if it could, an official equity committee would be appointed in virtually every corporate reorganization where significant claims against the estates are disputed.  That is not the law in this jurisdiction.   For all of these reasons, the Ad Hoc Equity Committee's assertion that "[a]ll available market indications" show positive shareholder value, Mot. at 13, is simply not credible.

5.      *Second*, the Ad Hoc Equity Committee fails to demonstrate that the appointment of an official committee is "necessary" to protect their interests.  As the Debtors Objection details at length, there are no less than five highly motivated, and well-represented, constituencies in these chapter 11 cases that are already working on behalf of equity or otherwise to maximize the value of the estates, including the Debtors' Board of Directors and management, the Debtors' 85.2% controlling shareholder, MacAndrews and Forbes Inc. ("**MAFCO**"), and the Official Committee of Unsecured Creditors ("**UCC**").  Indeed, any success that MAFCO, an equity holder, has in obtaining a distribution for itself will necessarily inure to the benefit of all other equity holders, including the members of the Ad Hoc Equity Committee.

6.      The Ad Hoc Equity Committee's arguments to the contrary consist of vague and baseless allegations that these constituencies are somehow conflicted or will not fulfill their statutory mandate.  The Ad Hoc Equity Committee, for example, suggests that the Debtors' Board and management are somehow beholden to, or will exhibit "favoritism" toward, the Ad

3

Hoc Group of BrandCo Lenders given the Ad Hoc Group's position in the Debtors' capital structure and the milestones under the DIP financing.  Mot. at ¶ 43.  But these arguments were repeatedly advanced during the DIP hearing, and this Court rejected them in approving the DIP financing on a final basis.  Nor do they provide a credible basis for ignoring the fact that numerous other <u>creditor</u> constituencies are highly invested in the outcome of these cases.

7.      ***Third***, notwithstanding the Ad Hoc Equity Committee's lip service to economy of administration in these cases, the substantial costs that would be associated with appointing an official equity committee would be entirely duplicative and a waste of estate resources.  As the Debtors' Objection notes, numerous other stakeholders whose costs are being paid by the estates have already engaged reputable financial and legal counsel and are actively investigating the very transactions on which the Ad Hoc Equity Committee is focused.  The UCC, in fact, has already begun its investigation into potential estate claims, having propounded broad discovery on the Debtors and the Ad Hoc Group of BrandCo Lenders.  The Ad Hoc Committee does not identify a single issue or claim that would be unique to shareholders, nor does it explain why the estates should fund an entirely duplicative investigation already underway, particularly where it cannot demonstrate any meaningful chance of a recovery for equity.  Appointing an Equity Committee under these circumstances therefore would result in nothing more than a substantial and unwarranted transfer of value from the Debtors' creditors—who by all indication are entitled to 100% of the value of the estates—to the Equity Committee's professionals, without any corresponding benefit to the estates.

8.      For the foregoing reasons, as well as the additional reasons set forth in the Debtors' Objection, the Ad Hoc Group respectfully requests that the Court deny the Motion.

New York, New York
Dated:  August 21, 2022

/s/ Elliot Moskowitz
Elliot Moskowitz
Eli J. Vonnegut
Cristina M. Rincon
Stephanie Massman
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
elliot.moskowitz@davispolk.com
eli.vonnegut@davispolk.com
cristina.rincon@davispolk.com
stephanie.massman@davispolk.com

*Counsel to the Ad Hoc Group of BrandCo Lenders*