**LATHAM & WATKINS LLP**
Keith A. Simon
Andrew C. Ambruoso
Nacif Taousse
Jonathan J. Weichselbaum (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  keith.simon@lw.com
  andrew.ambruoso@lw.com
  nacif.taousse@lw.com
  jon.weichselbaum@lw.com

*Counsel to Citibank, N.A.*

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>REVLON, INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10760 (DSJ)<br><br>(Jointly Administered) |

**STATEMENT OF CITIBANK IN RESPONSE TO
MOTION TO APPOINT AN OFFICIAL EQUITY COMMITTEE**

Citibank, N.A. ("**Citibank**") files this statement (the "**Statement**") in response to the

*Motion of the Ad Hoc Group of Non-Insider Revlon, Inc. Shareholders for Entry of an Order*

---

[1] The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Court has granted joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

*Directing the United States Trustee to Appoint an Official Equity Committee* [Docket No. 348] (the "**Equity Committee Motion**").[2]

1.       Citibank does not believe that the appointment of an official equity committee is appropriate under the facts and circumstances of these chapter 11 cases.  In that regard, Citibank joins in the objection filed by the Debtors to the Equity Committee Motion.

2.       In addition, on August 12, 2022, Citibank initiated an adversary proceeding in these chapter 11 cases by filing a complaint against certain Debtors with this Court [Docket No. 373] (the "**Citibank Complaint**").  The Citibank Complaint seeks, among other things, a declaratory judgment confirming that Citibank is subrogated against the Debtors based on its mistaken payment of approximately $900 million, all as more fully set forth in the Citibank Complaint.  In the Equity Committee Motion, however, the ad hoc equity group argues that Citibank might not be subrogated against the Debtors because Citibank's mistaken payment was voluntary.  *See* Equity Committee Motion, ¶ 31-34.  These arguments are without merit as a matter of law for the reasons set forth in the Citibank Complaint, and Citibank reserves all rights and remedies on these matters.

3.       Finally, the Equity Committee Motion raises one theme that Citibank does agree with here:  specifically, until Citibank's subrogation rights are confirmed by this Court, neither the Debtors nor any other party-in-interest will know where value breaks in their capital structure and how to properly allocate plan recoveries to creditors and other stakeholders.  With a potential range of between $400 million and $900 million of secured claims arising from the 2016 Term Loan Agreement (the "**2016 Term Loan Claims**"), it is impossible to know whether any unencumbered value remains for unsecured creditors or other stakeholders.  And if value breaks

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Equity Committee Motion.

in the 2016 Term Loan Claims, it is critical to know the principal amount of those claims because that will greatly influence whether those claims are paid in cash or through partial takeback debt.  And if the 2016 Term Loan Claims are to be paid in reorganized equity, then the $500 million in subrogated claims could result in Citibank being one of the largest future equity holders of the reorganized Debtors, which, in turn, impacts shareholder rights, corporate governance, tax, and regulatory matters.  Moreover, until the amount of the 2016 Term Loan Claims (and whether they are secured or unsecured) is known, it is likewise impossible for any party to know whether any adequate protection liens and claims arise during these chapter 11 cases and in what amount from those claims.  If the Debtors expect to have any reasonable prospect of negotiating a consensual restructuring support agreement and chapter 11 plan by their respective milestones, the Debtors and all parties-in-interest should want to determine Citibank's subrogation rights promptly and minimize any uncertainty during the chapter 11 cases as to the amount of the 2016 Term Loan Claims (and whether they are secured or unsecured claims).  The Equity Committee Motion is, therefore, simply a preview of the numerous and inevitable "what-if" scenarios facing the Debtors until Citibank's subrogation rights are confirmed by this Court.

For the reasons set forth above, Citibank requests that this Court deny the Equity Committee Motion.  Citibank reserves all rights to supplement or otherwise adopt additional arguments in connection with this Statement and to be heard in connection with the Equity Committee Motion.

| | |
|---|---|
| Dated: August 22, 2022<br>New York, NY | */s/ Keith A. Simon*<br>Keith A. Simon<br>Andrew C. Ambruoso<br>Nacif Taousse<br>Jonathan J. Weichselbaum (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: keith.simon@lw.com<br>        andrew.ambruoso@lw.com<br>        nacif.taousse@lw.com<br>        jon.weichselbaum@lw.com<br><br>*Counsel to Citibank, N.A.* |