Hearing Date: **October 27, 2022 at 2:00 p.m., prevailing Eastern Time**
Objection Deadline: **October 24, 2022 at 4:00 p.m., prevailing Eastern Time**

Paul M. Basta
Alice Belisle Eaton
Kyle J. Kimpler
Robert A. Britton
Brian Bolin
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVLON, INC., *et al.*,[1] | ) | Case No. 22-10760 (DSJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF DEBTORS' MOTION TO EXTEND THE DEBTORS' EXCLUSIVE**
**PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**
**PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on October 12, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion to Extend the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* (the "Motion"). A hearing (the "Hearing") on the Motion will be held on **October 27, 2022, at 2:00 p.m., prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE** that in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted via Zoom videoconference. Parties wishing to appear at the Hearing, whether in a "live" or "listen only" capacity, must make an electronic appearance through the "eCourtAppearances" tab on the Court's website (https://www.nysb.uscourts.gov/content/judge-david-s-jones) no later than 4:00 p.m. on the

---

[1]    The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Court has granted joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: One New York Plaza, New York, NY 10004.

business day before the Hearing (the "Appearance Deadline"). Following the Appearance Deadline, the Court will circulate by email the Zoom link to the Hearing to those parties who have made an electronic appearance. Parties wishing to appear at the Hearing must submit an electronic appearance through the Court's website by the Appearance Deadline and not by emailing or otherwise contacting the Court. Additional information regarding the Court's Zoom and hearing procedures can be found on the Court's website.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (each an "Objection") to the relief requested in the Motion shall: (a) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; and (b) be served so as to be actually received by **October 24, 2022, at 4:00 p.m., prevailing Eastern Time** in a manner consistent with the *Revised Order (A) Establishing Certain Notice, Case Management, and Administrative Procedures and (B) Granting Related Relief* [Docket No. 279] and the procedures set forth therein as Exhibit 1 (the "Case Management Procedures"), including, but not limited to, by serving any Objection on the parties listed in paragraphs 22 and 34 of the Case Management Procedures.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the Motion to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE that _your rights may be affected_. You should read the Motion carefully and discuss it with your attorney, if you have one. If you do not have an attorney, you may wish to consult with one.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) from the Debtors' proposed notice and claims agent, Kroll, at https://cases.ra.kroll.com/revlon/ or by calling (855) 631-5341 (toll free) for U.S. and Canada-based parties or +1 (646) 795-6968 for international parties. Note that a PACER password is needed to access documents on the Court's website.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated:  October 12, 2022

/s/ Robert A. Britton

Paul M. Basta
Alice Belisle Eaton
Kyle J. Kimpler
Robert A. Britton
Brian Bolin
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
aeaton@paulweiss.com
kkimpler@paulweiss.com
rbritton@paulweiss.com
bbolin@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date:  October 27, 2022 at 2:00 p.m., prevailing Eastern Time**
**Objection Deadline:  October 24, 2022 at 4:00 p.m., prevailing Eastern Time**

Paul M. Basta
Alice Belisle Eaton
Kyle J. Kimpler
Robert A. Britton
Brian Bolin
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVLON, INC., *et al.*,[1] | ) | Case No. 22-10760 (DSJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION TO EXTEND THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (the "Debtors") respectfully state the following in support of this motion (this "Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached as **Exhibit A** (the "Proposed Order"), extending the Debtors' exclusive periods to file a chapter 11 plan and solicit acceptances thereof:

---

[1]  The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955.  Due to the large number of debtor entities in these Chapter 11 Cases, for which the Court has granted joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/Revlon.  The location of the Debtors' service address for purposes of these Chapter 11 Cases is:  One New York Plaza, New York, NY 10004.

**Introduction**

1.      The Debtors' statutory exclusive period to file a chapter 11 plan will expire on October 13, 2022.[2]  By this Motion, the Debtors request an order extending their exclusive right to file a chapter 11 plan by 125 days through and including February 15, 2023, and to solicit votes thereon by 125 days through and including April 17, 2023.  This is the Debtors' first request for an extension of the exclusivity periods.  The exclusivity period extensions requested herein are intended to allow the Debtors the time necessary to negotiate and prosecute their chapter 11 plan within the time allotted to them by the milestones set forth in their Final DIP Order.[3]

2.      The Debtors have consulted with key stakeholders in advance of filing this Motion, including the official committee of unsecured creditors (the "Committee"), the Ad Hoc Group of BrandCo Lenders, the Ad Hoc Group of 2016 Lenders, and the lenders under the DIP Financing (as defined below).  Though the constituents did not have complete agreement with the Debtors over the length of time necessary for an extension of the exclusivity periods, the Debtors believe the time requested by this Motion represents a fair compromise of the different positions of each of the key stakeholders.  For the many reasons detailed below, the Debtors require more time to develop a value-maximizing plan of reorganization for the benefit of their estates and stakeholders. The Debtors' corporate and capital structure are complex, the interests of its key stakeholders are varied, and, for the numerous reasons outlined in this Motion, affording the Debtors more time to

---

[2]     Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the Exclusivity Periods shall automatically extend the Exclusivity Periods until the Court acts on this Motion without the necessity for entry of a bridge order.

[3]     *See Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 330].

formulate and solicit a plan of reorganization will provide for the most expedient path toward resolution of these cases.

## **Background**

3.      The 51 Debtors in the instant cases (the "Chapter 11 Cases") have approximately 2,824 employees, sell their products in 120 different countries, have approximately $3.2 billion of prepetition outstanding funded debt and approximately $1 billion of postpetition debtor-in-possession financing, are party to thousands of contracts, and have tens of thousands of creditors and other parties in interest. They entered chapter 11 on an emergency basis on June 15, 2022 (the "Petition Date") with a *de minimis* amount of cash on hand to fund operations. These Chapter 11 Cases, and the operational and financial relief obtained at their outset, afforded the Debtors the breathing spell and fresh liquidity required to help them restart a frozen supply chain in time to fulfill customer orders ahead of the 2022 holiday season.

4.      In the four months since the Petition Date, the Debtors have made substantial progress toward this goal, and toward the formulation of a chapter 11 plan. But, with their plan exclusivity deadline set to expire on October 13, 2022, the Debtors are still highly focused on achieving a successful fourth quarter holiday season. In tandem, the Debtors are working to finalize their long-term business plan, which will serve as the foundation for chapter 11 plan negotiations with their stakeholders. The Debtors expect that the long-term business plan will be delivered to key constituents prior to the hearing on this Motion in order to facilitate a restructuring support agreement ("RSA") and plan negotiations ahead of the RSA and plan filing milestones on November 15, 2022, and December 14, 2022, respectively. In the meantime, the Debtors have worked, and continue to work, tirelessly to stabilize their business, preserve and create value, and

lay the foundation for a successful plan process.  Certain of these extensive efforts are detailed below.

### Postpetition Financing

5.      On the Petition Date, the Debtors' supply chain was effectively shut down due to their inability to pay vendors, imperiling the critical holiday sales period.  Over a two-day hearing at the outset of these cases, the Debtors obtained access to over $375 million of postpetition debtor-in-possession financing on an emergency interim basis.  These funds were deployed to quickly stabilize the Debtors' business, including by beginning the long, ongoing process of re-starting their supply chain through vendor negotiations.  Among other critical uses, these funds were also used to refinance the Debtors' foreign-asset-backed term loan.  This refinancing, and the negotiated forbearance that preceded it, enabled the Debtors to maintain the substantial value of their non-debtor foreign affiliates by avoiding local-law liquidation processes that may have been triggered by an event of default and acceleration of that loan.

6.      Over the course of the next month, the Debtors engaged with their stakeholders, including the Committee, to negotiate and then litigate the Final DIP Order.  Ultimately, the Debtors obtained approval of approximately $1 billion of postpetition financing on a final basis (the "DIP Financing").  Obtaining access to these funds, as well as the use of cash collateral, was critical to normalizing the Debtors' operations, avoiding deterioration in the value of the Debtors' estates, and beginning to establish a path to exit from these Chapter 11 Cases.

### Stabilizing Operations

7.      In addition to the DIP Financing, at the outset of these Chapter 11 Cases, the Debtors obtained, and consensually resolved objections related to, operational relief that has enabled the Debtors to stabilize and continue operating their businesses in the ordinary course.

4

This relief included approval of motions to pay certain prepetition claims of the Debtors' critical vendors and customers, continue the Debtors' cash management system, and pay employee wages and benefits.

8.      Among other things, this relief provided the Debtors with a basis to negotiate agreements with their critical vendors to pay a portion of prepetition claims in exchange for consistent postpetition supply and the re-establishment of trade credit.  In the months since the Petition Date, the Debtors have successfully reached commercial agreements with approximately 240 individual suppliers and have executed 143 individual trade agreements across that group. Together with other operational efforts, these agreements have assisted the Debtors in restarting their supply chain and have substantially improved their trade credit and liquidity position.  While a substantial majority of critical suppliers have been addressed to date, vendor negotiations remain ongoing.

9.      The commencement of these Chapter 11 Cases negatively impacted the Debtors' employees, many of whom have historically been eligible for stock-based incentive and retentive compensation programs.  Not only did these employees lose access to postpetition stock awards, but their existing stock awards lost retentive and incentivizing value as a result of the commencement of these cases.  Through substantial negotiation with their stakeholders, including the Committee and the Ad Hoc Group of BrandCo Lenders, the Debtors were able to address this significant problem on a largely consensual basis through the implementation of their key employee retention and incentive plans.  The Debtors also worked to consensually provide extensive informal discovery to the United States Trustee for the Southern District of New York (the "U.S. Trustee") in connection with these programs prior to litigating the U.S. Trustee's objections thereto.

10.     Finally, since the Petition Date the Debtors have obtained approval to retain 17 legal, financial, and other restructuring advisors to advise the Debtors throughout these Chapter 11 Cases.  In addition to their primary chapter 11 advisors, these include special conflicts counsel, as well as independent legal and financial advisors to the investigation committee (the "Investigation Committee") of the board of directors (the "Board") of Debtor Revlon, Inc. ("Revlon") and to the restructuring officer of certain BrandCo debtors (the "BrandCo Debtors"), as described below.

**Postpetition Governance**

11.     The Board is comprised of ten directors, including directors appointed by the Debtors' controlling shareholder.  To facilitate an efficient and independent governance process in connection with these Chapter 11 Cases, the Debtors established a restructuring committee (the "Restructuring Committee") of the Board (comprised of five directors, four of whom are not affiliated with the Debtors' controlling shareholder) and a conflicts committee (the "Conflicts Committee") of the Board (comprised of four members, all of whom are independent directors) at the outset of these cases.  In the 17 weeks since the Petition Date, the Debtors have held 11 meetings of the Restructuring Committee and eight meetings of the Conflicts Committee in order to keep the committee members fully informed and to address restructuring and conflicts decisions that have arisen during these Chapter 11 Cases.

12.     In addition, the Debtors recognized from the outset that any plan of reorganization will need to address complex intra-debtor issues, such as the allocation of reorganization value between the BrandCo Debtors and non-BrandCo Debtors, alleged claims related to the 2020 BrandCo financing transaction (the "2020 BrandCo Transaction"), and potential claims, if any, that the Debtors may have against insiders.  In order to fully investigate and independently assess these issues, the Debtors delegated substantial authority to the Restructuring Committee and

6

established the Investigation Committee whose sole member is Jan Baker, a disinterested director who was not affiliated with Revlon prior to the Petition Date. Mr. Baker has approximately 50 years' experience as a restructuring professional and has retained independent advisors to assist in his assessment of these complex issues. Since the Petition Date, Mr. Baker has worked with his independent advisors to investigate these complex issues, including by undertaking discovery of the Debtors, and has engaged consistently and constructively with the Restructuring Committee on the status of the investigation.

13. Finally, in recognition of potential inter-debtor conflicts between the BrandCo Debtors and non-BrandCo Debtors, including the allocation of value between the two sets of Debtors, the Debtors appointed Mr. Steven Panagos as the Restructuring Officer of each of the BrandCo Debtors, who has also retained independent advisors. Since the Petition Date, Mr. Panagos and his independent advisors have regularly attended meetings of the Restructuring Committee and have established a weekly call with the Debtors' chapter 11 professionals in order to ensure that Mr. Panagos, on behalf of the BrandCo Debtors and their stakeholders, remains fully informed of developments in these Chapter 11 Cases. At these meetings, Mr. Panagos has had the opportunity to provide input on key aspects of the restructuring process, including most recently in connection with the claims waterfall model prepared by the Debtors' chapter 11 professionals.

**Stakeholder Engagement**

14. The Debtors' corporate and capital structures, their operations, the events giving rise to these Chapter 11 Cases, the relief requested by the Debtors over the course of these Chapter 11 Cases, and the formulation of their chapter 11 plan are each extraordinarily complex subjects. To bring their stakeholders up to speed, maintain a full and fair flow of information, and drive these cases to a value-maximizing conclusion as efficiently as possible, the Debtors and their

advisors have worked continuously to share information with their substantial stakeholders. Among other things, the Debtors have hosted (a) an in-person meeting with the members of the Committee to provide them with background on the Debtors and these cases on August 1, 2022, (b) an in-person meeting with the Ad Hoc Group of BrandCo Lenders' advisors to discuss plan structure and timing issues on September 8, 2022, (c) an in-person meeting of advisors to the Committee, the Ad Hoc Group of BrandCo Lenders, the Ad Hoc Group of 2016 Lenders, and the Debtors' controlling shareholder on September 28, 2022, to present a complex and detailed claims waterfall model, discuss potential litigation outcomes and risks, and provide an overview of the performance outlook for Q4 2022, (d) over 90 regularly scheduled calls and meetings, and numerous additional informal calls, with advisors of key stakeholders to ensure that they remain fully informed regarding developments in these Chapter 11 Cases, (e) numerous calls with, and follow-up informal diligence provided to, the U.S. Trustee to address concerns regarding the relief requested during the course of these Chapter 11 Cases, and (f) a data room that has been made available to 145 advisors from 23 different firms representing all major stakeholders, containing approximately 2,000 documents, consisting of approximately 70,000 pages, related to, among other things, the Debtors' financial condition and projections, historical performance, postpetition financing transactions, historical financing transactions, and compensation programs.    The Debtors' advisors have also responded or are working to respond to over 400 information requests to date from major creditor constituencies, while concurrently receiving and evaluating multiple third-party inbound proposals for M&A transactions, sale transactions, and other opportunities.

15.    In addition, the Debtors and their professionals address numerous informal questions, concerns, and issues raised on an almost daily basis by current and former employees, vendors, customers, individual creditors, equity holders, and other parties in interest to ensure that

they have access to resources necessary to understand the bankruptcy process and to protect their interests in connection therewith.  Among other things, the Debtors have established a hotline for their retirees, established and rolled out communications plans for various constituencies, and established a general information center hotline with domestic and international numbers available on the Revlon bankruptcy website maintained by their claims agent.

### Discovery and Litigation

16.    These Chapter 11 Cases are complicated by numerous actual and alleged litigation claims that could each materially affect outcomes under any plan of reorganization.  Since the outset of these cases, the Debtors have worked cooperatively with their various stakeholders to investigate, produce discovery, and facilitate any necessary diligence to ensure that these issues are resolved as expeditiously as possible and in time for the Debtors to meet their DIP milestones.

17.    First, as described in the First Day Declaration,[4] the mistaken payment issues (the "Mistaken Payment") that are the subject of ongoing litigation with Citibank, N.A. ("Citibank") resulted in substantial questions regarding which creditors held a majority of the 2016 term loan claims, whether those claims were secured or unsecured, and, indeed, whether those claims remained outstanding at all.  On August 12, 2022, Citibank commenced an adversary proceeding seeking resolution of certain of these issues (the "Citibank Adversary Proceeding").[5] Upon the filing of the Citibank Adversary Proceeding, the Debtors (through their conflicts counsel) prepared to respond to the complaint and worked cooperatively with the Committee and the Ad Hoc Group of 2016 Lenders (each of whom the Debtors permitted to intervene), as well as the Ad

---

[4]    *See Declaration of Robert M. Caruso, Chief Restructuring Officer, (I) in Support of First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 30].

[5]    *See In re Revlon Inc.* v. *Citibank, N.A. (In re Revlon, Inc.)*, Adv. Pro. No. 22-01134 (DSJ) (Bankr. S.D.N.Y. 2022).

Hoc Group of BrandCo Lenders, in coordinating the Debtors' planned response. On September 8, 2022, the Second Circuit issued a judgment vacating the District Court's judgment and finding that the non-returning 2016 lenders were not entitled to keep the Mistaken Payment.[6] As a result, the Debtors agreed with Citibank to stay the Citibank Adversary Proceeding.[7] On October 12, 2022, the Second Circuit denied the non-returning lenders request for rehearing *en banc*.[8] While the Second Circuit's recent decisions provide additional clarity as to the relative rights of Citibank and the non-returning lenders, to the Debtors' knowledge, the non-returning lenders have not yet returned the Mistaken Payment to Citi. Until this issue is resolved, the Debtors will continue to work cooperatively with all affected constituents to facilitate its resolution.

18.    Second, certain of the Debtors' constituents have made clear throughout these Chapter 11 Cases that they intend to challenge the 2020 BrandCo Transaction. Since the Petition Date, the Debtors have worked cooperatively with the Committee to accommodate and respond to its 2020 BrandCo Transaction-related discovery requests and have provided these productions to other major constituents in these Chapter 11 Cases to ensure equal distribution of information. To date, the Debtors have produced over 277,000 pages of discovery in connection with the Committee's ongoing investigation. In addition, the Debtors are currently scheduling depositions for later this month in connection with such investigation. The Debtors will continue to work cooperatively with the Committee and all other parties in interest to resolve these issues as quickly as possible, and within the timeline afforded to the Debtors by their DIP milestones.

---

[6]    *Citibank, N.A. v. Brigade Cap. Mgmt. LP*, No. 21-487 (2nd Cir. Sept. 28, 2022).

[7]    *See* Order Approving Stipulation to Stay Adversary Proceeding, *In re Revlon Inc. v. Citibank, N.A. (In re Revlon, Inc.)*, Adv. Pro. No. 22-01134 (DSJ) (Bankr. S.D.N.Y. Sept. 13, 2022) [Docket No. 12]; Order Approving Stipulation to Stay Adversary Proceeding, *In re Revlon Inc. v. Citibank, N.A. (In re Revlon, Inc.)*, Adv. Pro. No. 22-01134 (DSJ) (Bankr. S.D.N.Y. Sept. 14, 2022) [Docket No. 13]

[8]    *See* Order Denying Petition for Rehearing En Banc, *Citibank v. Brigade Cap. Mgmt. LP*, No. 21-48s7 (2nd Cir. Oct. 12, 2022).

19.     Third, the Debtors similarly provided discovery on a consensual basis to the Committee and other constituents in connection with the Committee's objection to entry of the Final DIP Order.  During that process, the Debtors produced over 33,000 pages of discovery materials, produced two company witnesses for deposition, and deposed one Committee witness.

20.     Fourth, as discussed above, the Debtors are conducting an internal investigation of potential claims, if any, that certain Debtors may hold against insiders and other Debtors.  As described above, the Investigation Committee is conducting discovery in order to gather key facts relating to such potential claims.

21.     During the course of these Chapter 11 Cases, the Debtors have also (a) worked cooperatively with the Committee and the Ad Hoc Group of Equity Holders to streamline litigation related to that group's motion for appointment of an official equity committee, (b) served discovery requests on the Ad Hoc Group of 2016 Lenders in connection with the 2020 BrandCo Transaction and Citibank Mistaken Payment, and (c) extensively cooperated with the U.S. Trustee to provide all information and disclosures that it requested in connection with contested motions.  In short, the Debtors have done everything possible to facilitate the quick and efficient resolution of contentious issues in these cases in order to ensure that they are able to proceed to the plan confirmation stage as quickly as possible.

**Bankruptcy Requirements**

22.     In accordance with Bankruptcy Rule 1007 and the relief obtained at their first day hearing, the Debtors prepared and submitted their schedules of assets and liabilities and statements of financial affairs on August 13, 2022.  Collectively, these documents included 6,797 pages of data on the Debtors and required substantial attention of both the Debtors' employees and their advisors to compile, analyze, and review.  In addition, in consultation with the U.S. Trustee, the

Debtors have prepared and filed regular monthly operating reports for each of the 51 Debtors in these Chapter 11 Cases.

23.     To facilitate their upcoming plan negotiations, and in accordance with Bankruptcy Rule 3003, the Debtors negotiated a bar date order with their key stakeholders and obtained entry of an order establishing October 24, 2022, as the general bar date in these cases, and December 12, 2022, as the governmental bar date.  Understanding the total number of claimants, and amount of claims, is a necessary predicate to finalizing any plan proposal in these Chapter 11 Cases.  The general and governmental bar dates will not have passed before the expiration of the initial exclusivity deadline.

**Miscellaneous Issues**

24.     During the course of these cases the Debtors have also (a) filed an appeal of the delisting decision of the New York Stock Exchange in order to protect shareholders, (b) continuously considered potential financing alternatives to the existing DIP facilities, (c) obtained approval to reject six retail and four office leases that the Debtors determined were unnecessary and burdensome to the Debtors' estates, (d) obtained entry of *de minimis* sale and settlement procedures that facilitate the expeditious and efficient dispensation of minor asset sale and claims issues, and (e) obtained entry of a heavily negotiated equity trading order to preserve the value of hundreds of millions of dollars of tax attributes.  The Debtors will continue to address all operational and bankruptcy process issues as efficiently as possible, and as they arise, in order to facilitate a value-maximizing exit from these Chapter 11 Cases.

**Next Steps**

25.     The Debtors are about to enter one of the most active phases of these Chapter 11 Cases:  plan negotiations.  Currently, the Debtors are in the final stages of preparing a long-term business plan which incorporates optimization overlays that could reduce the Debtors' cost

structure and increase their future earning potential. This business plan will serve as the basis for the Debtors' plan negotiations. The Debtors expect that the business plan will be distributed to significant stakeholders' advisors prior to the hearing on this Motion.

26.    While the management team has been dedicated to developing the business plan, the Debtors' advisors have been actively engaged with advisors to the key stakeholders to lay the foundation for soon-to-be commenced plan negotiations. This groundwork includes understanding the relative positions and concerns of the key stakeholders, which is the result of the ongoing diligence efforts described above. The Debtors have also prepared and presented a detailed claims priority waterfall analysis, and made that model available to key stakeholders, for the purpose of allowing the key stakeholders to prepare themselves for upcoming plan negotiations and consider potential ideas and concepts that could allow the Debtors and the stakeholders to determine the allocation of value, recoveries to classes of claims and interests, and the proposed post-emergence capital structure, including potential cash requirements to exit chapter 11.

27.    Given that they are on the precipice of launching plan negotiations and are working toward exit from bankruptcy in late spring 2023 in accordance with their DIP milestones, the Debtors believe it is prudent to seek a 125-day extension of their Exclusivity Periods (as defined below). This extension will permit the Debtors to proceed toward their goal of confirming a value-maximizing chapter 11 plan of reorganization in an efficient, organized fashion without the costly disruption that would occur if competing plans were to be proposed. The Debtors consulted with and provided their key stakeholders, including the Committee, the Ad Hoc Group of BrandCo Lenders, and the Ad Hoc Group of 2016 Lenders, with an opportunity to review and comment on the Debtors' requested exclusivity extension prior to filing this Motion.

## Relief Requested

28.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, extending the Debtors' exclusive right to file a chapter 11 plan by 125 days through and including February 15, 2023 (the "Filing Exclusivity Period"), and to solicit votes thereon by 125 days through and including April 17, 2023 (the "Soliciting Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"), without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods.[9]

## Jurisdiction and Venue

29.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

30.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

31.     The statutory bases for the relief requested herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006.

---

[9]     For the avoidance of doubt, section 1121 provides for a sixty-day extension of the exclusivity period for purposes of solicitation.  The Debtors request a 125-day extension of the already extended deadline (i.e., 185 days from the original Filing Exclusivity Period.)

## Case Background

32.     On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

33.     No trustee or examiner has been appointed in these Chapter 11 Cases.  On June 24, 2022, the U.S. Trustee  appointed the Committee pursuant to section 1102 of the Bankruptcy Code [Docket No. 121].

34.     A description of the Debtors' businesses, the reasons for commencing these Chapter 11 Cases, the relief sought from the Court to allow for a smooth transition into chapter 11, and the facts and circumstances supporting this motion are set forth in the First Day Declaration.

## Basis for Relief

35.     A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code.  Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan.  "[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'"  *In re Burns and Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (citing H.R. Rep. No. 103–835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).  In these Chapter 11 Cases, the Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will expire on October 13, 2022, and December 12, 2022, respectively, absent further order of the

Court.[10]   The Debtors seek an extension of the Exclusivity Periods to continue working toward

their goal of negotiating, filing, and confirming a consensual, value-maximizing chapter 11 plan

of reorganization.

36.      Section 1121(d) permits a court to extend a debtor's exclusivity "for cause" (as long

as such extension does not extend the Filing Exclusivity Period "beyond a date that is 18 months

after the date of the order for relief" and the Solicitation Exclusivity Period "beyond a date that is

20 months after the date of the order for relief").  Specifically, section 1121(d) provides that "on

request of a party in interest made within the respective periods . . . of this section and after notice

and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period

referred to in this section."  Although the term "cause" is not defined by the Bankruptcy Code,

such term should be viewed flexibly in this context "to allow the debtor to reach an agreement."

H.R. Rep. No. 95-595, at 232 (1997), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191; *see also In re

Ames Dep't Stores, Inc.*, No M-47 (PKL), 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The

purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate

with its creditors"); *In re McLean Indus. Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) ("The

legislative history indicates that [cause] is to be viewed flexibly"); *In re Pub. Serv. Co. of New

Hampshire*, 88 B.R. 521, 533-34 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to afford

maximum flexibility").  Simply put, a debtor should be given a reasonable opportunity to negotiate

an acceptable plan with creditors and to prepare adequate financial and nonfinancial information

---

[10]   Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the Exclusivity Periods shall automatically extend the Exclusivity Periods until the Court acts on this Motion without the necessity for entry of a bridge order.

concerning the ramifications of any proposed plan for disclosure to creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

37.     Courts in the Second Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *McLean Indus.*, 87 B.R. at 834; *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (Bankr. D. Del. 1986). In general, as long as debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted."  *In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable exit strategy").

38.     In particular, courts examine certain factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods.  *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (identifying the below factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664-65; *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005).  These factors include the following:

      (a)     the size and complexity of the case;

      (b)     the existence of good faith progress toward reorganization;

17

    (c)     the necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

    (d)     whether the debtor is paying its debts as they become due;

    (e)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (f)     whether the debtor has made progress negotiating with creditors;

    (g)     the amount of time which has elapsed in the case;

    (h)     whether the debtor is seeking an extension to pressure creditors; and

    (i)     whether an unresolved contingency exists.

39.    Courts are afforded broad discretion to assess these factors and to consider a relevant subset of these factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying the large size of a debtor and the complexity of reorganization efforts as relevant factors); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *Texaco*, 76 B.R. at 327 (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).  For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan.  H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a

complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

40.    The facts and circumstances of these Chapter 11 Cases weigh heavily in favor of an extension of the Exclusivity Periods.  As described in detail above, since the Petition Date, the Debtors have engaged with the Committee, certain organized lender groups, including the Ad Hoc Group of BrandCo Lenders and the Ad Hoc Group of 2016 Term Loan Lenders, and additional key stakeholders in an effort to begin to build consensus on the terms of the Debtors' restructuring and ultimate emergence from chapter 11.  Due to the circumstances and complexities surrounding the Debtors' chapter 11 filings, including that financial results for the critical Q4 holiday period are still pending and that the Debtors are currently finalizing the details of their long-term business plan which will serve as the basis for the plan negotiation and confirmation processes, these discussions are ongoing.  An extension of the Exclusivity Periods will thus provide the Debtors with additional time required to efficiently negotiate a plan and take the necessary steps toward emergence.

41.    The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein.  Each of the relevant factors weighs in favor of an extension of the Exclusivity Periods, as follows:

- *The Debtors' Chapter 11 Cases Are Large and Complex.*  These Chapter 11 Cases involve 51 Debtor entities, which have approximately 2,824 employees and sell their products in 120 different countries.  The Debtors have approximately $3.2 billion of prepetition funded debt and thousands of contracts, creditors, and other parties in interest.  Exiting from chapter 11 will require the Debtors to address and resolve substantial alleged inter-Debtor and intercreditor claims which are currently being investigated and are in the early stages of litigation.  In addition to alleged claims related to the Debtors' 2020 BrandCo Financing,  the Debtors' Chapter 11 Cases have been significantly complicated by litigation between Citibank and certain of the Debtors' prepetition term loan lenders regarding a mistaken payment, which created significant uncertainty about the

Debtors' capital structure and key stakeholders.  The Second Circuit rendered a judgment in favor of Citibank, which is subject to further appeal, only one month ago.  The prepetition term loan lenders subsequently filed a petition for a rehearing, which was denied by the Second Circuit on October 12, 2022.

- *The Debtors Have Made Good Faith Progress Toward Exiting Chapter 11.* The Debtors have already taken several key steps and obtained certain critical relief necessary for their ultimate reorganization, including negotiating and implementing the DIP Financing, beginning high level discussions related to plan development considerations, including the presentation of a complex and detailed claims waterfall analysis based on the Debtors' corporate and capital structures, developing a business plan that the Debtors anticipate will be shared with key stakeholders prior to the hearing on this Motion, completing and filing their schedules and statements, and setting a claims bar date.  In short, the Debtors are working expeditiously to establish the basis for a value-maximizing plan of reorganization and to establish maximum stakeholder support for such a plan ahead of their RSA and plan filing milestones on November 15, 2022, and December 14, 2022, respectively.

- *An Extension of the Exclusivity Periods Will Not Prejudice Creditors.* Continued exclusivity will permit the Debtors to maintain flexibility so competing plans do not derail the Debtors' restructuring process.  Being required to dual-track negotiations across multiple plans could give rise to uncertainty to the detriment of all stakeholders.  As described in detail above, throughout these Chapter 11 Cases, the Debtors have had regular and transparent communications with all of their major stakeholder groups. Ultimately, extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest by allowing the Debtors time to continue to work to build support for a value-maximizing plan of reorganization.

- *The Debtors Are Paying Their Bills as They Come Due.*  Since the Petition Date, the Debtors have paid their vendors' postpetition claims in the ordinary course of business or as otherwise authorized by orders of the Court.  Importantly, the Debtors maintain their ability to continue to pay their bills throughout these Chapter 11 Cases in light of the substantial liquidity provided by the DIP Financing and the use of cash collateral.

- *The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan.*  During their short time in chapter 11, the Debtors have taken substantial steps toward reorganization, including working expeditiously to prepare a long-term business plan that will form the basis for plan negotiations, preparing and filing their schedules of assets and liabilities and statements of financial affairs, and continuing to engage in ongoing dialogue and communication with the Committee, certain organized lender

groups, and their advisors regarding a plan and related steps in furtherance of emergence, all as described in detail above. The Debtors have constructively engaged with these key constituencies to date and require additional time to develop their plan of reorganization and build consensus among some or all of the stakeholder groups.

• *These Cases Are Less Than Four Months Old.* This is the Debtors' first request for an extension of the Exclusivity Periods, and it comes only four months after the Petition Date. As discussed above, during this short time, the Debtors have accomplished a great deal despite the complexity of these Chapter 11 Cases and the numerous parties involved and continue to work diligently towards their timely emergence from chapter 11.

• *An Extension Will Not Pressure Creditors.* The Debtors are not seeking an extension of the Exclusivity Periods to pressure any of their stakeholders. To the contrary, all creditor groups or their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these Chapter 11 Cases, and all creditors and other stakeholders have been on notice since the outset of these cases that the Debtors' RSA and plan milestones extend beyond the initial exclusivity period. Further, the Debtors consulted with and provided their key stakeholders, including the Committee, the Ad Hoc Group of BrandCo Lenders and the Ad Hoc Group of 2016 Lenders, with an opportunity to review and comment on the Debtors' request for an extension of the Exclusivity Periods prior to filing this Motion. The Debtors are seeking an extension of the Exclusivity Periods to preserve and capitalize on the progress made to date in their restructuring negotiations.

42.     An objective analysis of the relevant factors demonstrates that the Debtors are working diligently and comprehensively to facilitate a successful conclusion to these Chapter 11 Cases. Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein. Similar relief is regularly granted in large chapter 11 cases in this district. *See*, *e.g.*, *In re Kumtor Gold Co. CJSC and Kumtor Operating Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. Oct. 18, 2021) [Docket No. 220] (120 days); *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. Oct. 26, 2020) [Docket No. 577] (same); *In re Avianca Holdings S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y. Aug. 7, 2020) [Docket No. 678] (same); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Jan. 28, 2020) [Docket No. 782] (180 days); *In re Windstream*

*Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 20, 2019) [Docket No. 699] (same); *In re Frontier Commc'ns Corp.*, Case No. 20-22476 (RDD) (Bankr S.D.N.Y. August 11, 2020) [Docket No. 917] (same); *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. June 22, 2018) [Docket No. 432] (120 days); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Aug. 11, 2016) [Docket No. 970] (90 days); *In re Republic Airways Holdings Inc.*, Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. June 17, 2016) [Docket No. 687] (190 days); *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 11, 2012) [Docket No. 1413] (100 days); *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. May 1, 2012) [Docket No. 1062] (150 days).

### <u>Notice</u>

43.    The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) Proskauer Rose LLP, as counsel to MidCap Funding IV Trust, in its capacity as (i) administrative agent and collateral agent under the Debtors' prepetition asset-based lending facility, (ii) administrative agent and collateral agent under the ABL DIP Facility, and (iii) ABL DIP Lender; (c) Morgan Lewis & Bockius LLP, as counsel to Crystal Financial LLC, in its capacity as administrative agent for the SISO Term Loan; (d) Alter Domus, in its capacity as administrative agent for the Tranche B; (e) Latham & Watkins, LLP, as counsel to Citibank N.A., in its capacity as 2016 Term Loan Agent; (f) Quinn Emanuel Urquhart & Sullivan, LLP, in its capacity as counsel to the putative 2016 Term Loan group; (g) Akin Gump Strauss Hauer & Feld, LLP, in its capacity as counsel to an ad hoc group of 2016 Term Loan lenders; (h) Paul Hastings LLP, as counsel to Jefferies Finance LLC, in its capacity as BrandCo agent and DIP agent; (i) Davis Polk & Wardwell LLP and Kobre & Kim LLP, as counsel to Ad Hoc Group of BrandCo Lenders; (j) U.S. Bank National Association, as indenture trustee for the Debtors' prepetition unsecured notes, and any counsel thereto; (k) Brown Rudnick LLP, as

counsel to the Committee; (l) the United States Attorney's Office for the Southern District of New York; (m) the Internal Revenue Service; (n) the Securities Exchange Commission; (o) the attorneys general for the states in which the Debtors operate; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### <u>No Prior Request</u>

44.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request entry of the order, substantially in the form attached hereto as <u>**Exhibit A**</u>, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated:  October 12, 2022

*/s/ Robert A. Britton*
Paul M. Basta
Alice Belisle Eaton
Kyle J. Kimpler
Robert A. Britton
Brian Bolin
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
aeaton@paulweiss.com
kkimpler@paulweiss.com
rbritton@paulweiss.com
bbolin@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| REVLON, INC., *et al.*,[1] | ) | Case No. 22-10760 (DSJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of this order:  (a) extending the Filing Exclusivity Period through and including February 15, 2023, and the Soliciting Exclusivity Period through and including April 17, 2023, without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods, and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1]    The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955.  Due to the large number of debtor entities in these Chapter 11 Cases, for which the Court has granted joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/Revlon.  The location of the Debtors' service address for purposes of these Chapter 11 Cases is:  One New York Plaza, New York, NY 10004.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    Any responses or objections to the Motion that have not been previously withdrawn or otherwise resolved are hereby overruled and denied.

3.    Pursuant to section 1121(d) of the Bankruptcy Code, the Filing Exclusivity Period pursuant to section 1121(b) of the Bankruptcy Code is hereby extended through and including February 15, 2023.

4.    Pursuant to section 1121(d) of the Bankruptcy Code, the Soliciting Exclusivity Period pursuant to section 1121(c) of the Bankruptcy Code is hereby extended through and including April 17, 2023.

5.    Nothing herein shall prejudice the Debtors' rights to seek further extensions of the Exclusivity Periods consistent with section 1121(d) of the Bankruptcy Code.

6.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE