**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVLON, INC., *et al.*,[1] | ) | Case No. 22-10760 (DSJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DECLARATION OF PAUL ARONZON IN SUPPORT OF THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF REVLON, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to Section 1746 of Title 28 of the United States Code, I, Paul Aronzon, do hereby declare the following to the best of my information, knowledge and belief:

1. On January 12, 2023, I was appointed to the board of directors ("Board") of Revlon, Inc. ("Revlon"), which is one of the above-captioned affiliated debtors and debtors in possession (collectively, "Debtors" or "Company"), and began serving as a member of the Board's Investigation Committee (defined below) together with D.J. "Jan" Baker. Mr. Baker had been appointed to the Investigation Committee on June 15, 2022 and served, until my appointment, as the sole member of the Investigation Committee. On February 17, 2023, Mr. Baker resigned from Revlon's Board, at which point I became the Investigation Committee's sole member.

2. I submit this declaration ("Declaration") in support of confirmation of the *Third Amended Joint Plan of Reorganization of Revlon, Inc. and its Debtor Affiliates Pursuant to*

---

[1] The last four digits of Debtor Revlon, Inc.'s tax identification number are 2955. Due to the large number of debtor entities in these Chapter 11 Cases, for which the Court has granted joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/Revlon. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 55 Water St., 43rd Floor, New York, NY 10041-0004.

*Chapter 11 of the Bankruptcy Code* [Docket No. 1727] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

3. I am a lawyer and member of the bars of California, New York, and Washington, DC and have over forty years of experience as a lead advisor in corporate mergers and reorganizations, including significant experience advising companies, boards, board committees, independent directors, and various parties to bankruptcy proceedings. From 1979 to 1989 I worked as an associate and partner in the Finance and Restructuring groups of the law firm Gendel, Raskoff, Shapiro and Quittner, in Los Angeles, CA. From 1989 to 2006 I worked as a Partner in Milbank LLP's Los Angeles office. From 2006 to 2008, I served as the Executive Vice President and Managing Director of Imperial Capital, where I advised companies, boards, board committees, independent directors, sponsors, parties acquiring assets, parties acquiring debt, and others across a wide array of industries. From 2008 to 2019, I returned to Milbank LLP and served as the co-managing partner of the Los Angeles office and co-leader of Milbank's Global Financial Restructuring Group. I retired from Milbank in 2019. Since my retirement from Milbank, I have served as an independent, outside director for several dozen distressed companies both in and out of court, going through bankruptcy or restructuring processes, including the Debtors.

**The Mandate and Scope of the Investigation Committee's Investigation**

4. On June 15, 2022 ("Petition Date"), by unanimous resolutions ("Investigation Committee Resolutions"), the Board approved and established a committee to carry out the Debtors' self-investigation duties under Sections 1106(a)(3) and (4) and 1107(a) of the Bankruptcy Code ("Investigation Committee"). The Investigation Committee was vested with powers to, among other things: (a) perform any and all internal audits, reviews, and investigations of the Company, (b) perform any and all work necessary to complete a special review by outside

counsel (which was originally commenced under the supervision of the Audit Committee of the Board) of the Company's governance, financial transactions, and business operations to assess the potential viability of legal claims that may be brought by various parties against the Board, the Company's officers and directors ("Management"), or the Company's ultimate controlling shareholder, MacAndrews & Forbes Incorporated ("M&F"), (c) evaluate the appropriateness and necessity of any releases in a potential Chapter 11 filing and plan of reorganization by the Company, and (d) take any and all other actions incident or ancillary to the foregoing or otherwise as the Investigation Committee determined to be advisable, appropriate, convenient, or necessary to the performance of its duties and the discharge of its responsibilities. The Investigation Committee Resolutions also authorized the Investigation Committee to draw upon appropriate resources, at the expense of the Company, to conduct its work and discharge its responsibilities, including resources necessary to retain independent counsel and advisors.

5. To carry out its mandate and discharge its responsibilities, the Investigation Committee retained as counsel Petrillo Klein & Boxer LLP ("Petrillo") and Alan Gover, Esq. (together, "Committee Counsel"). Thereafter, to assist Committee Counsel in its work, Committee Counsel were authorized to retain Teneo Capital LLC ("Teneo") as a financial advisor to the Investigation Committee. Committee Counsel also retained three subject matter advisors concerning, respectively, bank and leveraged finance, supply-chain management, and Delaware corporate law and governance.

6. In regular consultation with the Investigation Committee, Committee Counsel performed an independent factual investigation and a review and analysis of applicable federal and state law. In its review and collection of documents, Committee Counsel principally employed a six-year look-back period and also consulted earlier-dated materials concerning the Company where appropriate. Committee Counsel had access to thousands of internal Company documents

including, among other things, minutes of the Board of Revlon, Inc. and its principal operating subsidiary Revlon Consumer Products Corporation, the Board's Audit Committee, the Board's Compensation Committee, certain documents considered by the Board and its committees at their meetings, and transaction documents concerning material transactions to which the Company was a party, documents concerning the Company's financial and operational condition, and other documents relating to the governance and operation of the Company. Committee Counsel also reviewed the Company's publicly filed documents, publications of ratings agencies and financial media, as well as other relevant data sources.

7. Committee Counsel conducted interviews of certain current and former officers and directors of the Debtors and two representatives of M&F, reviewed the deposition testimony given in the investigation carried out by the Official Unsecured Creditors Committee ("UCC"), and considered the input of Teneo and the above-referenced subject matter experts. Committee Counsel also met with representatives of the UCC with each sharing their thinking as each deemed appropriate.

8. Certain parties and bankruptcy case constituencies had raised questions about certain pre-petition debt transactions of the Debtors, namely (a) the August 6, 2019, secured term loan facility with affiliated funds of Ares Management LLC and (b) the May 7, 2020, BrandCo Facilities. Accordingly, Committee Counsel and their advisors also studied those transactions.

9. The Investigation Committee received the full cooperation of the Company and its counsel, as well as that of M&F and its counsel.

### The Investigation Committee's Findings

10. The Investigation Committee did not identify a plausible cause of action for breach of fiduciary law with respect to the Board or executive officers ("Management"). Board members and Management did not engage in self-interested transactions or approve material related-party transactions. In managing and maintaining Revlon's going concern status, the Board approved

substantial financing transactions, the proceeds of which, net of fees, were used solely for internal business purposes and refinancing. No asset sales to M&F were approved, and no merger and acquisition activity of the Company involved M&F as an economic participant.

11. In considering and approving acquisitions, dispositions, and financings in the Relevant Period, the Board conducted itself in a procedurally sound manner, in accordance with standard corporate governance. The Board deliberated and made decisions with the benefit of and relying on the specialized advice and input of, qualified professionals, including lawyers, bankers, and consultants.

12. Although the Company was highly leveraged from 2016 onward, with the degree of indebtedness increasing over the Relevant Period, to the extent a hindsight review of the Board's stewardship of Revlon were to question whether the Board should have considered equity financing to reduce net indebtedness, even if the applicable law permitted such a review (and I understand that it does not), the Investigation Committee concluded that the pursuit of equity financing was not a realistic alternative available to the Board. In particular, an analysis by Teneo reflects that equity capital would not have been available at a reasonable price in the Relevant Period. The facts also do not point to a Board lapse in failing to direct a Chapter 11 filing earlier than June 2022 (and I understand that such a claim is, in any event, unlikely to be actionable because the law does not find fault in a board's decision to remain in business rather than file for bankruptcy protection). Revlon was able to manage its substantial liquidity challenges in 2019 and 2020 through additional borrowing and internal cost-cutting. Furthermore, following the shock to Revlon's business caused by the COVID Pandemic in 2020, and continuing through the filing, Management's business plans were gaining some traction, with 2021 and the first quarter of 2022 producing improved results. As the last quarter of 2021 and 2022 unfolded, however,

supply-chain dynamics outside the Company's control caused its inability to continue business outside of Chapter 11.

13. The Adversary Complaint filed by certain of the lender parties to the 2016 Term Loan Facility, No. 22-01167 (DSJ) (ECF 1), alleging breach of contract, bad faith, conversion, unjust enrichment, equitable subordination, and tortious interference with contract, among other claims, does not alter the Investigation Committee's findings and fiduciary duty analysis. First, the Adversary Complaint alleges no such claims with respect to the Board or M&F. Nor does it allege a breach of the duty of care, disloyalty, or bad faith, on the part of any Board member or M&F, or facts that would support the foregoing.

14. Second, the Investigation Committee has reviewed the Ares and BrandCo transactions and concludes they were prima facie valid. Given their structure, context in the market, purposes, and uses, there was no reasonable basis for the Board to be skeptical about their validity, particularly in light of the extensive advice to the contrary that the Board received from external legal counsel.

15. In view of these facts, Management and the Board are entitled to the presumption of the validity of their conduct under the business judgement rule.[2]

16. The Investigation Committee, likewise, did not identify a plausible cause of action for breach of fiduciary law with respect to M&F. Concerning the Company's substantial financing transactions during the Relevant Period, no facts discovered by the Committee show or give rise to a reasonable inference that M&F caused Revlon to agree to transactional terms that were in M&F's interest but not in the Company's interest. Both in this respect, and otherwise in the

---

[2] Further, the Board would be protected from claims for alleged breach of duty of care by the exculpatory clause of the Company's Certificate of Incorporation, which adopts in full the protections of Delaware statutory law.

Committee's assessment, no example of unjust enrichment benefiting M&F has been identified. As noted, there were no asset sales to M&F that were approved or merger and acquisition activity of the Company that involved M&F as an economic participant. The Committee has also not identified any instance of usurpation of corporate opportunity by M&F.

17. The Company disclosed and the Board approved non-material related-party transactions between the Company and M&F – including certain joint insurance purchasing arrangements, a tax sharing agreement, and certain managerial and administrative services provided to the Company by M&F – that do not appear to have involved terms disfavoring the Company.

18. Nor has the Investigation Committee identified a transaction that would substantiate a fraudulent conveyance claim. With respect to the challenged 2020 BrandCo refinancing transaction, the transferred collateral was encumbered, thus to my understanding placing the transfers outside the scope of applicable fraudulent transfer law. In any event, Revlon received reasonably equivalent value in the transaction, namely, the loan proceeds, net of fees, allowing it to continue to operate as a going concern, including by redeeming certain maturing unsecured 5.75% senior notes, which avoided debt covenant violations that would have accelerated its secured debt. The 2020 refinancing also extended the maturities of certain 2016 loans, paid the debt incurred by the Company in 2019, and contributed to the funding of the Company's business operations.

**The Investigation Committee's Conclusion and Recommendation**

19. On the basis of (a) an investigation of the relevant facts (including transactions that have been the subject of challenges, since settled), which included multiple witness interviews, an assessment of discovery conducted by the Creditors' Committee, and the review of the Company's public filings, certain documents, records and data of the Company, public information concerning

the Debtor's industry and market, and publications of ratings agencies and financial media, and (b) a review and analysis, as applied to the facts found by the investigation, of the controlling law, the Investigation Committee, with the assistance of Committee Counsel and its retained subject matter advisors, has concluded that the Company's Board, Management, and M&F, its indirect controlling shareholder, satisfied their respective fiduciary duties. As a result, the Investigation Committee has found no basis for a claim on behalf of the Debtors against any of these parties.

20. Accordingly, to avoid the prospect of potential costly, meritless litigation, the Investigation Committee recommends that the Debtors' plan of reorganization provide for releases of any and all claims of the Debtors to be granted to the Debtors' Board, Management, and control shareholder.

*** 

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 31, 2023

_____/s/_____
Name: Paul Aronzon